PAUL G. TAGGART, ESQ.
Nevada State Bar No. 6136
DAVID H. RIGDON, ESQ.
Nevada State Bar No. 13567
TAGGART & TAGGART, LTD.
108 North Minnesota Street
Carson City, Nevada 89703
(775)882-9900 – Telephone
Paul@legaltnt.com
David@legaltnt.com
Attorneys for City of Fernley

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

CITY OF FERNLEY, a political subdivision of the State of Nevada,

Plaintiff,

vs.

ERNEST A. CONANT, Regional Director, UNITED STATES BUREAU OF RECLAMATION; UNITED STATES BUREAU OF RECLAMATION,

Defendants.

Case Number:

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

## INTRODUCTION

1. This action seeks review of a decision by the United States Bureau of Reclamation ("BOR") to approve the Record of Decision ("ROD") for the Truckee Canal Extraordinary Maintenance Project being constructed to address safety concerns along the Truckee Canal ("Canal") which is an integral part of the Newlands Project, in western Nevada.

2. Plaintiff seeks declaratory and injunctive relief under the Administrative Procedure Act ("APA"), 5 U.S.C. §702 and §706(2)(A), and judicial review under the National Environmental Policy Act ("NEPA"), 42 U.S.C. §4332.

-1-

3. Defendant BOR has acted arbitrarily, capriciously, and not in accordance with NEPA by issuing a Final Environmental Impact Statement ("FEIS") and a ROD which approves a project to place a non-permeable liner within the Canal thereby cutting off the historical recharge that the canal has provided to the Fernley groundwater aquifer.

4. The BOR violated NEPA by failing to fully consider: (1) viable alternatives to the proposed project that will accomplish the project's stated purpose without cutting off the recharge, (2) the full environmental impacts of the proposed project including, without limitation, impacts to groundwater levels, the City of Fernley municipal water system, and domestic wells, and (3) potential mitigation measures that could be employed by BOR to offset or lessen said impacts.

## JURISDICTION AND VENUE

5. Subject matter jurisdiction over this claim is conferred by 28 U.S.C § 1331 (federal question), 5 U.S.C. §702 (APA right of review), 28 U.S.C. § 2201 (declaratory relief), and 28 U.S.C. §2202 (injunctive relief).

6. An actual, justiciable controversy exists between plaintiffs and defendants within the meaning of 28 U.S.C §2201.

7. Plaintiffs are challenging a final agency action as defined by the APA at 5 U.S.C §551(13) and 5 U.S.C §704.

8. Venue is proper in the United States District Court of Nevada pursuant to 28 U.S.C. §1391(e) because: (1) Defendant BOR maintains a field office located in this district, in Carson City, Nevada; (2) the Truckee Canal, which is the subject of this action, is located wholly within this district; (3) a substantial portion of the events surrounding the development of the FEIS occurred within this district; and (4) Plaintiff is a political subdivision of the State of Nevada whose boundaries lie wholly within this district.

///

///

///

## PARTIES

9. Plaintiff, the City of Fernley ("Fernley"), a political subdivision of the State of Nevada, is a community of over 20,000 residents and various commercial and industrial businesses located in northern Lyon County, Nevada that operates a municipal water system.

10. Defendant, Ernest A. Conant, is Regional Director for the California-Great Basin Region of the BOR, whose main office is in Sacramento, California. In his capacity as Regional Director, Mr. Conant was responsible for approving the final ROD approving the FEIS and authorizing the BOR to move forward with the preferred alternative (lining the canal).

11. Defendant BOR is an agency within the United States Department of the Interior and is the owner and operator of both the Truckee Canal and the overall Newlands Project.

## FACTUAL BACKGROUND

12. The development of the Newlands Project was authorized pursuant to Sections 2 and 4 of the Reclamation Act of 1902 (currently codified at 43 U.S.C. §§ 411, 419, 461).

13. An integral part of the Newlands Project was the construction of the Truckee Canal, which conveys water from a diversion point located on the Truckee River (Derby Dam) to the Lahontan Reservoir located along the Carson River.

14. The stated purpose of the Newlands Project was to provide a reliable source of water for the irrigation of desert lands and the establishment of towns and cities within the project area.

15. The construction of the Truckee Canal was completed in or around 1905.

16. At the time it was authorized and constructed the Truckee Canal was intended to be a permanent facility and has remained in continuous operation for more than 115 years.

17. In accordance with the stated purpose of the Newland Project to establish cities and towns within the project area the Town of Fernley was established immediately adjacent to the Truckee Canal in or around 1905, at roughly the same time as the completion of the canal.

18. Where the Truckee Canal traverses through Fernley, it was constructed and has been maintained for the entirety of its existence as an unlined, open earthen ditch.

///

19. The rights to the waters of the Truckee River, including the water diverted to the Newlands Project via the Truckee Canal, were formally adjudicated in a ruling commonly known as the *Orr Ditch* decree (*United States v. Orr Ditch Water Co., et al*, In Equity Docket No. A3 (D. Nev. September 8, 1944)).

20. The *Orr Ditch* court recognized and affirmed the Newlands Project diversions from the Truckee River under Claim No. 3 on pp. 10-11 of the Final Decree under the heading "DERBY DAM AND TRUCKEE CANAL."

21. The *Orr Ditch* decree authorized the diversion of 1,500 cubic feet/second of water through the Truckee Canal for the purpose of, among other things, "supplying the inhabitants of cities and towns on the project and for domestic and other purposes."

22. The Newlands Project was a success, drawing settlers to the new Town of Fernley.

23. As the settlement grew, the primary source of non-irrigation water to supply the residents and businesses that were enticed by the federal government to settle in Fernley were domestic, commercial, and municipal groundwater wells.

24. In 1973, in conjunction with the Nevada State Engineer, the United States Geological Survey ("USGS") issued Reconnaissance Series Report No. 57 appraising the ground water resources of the basins adjoining the Truckee River, including the Fernley area.

25. The 1973 USGS report noted that "The Truckee Canal supplies nearly all of the [ground water] inflow to the [Fernley] area" and that "The Fernley Area is estimated to have less than 1,000 acre-feet per year of local [ground water] supply . . . but has a substantial supply of imported water via the Truckee Canal."

26. On December 30, 1977, the Nevada State Engineer issued Order No. 699 designating an approximately 120 square mile area of land as the Fernley Area Ground Water Basin (Basin 076).

27. Fernley is located within Basin 076.

28. In 1985, the USGS published a "Revised Water Budget for the Fernley Area, West-Central Nevada, 1979" ("Revised Budget").

///

29. The Revised Budget estimated the natural recharge in the Fernley basin at 600 acre-feet per year, but noted that an additional 18,000 acre-feet per year of water seeps into the local aquifer from the unlined Truckee Canal.

30. In reliance on the USGS water budgets and the seepage from the Truckee Canal, the Nevada State Engineer has issued more than 11,500 acre-feet per year of ground water permits in the Fernley basin including approximately 8,900 acre-feet per year of permits for municipal water.

31. In addition to the ground water permits issued by the Nevada State Engineer, several hundred domestic wells have been drilled to supply water to homes within the Fernley area that do not have access to the Fernley municipal water system or any reliable alternative source of water.

32. Because the natural perennial yield of the basin is estimated to be just 600 acre-feet per year, the users of ground water within Fernley, including the Fernley municipal water system, are utterly reliant on seepage from the canal to keep the aquifer recharged and in a healthy condition.

33. On or about January 5, 2008, the north embankment of the Truckee Canal breached after a storm event causing flooding damage to approximately 590 homes located within Fernley.

34. The breach was repaired in February 2008 and the Truckee Canal resumed operation in March 2008.

35. To avoid the risk of future breaches, since March 2008 the Truckee Canal has been operating under flow restrictions that limit the amount of water that can be transported through the Canal.

36. Upon information and belief, the current flow restrictions have not resulted in, or been the cause of, any reductions in the quantity of water delivered to irrigators within the Newlands Project.

37. After the 2008 Canal breach, the BOR, together with the Truckee Carson Irrigation District ("TCID") who operates the Canal under a contract with BOR, completed several studies to identify areas of the Canal requiring repair and maintenance to address safety concerns.

38. Fernley actively participated as a stakeholder in the studies conducted by BOR.

39. The studies specifically identified improving canal safety and ensuring the reliability of deliveries as the two main purposes of any repair and maintenance project.

40. The studies identified several alternative methods that could be used to meet the goals of the project, including rebuilding certain sections of the embankment, installing a cutoff wall (cement, sheet metal, or vinyl) within the existing embankment, installing an impermeable lining withing the Canal, or maintaining the flow restrictions on a permanent basis.

41. The studies identified that a potential impact of installing an impermeable lining within the Canal would be to severely restrict or eliminate entirely the historic recharge to the ground water aquifer that is relied on by Fernley and its residents.

42. In 2012, scientists with the Desert Research Institute ("DRI") developed a comprehensive ground water model for the Fernley/Wadsworth area that can be used to simulate: (1) future ground water levels within the Fernley basin based on various actions and stresses to the aquifer, (2) impacts of simulated ground water levels on Fernley's municipal wells, and (3) impacts of simulated ground water levels on domestic wells in the Fernley area.

43. The DRI ground water model was developed, in part, using funding from BOR and is the best scientific tool available to study the significance and magnitude of impacts that various project alternatives may have on ground water levels in the Fernley area.

44. BOR has access to the DRI ground water model, employs staff who have the technical expertise to interpret and evaluate model simulations and outputs, and has used the DRI model to evaluate at least one other proposed project in the area – an aquifer storage and recovery project previously proposed by Fernley.

45. During the stakeholder workshops on the risk assessment and other studies that pre-dated the Environmental Impact Statement ("EIS") process, Fernley repeatedly requested the BOR fully study and evaluate the impacts the various project alternatives will have on the ground water aquifer using the DRI ground water model.

46. BOR responded to Fernley's request by stating that it was premature and that the appropriate time to use the DRI model to study potential impacts would be during the EIS process.

47. Prior to initiating the EIS process, BOR undertook a Planning Study to formulate the alternatives that would be forwarded through the EIS process for further study.

48. The Planning Study recommended seven alternatives based on three distinct conceptual ideas be forwarded for further study.

49. The three concepts identified in the Planning Study were (1) leaving the Truckee Canal as an open, unlined ditch and installing a cement/bentonite cutoff wall in the embankment to shore it up, (2) using the same concept as the first but installing a synthetic (vinyl) wall in place of a cement/bentonite one, and (3) lining the Canal.

50. On or about October 19, 2015, BOR published its Notice of Intent to prepare an EIS for the Truckee Canal project.

51. After issuance of the Notice of Intent, Fernley accepted BOR's invitation to become a cooperating agency with respect to the development of the EIS.

52. From October 2015 through May 2016, BOR held scoping workshops with cooperating agencies and stakeholders to develop the scope of the EIS.

53. Fernley actively participated in the scoping workshops.

54. The scoping workshops identified key questions that would need to be studied and evaluated in the EIS process including, among other things, "[h]ow are aquifers within and surrounding the Project Area affected by changes to the Truckee Canal water height?" and "how would changes to the Truckee Canal water height affect water right owners?"

55. The scoping report issued by BOR in May 2016 also stated that the above-described issue statements "are not intended to be comprehensive or exhaustive" and that BOR "will continue to work with other government agencies, tribal governments, and private and public stakeholders to refine issues and alternatives throughout the course of the EIS process."

56. The scoping report also identified the sole purpose of the project "is to improve public safety by reducing the risk of canal breach" and no mention was made that alternatives would be selected and evaluated on any other basis (such as improving the efficiency of water deliveries or reducing project diversions from the Truckee River).

57. Specific comments that were provided to BOR during the scoping process included "[p]lease consider that any lining will hurt groundwater recharge for all residents, municipal and

commercial water supplies along the Truckee canal reach", "I want to make sure that the impact to domestic well owners is considered with the options", "[t]he EIS needs to fully analyze and consider the effects of each of the proposed alternatives on the Fernley groundwater basin", and "seepage from the Truckee Canal is a vital source of recharge to the groundwater aquifer that cannot be discontinued without negatively affecting the City's groundwater rights."

58. The comments provided at the public scoping meetings placed BOR on notice that the potential impacts of the project to Fernley's ground water aquifer were a major environmental concern that needed to be fully analyzed and addressed in the EIS process.

59. After the scoping process was complete, BOR, with input from cooperating agencies and stakeholders, developed a Corrective Action Study whose purpose was to "document corrective action alternatives" to be studied in the EIS.

60. The Corrective Action Study was published on or about July 2017.

61. The Corrective Action Study identified ten alternatives for additional study including (1) installing a full prism geomembrane/concrete cover lining, (2) installing a geomembrane/concrete cover lining on the left (north) embankment only, (3) installing a full prism geomembrane/soil cover lining, (4) installing an embankment cutoff wall, (5) embankment reconstruction, (6) check structure replacement, (7) adding drainage crossings and conveyance channels, (8) adding wasteways to allow for releases during flood events, (9) adding passive spillways for use during flood events, and (10) installing detention ponds at the largest pour points (points where stormwaters "pour" into the Canal).

62. With respect to Alternative 4, the Corrective Action Study identified six distinct types of cutoff wall technologies that could be employed including (1) synthetic (vinyl) sheet walls, (2) steel sheet walls, (3) cement-bentonite slurry, (4) soil-cement-bentonite mixed in place, (5) controlled low-strength concrete, and (6) HDPE geomembrane.

63. BOR was required by 43 C.F.R. § 46.230 to "collaborate to the fullest extent possible with all cooperating agencies concerning those issues relating to their jurisdiction" during the development of the EIS including working with said agencies to "[a]rrange for the collection and/or assembly of necessary resource, environmental, social, economic, and institutional data."

64. During its meetings with BOR, Fernley repeatedly reiterated its request that BOR use the DRI ground water model to evaluate the significance and magnitude of the impacts that various alternatives will have on the local aquifer.

65. Despite Fernley's repeated requests to do so, BOR never employed the DRI ground water model to study the impacts of any of the alternatives being considered.

66. BOR also failed to collaborate with Fernley on the collection of social and economic data related to the effects the proposed alternatives might have on the City, its businesses, and its residents as required by federal regulations.

67. Just after the publication of the Corrective Actions Study, on or about August 31, 2017, the Secretary of Interior issued Order 3355 directing all Interior agencies, including Reclamation, to implement streamlined NEPA procedures.

68. Order 3355 set an arbitrary one-year deadline on agencies to complete the EIS process.

69. After the issuance of Order 3355, BOR stopped holding cooperating agency and stakeholder meetings to discuss or evaluate alternatives or review drafts of EIS sections.

70. Anticipating the imminent issuance of a draft EIS, and due to BOR's refusal to use the DRI ground water model to evaluate the impacts of lining the Canal, in Fall 2018 Fernley commissioned Dr. Greg Pohll, one of the original developers of the DRI ground water model, to run model simulations to determine the scope and magnitude of the effects that a canal lining would have on the aquifer.

71. The model simulations run by Dr. Pohll indicate that lining the Truckee Canal could have disastrous impacts on water users in the basin including: (1) groundwater levels declining more than 90 feet over a 40-year period, (2) groundwater levels in Fernley municipal wells declining precipitously, and (3) over 13% of domestic wells in Fernley failing within the first year after construction and over 71% to failing over a 40-year period.

72. On or about December 2018, BOR sent cooperating agencies an "administrative" draft EIS to review.

///

73. The administrative draft EIS evaluated only four action alternatives each of which was merely a minor variation on the canal lining concept.

74. Despite the fact that both the 2013 Planning Study and the 2017 Corrective Action Study identified numerous non-lining alternatives that should have been considered and evaluated in the EIS, the administrative draft EIS did not include even a single non-lining alternative, other than the no-action alternative, such as reconstruction of Canal embankments or the installation of cutoff walls.

75. The administrative draft EIS also failed to include any comprehensive study or analysis quantifying the magnitude of impacts that the identified alternatives would have on the ground water resources in Fernley.

76. Finally, the administrative draft EIS contained no discussion of potential mitigation measures that BOR could implement to lessen or avoid the impacts to the ground water aquifer.

77. Due to its cooperating agency agreement with BOR, Fernley was prohibited from publicly sharing the administrative draft EIS with members of the public.

78. For more than a year between December 2018 and February 2020, BOR went dark, providing no further information and requesting no additional input about the development of the EIS.

79. On or about March 6, 2020, BOR publicly released its draft EIS.

80. The draft EIS was substantially similar to the administrative draft EIS with the exception of adding a fifth action alternative which was just another slight variation of the canal lining concept.

81. The fifth action alternative was identified in the draft EIS as the preferred alternative.

82. Like the administrative draft EIS, the public draft EIS contained no non-lining alternatives other than the no-action alternative, no analysis quantifying the impacts of the alternatives on the ground water aquifer, and no analysis of mitigation measures that BOR could undertake to lessen or avoid such impacts.

83. In its notice of the publication of the draft EIS, BOR provided only the minimum required 45 days for the public to evaluate the draft EIS and provide comments.

84. At the time the draft EIS was issued, the COVID-19 pandemic had just begun.

85. On or about March 12, 2020, just six days after the draft EIS was published, Nevada Governor Steve Sisolak issued an emergency order prohibiting all non-essential business and government functions, shutting downs all schools, libraries, and other public buildings, and prohibiting public gatherings.

86. Despite the onset of the state of emergency, BOR refused all requests to extend the public comment period to allow the public an opportunity to properly evaluate and provide comments on the draft EIS.

87. On or about April 20, 2020, Fernley submitted numerous written comments to BOR outlining significant deficiencies in the draft EIS particularly with respect to the failure to fully analyze the effects the proposed alternative will have on Fernley's aquifer.

88. Fernley included in its comments a copy of the model simulation report authored by Dr. Greg Pohll and once again requested that BOR use the DRI model to fully analyze the impacts of each project alternative.

89. In September 2020, BOR issued and published its final EIS.

90. Like the draft EIS, the final EIS did not include any non-lining action alternatives, failed to fully analyze the impacts that the preferred alternative will have on ground water resources in Fernley, and failed to include any discussion or evaluation of mitigation measures that BOR could take to lessen or eliminate such impacts.

91. After BOR issued the final EIS, Fernley made several attempts to contact decision makers within the BOR and the Department of Interior to request that they either (1) withhold the Record of Decision until the deficiencies in the EIS are addressed, or (2) place conditions on the Record of Decision requiring BOR to analyze and implement mitigation measures to limit the impacts of the project on the ground water aquifer.

92. Fernley's efforts were unsuccessful and on or about December 15, 2020, Defendant Ernest A. Conant, in his capacity as BOR Regional Director, executed the Record of Decision adopting Alternative 5 as the preferred alternative.

93. The December 15, 2020 Record of Decision is the final administrative action in this matter and Fernley has fully exhausted all administrative remedies to seek an amicable resolution of its issues.

## FIRST CLAIM FOR RELIEF

### (Violations of National Environmental Policy Act)

94. Plaintiff incorporates by reference each and every allegation set forth in the preceding paragraphs.

95. The National Environmental Policy Act ("NEPA") mandates a federal agency to "study, develop, and describe appropriate alternatives to recommended courses of action in any proposal which involves unresolved conflicts concerning alternative uses of available resources." 43 U.S.C. § 4332(e).

96. As described above, the proposed lining of the Truckee Canal is a project which involves an unresolved conflict regarding alternative uses of available resources.

97. Under the regulations implementing NEPA an agency must rigorously explore and evaluate all reasonable alternatives to the proposed action. 40 C.F.R. § 1502.14.

98. Under the regulations implementing NEPA, an EIS must include, among other things, a discussion of: (1) the direct effects of the project *and their significance*, (2) possible conflicts between the proposed action and the objectives of local land use plans and policies, (3) the environmental effects of each alternative, and (4) means to mitigate each identified adverse impact. 40 C.F.R. § 1502.16.

99. These regulations have been interpreted a requiring an agency to "consider every significant aspect of the environmental effect of a proposed action" and take a "hard look" at the environmental consequences. *Ctr. for Biological Diversity v. U.S. Forest Serv.*, 349 F.3d 1157, 1166 (9th Cir. 2003).

100. The "hard look" at environmental consequences required by the NEPA regulations must be done "objectively and in good faith, not as an exercise in form over substance, and not as a subterfuge designed to rationalize a decision already made." *W. Watersheds Project v. Kraayenbrink*, 632 F.3d 472, 490 (9th Cir. 2011).

101. BOR failed to include or evaluate as alternatives in the EIS reasonable, non-lining means of repairing the Truckee Canal that were previously identified in its own 2013 Planning Study and 2017 Corrective Action study, as well as other viable alternative proposals suggested by stakeholders and commentors throughout the process, including, without limitation, embankment reconstruction, installation of cutoff walls, continuation of current stage restrictions, and various combinations of these alternatives

102. The EIS prepared by BOR failed to include any discussion or analysis of the significance of the impacts the proposed project will have on ground water supplies within the Fernley area.

103. The EIS prepared by BOR failed to identify possible conflicts between the proposed action and the objectives of Fernley's land-use, parks, and utility master plans, in particular the effects that eliminating the primary source of recharge to ground water in the basin will have on existing and future development.

104. The EIS prepared by BOR failed to discuss and evaluate the scope and magnitude of the environmental effects of each alternative including, without limitation, a discussion of the estimated decline in ground water levels in the basin and the effect that such declines will have on existing municipal, commercial, industrial, and domestic wells in the basin.

105. The EIS prepared by BOR failed to identify or discuss mitigation measures that BOR could implement within its project to mitigate the adverse effects of the proposed alternative on ground water levels in the basin.

106. Despite repeated pleas from a cooperating agency to do so, BOR failed to use the best-available science to evaluating the environmental impacts of the proposed alternatives, in particular the ground water model developed by DRI for the Fernley basin.

107. BOR's failure to use the DRI ground water model, a model that it helped fund the development of, violated 40 C.F.R. § 1502.23's requirement that an agency "shall make use of reliable existing data and resources" including "statistical models."

108. BOR failed to "[m]ake diligent efforts to *involve the public* in preparing and implementing their NEPA procedures" (40 C.F.R. § 1506.6(a)) when it refused reasonable requests to

1  extend the 45-day deadline for the public to provide comments on the draft EIS despite the fact that
2  during most of the 45-day comment period the State of Nevada was under emergency lockdown
3  restrictions and stay-at-home orders as a result of the COVID-19 pandemic.
4  ///

## SECOND CLAIM FOR RELIEF

### (Violations of Administrative Procedures Act)

109. Plaintiff incorporates by reference each and every allegation set forth in the preceding paragraphs.

110. The Administrative Procedures Act ("APA") prohibits agency decisions that are arbitrary, capricious, an abuse of discretion, not in accordance with law, unsupported by substantial evidence, or unwarranted by the facts. 5 U.S.C. § 706(2).

111. BOR's December 15, 2020 Record of Decision adopting the EIS's preferred alternative was arbitrary, capricious, an abuse of discretion, and not in accordance with law because it was based on a flawed and insufficient analysis of reasonable alternatives, did not include a discussion of potential mitigation measures, and failed to fully analyze the significance and magnitude of potential environmental impacts.

112. BOR's December 15, 2020 Record of Decision adopting the EIS's preferred alternative was unsupported by substantial evidence and unwarranted by the facts because the EIS failed to use the best available science to evaluate potential environmental impacts of the proposed project and ignored facts and data provided by cooperating agencies and other stakeholders.

## THIRD CLAIM FOR RELIEF

### (Declaratory Relief – Fernley's Right to Recharge)

113. Plaintiff incorporates by reference each and every allegation set forth in the preceding paragraphs.

114. Appendix F of the EIS contains copies of legal correspondence between BOR and Fernley in which Fernley asserts a right to continued recharge from the Truckee Canal and BOR rejects Fernley's claims.

115. BOR's rejection of Fernley's claims formed the basis for BOR's failure to adequately evaluate impacts to the ground water aquifer from the proposed project or include any discussion of mitigation measures within the EIS. Accordingly, the question of Fernley's right to continued recharge from the canal is integral to the Court's determination of the sufficiency of the EIS.

116. Fernley has a right to continued recharge from the Truckee Canal under the implied dedication doctrine (Weil on Water Rights (3d Ed.) vol. 1 § 60) because: (1) BOR artificially changed the course of a portion of the Truckee River when it constructed the Truckee Canal, (2) at the time of its construction the Truckee Canal was intended to be a permanent feature, (3) the Truckee Canal has remained in existence and provided recharge to the Fernley ground water aquifer for more than 115 years, and (4) the Fernley community was established alongside the canal and has grown up in reliance on the ground water recharge provided by the Truckee Canal.

117. Fernley has a right to continued recharge from the Truckee Canal under the doctrine enunciated in *Nevada v. U.S.*, 463 U.S. 110, 113 (1983) because (1) Claim 3 water was diverted into the Truckee Canal for the specific purpose of providing water to support the growth and development of towns and cities within the Newlands Project, (2) the beneficial ownership of Claim 3 water rights within the Newlands Project is vested in the actual parties who appropriated and placed the water from the project to beneficial use, and (3) Fernley and other ground water users in the basin, including domestic well owners, have legally appropriated and placed to beneficial use the seepage water from the Truckee Canal thereby establishing a right to said water.

118. Fernley has a right to continued recharge from the Truckee Canal under the public use doctrine because (1) the seepage conditions have continued for a long time (115 years), (2) Fernley placed the seepage water to a bona fide public use when it appropriated said water in accordance with Nevada law, and (3) BOR acquiesced in Fernley's use of the seepage water and never challenged or contested such use.

119. Fernley has a right to continued recharge from the Truckee Canal because it appropriated said water only after the water had commingled with the waters in the natural water table and thus had lost its identity as separately owned irrigation water.

120. Fernley has a right to continued recharge from the Truckee Canal because it is water that was abandoned by BOR.

121. Fernley has a right to continued recharge from the Truckee Canal under the doctrine of equitable estoppel because: (1) BOR diverted the water into an artificial channel, (2) allowed the channel to remain in its condition for an extensive period of time (115 years), and (3) Fernley relied on the permanency of the Truckee Canal when it appropriated the seepage via state issued ground water permits.

122. Fernley has a right to continued recharge from the Truckee Canal under the doctrine of detrimental reliance because: (1) BOR knew, or should have known, that Fernley's ground water permits were issued by the State Engineer in reliance on continued recharge from the Truckee Canal and based on studies and reports prepared by a sister agency – the USGS, (2) BOR never contested or objected to Fernley's appropriations of the seepage water, (3) Fernley expended substantial sums of money constructing its municipal water infrastructure, including a $40 million state-of-the-art water treatment facility, in reliance on the continued recharge, and (4) Fernley will suffer a serious injustice if BOR is allowed to cut off a significant portion of its water supply.

## FOURTH CLAIM FOR RELIEF

### (Nuisance)

123. Plaintiff incorporates by reference each and every allegation set forth in the preceding paragraphs.

124. BOR's proposed project represents a significant change in the manner in which BOR has operated the Truckee Canal for more than 115 years.

125. BOR's proposed project will intentionally interfere with Fernley and its citizen's use and enjoyment of their property by causing water levels to drop and wells to fail.

126. BOR's interference with Fernley and its citizen's use and enjoyment of their property is substantial and unreasonable because the drying up of water supply wells within the city will cause a public health and safety crisis insofar as many property owners have no alternative means to supply

water to their homes and the City lacks the funding or ability to extend its municipal water supply infrastructure to those properties.

**PRAYERS FOR RELIEF**

WHEREFORE, Plaintiff prays that this Court issue a decree and order for the following relief:

1. An order enjoining and restraining BOR from beginning or continuing any work whatsoever on the proposed Truckee Canal Extraordinary Maintenance Project, or any other major alteration or modification of the Truckee Canal which would reduce or eliminate recharge from the Canal to the ground water aquifer.

2. A declaratory judgment that BOR's December 15, 2020 Record of Decision to proceed with the preferred alternative for the Truckee Canal Extraordinary Maintenance Project violates NEPA and its implementing regulations and is arbitrary, capricious, an abuse of discretion, not in accordance with applicable laws and regulations, unsupported by substantial evidence, and unwarranted by the facts, for the reasons stated herein.

3. An order rescinding the ROD and FEIS for the Truckee Canal Extraordinary Maintenance Project because the preparations and issuance of the EIS did not meet the requirements of NEPA or its implementing regulations for the reasons stated herein.

4. A declaratory judgement recognizing and affirming Fernley's right to continued recharge from the Truckee Canal.

5. For such other relief as the Court may deem just and proper.

Dated: March 10th, 2021

Respectfully submitted,

By: _____
DAVID H. RIGDON, ESQ.
Nevada State Bar No. 13567
PAUL G. TAGGART, ESQ.
Nevada State Bar No. 6136
Attorneys for City of Fernley