CHRISTOPHER CHIOU, Acting United States Attorney
GREG ADDINGTON, Assistant United States Attorney
Bruce R. Thompson U.S. Courthouse & Federal Bldg.
400 South Virginia Street, Suite 900
Reno, Nevada 89501
Tel: (775) 334-3347

JEAN E. WILLIAMS, Acting Assistant Attorney General
EVE W. MCDONALD, Trial Attorney (CO Bar No. 26304)
JEFFREY S. THOMAS, Trial Attorney (VA Bar No. 86439)
United States Department of Justice
Environment and Natural Resources Division
999 18th Street, South Terrace, Suite 370
Denver, Colorado  80202
Tel: (303) 844-1381/Fax: (303) 844-1350
Email: Evelyn.McDonald@usdoj.gov

*Attorneys for Defendants*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| CITY OF FERNLEY, a political subdivision of the State of Nevada, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| ERNEST A. CONANT, Regional Director; UNITED STATES BUREAU OF RECLAMATION, | ) ) ) ) |
| Defendants. | ) ) ) |

Case Number:  3:21-cv-119-MMD

**DEFENDANTS' MOTION TO DISMISS AND MEMORANDUM IN SUPPORT**

Oral Argument Requested

     The Defendants, Ernest Conant and the United States Bureau of Reclamation ("Reclamation"), move to dismiss the City of Fernley's (the "City" or "Fernley") Complaint in its entirety pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  In support of their Motion to Dismiss for Lack of Jurisdiction and for Failure to State a Claim, Defendants include the following memorandum.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## **TABLE OF CONTENTS**

I.      INTRODUCTION ........................................................................................ 1

II.     BACKGROUND ......................................................................................... 3

        A.      The Truckee Canal ......................................................................... 3

        B.      2008 Flood and the Aftermath ....................................................... 3

        C.      The FEIS and ROD on Truckee Canal Extraordinary Maintenance ..................... 4

III.    LEGAL STANDARDS ............................................................................... 5

        A.      12(b)(1) – Motion to Dismiss for Lack of Jurisdiction ................. 5

        B.      12(b)(6) – Motion to Dismiss for Failure to State a Claim ................... 6

IV.     ARGUMENT ............................................................................................. 6

        A.      FERNLEY'S NEPA CLAIM FAILS ............................................ 6

                1.      Fernley lacks prudential standing to bring a NEPA claim because it has
                        not alleged any harm to the physical environment. ................... 8

                2.      Fernley cannot bring a stand-alone NEPA claim ..................... 10

        B.      FERNLEY'S APA CLAIM FAILS BECAUSE FERNLEY CANNOT
                BRING A STAND-ALONE APA CLAIM. ......................................... 11

        C.      FERNLEY'S DECLARATORY JUDGMENT CLAIM FAILS ........................ 11

                1.      Fernley cannot bring its DJA claim because the United States has not
                        waived its sovereign immunity. ................................................. 12

                2.      Fernley has not established a basis for federal jurisdiction over its DJA
                        claim ........................................................................................... 14

                        a.      If it finds it has federal question jurisdiction over the City's
                                NEPA claim, the Court should still decline to exercise
                                supplemental jurisdiction over the City's third claim ................. 14

                        b.      Even if it chooses to exercise supplemental jurisdiction over
                                Fernley's claim to continued artificial recharge, the Court
                                should still decline to issue a declaratory judgment. ................... 16

3.    Fernley cannot bring its DJA claim because the Nevada State Engineer has primary jurisdiction to determine whether Fernley has a right to continued artificial recharge. ................................................. 17

4.    Fernley's claim seeking a judicial declaration that it has a right to seepage is time-barred and must be dismissed. ........................................ 21

5.    Fernley has failed to state a claim for a right to recharge. ........................ 23

D.    FERNLEY'S NUISANCE CLAIM FAILS. ........................................................ 25

1.    The United States has not waived its sovereign immunity from the nuisance claim. ........................................................................... 25

2.    Fernley's nuisance claim is barred by the statute of limitations. .............. 27

3.    Fernley fails to state a claim for nuisance. ................................................. 27

V.    CONCLUSION ..................................................................................................... 29

1

## <u>**TABLE OF AUTHORITIES**</u>

2

**Cases**

3
460 U.S. 766 (1983) ........................................................................................... 9

4
*App. of Fillipini*,
   202 P.2d 535 (Nev. 1949) .............................................................................. 18

5

6
*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ........................................................................................ 6

7
*Bartleson v. United States*,
   96 F.3d 1270 (9th Cir. 1996) ......................................................................... 25

8

9
*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ........................................................................................ 6

10

11
*Brandes v. United States*,
   783 F.2d 895 (9th Cir. 1986) ......................................................................... 25

12
*Burkholder v. Peters*,
   58 F. App'x 94 (6th Cir.2003) ......................................................................... 9

13

14
*Cal. Or. Power Co. v. Beaver Portland Cement Co.*,
   295 U.S. 142 (1935) ................................................................................. 24, 29

15
*Califano v. Sanders*,
   430 U.S. 99 (1977) ........................................................................................ 14

16

17
*California v. United States*,
   438 U.S. 645 (1978) ................................................................................. 28, 29

18
*Cardelli v. Comstock Tunnel Co.*,
   66 P. 950 (Nev. 1901) .................................................................................... 24

19

20
*City of Chicago v. Int'l Coll. of Surgeons*,
   522 U.S. 156 (1997) ...................................................................................... 15

21
*City of Sausalito v. O'Neill*,
   386 F.3d 1186 (9th Cir. 2004) ......................................................................... 2

22

23
*Coal. for ICANN Transparency, Inc. v. VeriSign, Inc.*,
   611 F.3d 495 (9th Cir. 2010) ........................................................................... 6

24
*Colo. River Indian Tribes v. Town of Parker*,
   776 F.2d 846 (9th Cir. 1985) ........................................................................... 2

25

26
*Corey v. McNamara*,
   409 F. Supp. 2d 1225 (D. Nev. 2006) ............................................................ 25

27
*Countrywide Home Loans, Inc. v. Thitchener*,
   124 Nev. 725 (Nev. 2008) ............................................................................. 25

28

iii

*Dalfio v. P.I.D. Univ., Inc.,*
  No. 21CV911-CAB-JLB, 2021 WL 1923280 (S.D. Cal. May 13, 2021).................................. 15

*Dep't of Treasury-IRS v. Fed. Lab. Rels. Auth.,*
  521 F.3d 1148 (9th Cir. 2008) ..................................................................................................... 5

*Doe v. United States,*
  976 F.2d 1071 (7th Cir. 1992) ................................................................................................... 26

*Duval Ranching Co. v. Glickman,*
  965 F. Supp. 1427 (D. Nev. 1997)....................................................................................... 12, 14

*El Rescate Legal Servs., Inc. v. Exec. Off. of Immigr. Rev.,*
  959 F.2d 742 (9th Cir. 1991) ..................................................................................................... 11

*Erie R. Co. v. Tompkins,*
  304 U.S. 64 (1938) .................................................................................................................... 27

*FDIC v. Meyer,*
  510 U.S. 471 (1994) ............................................................................................................ 12, 26

*First Am. Title Co. v. State,*
  543 P.2d 1344 (Nev. 1975) ....................................................................................................... 19

*Gallio v. Ryan,*
  286 P. 963 (Nev. 1930) ............................................................................................................. 23

*Gardner v. Stager,*
  103 F.3d 886 (9th Cir. 1996) ............................................................................................... 12, 13

*Gov't Emps. Ins. Co. v. Dizol,*
  133 F.3d 1220 (9th Cir. 1998) .................................................................................................. 17

*Heartwood, Inc. v. Agpaoa,*
  628 F.3d 261 (6th Cir. 2010) ...................................................................................................... 9

*Huynh v. Chase Manhattan Bank,*
  465 F.3d 992 (9th Cir. 2006) .................................................................................................... 22

*Illinois v. City of Milwaukee, Wis.,*
  92 U.S. 1385 (1972) .................................................................................................................. 28

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.,*
  546 F.3d 981 (9th Cir. 2008) ...................................................................................................... 5

*Jones v. Adams,*
  6 P. 442 (Nev. 1885) ................................................................................................................. 18

*Kosak v. United States,*
  465 U.S. 848 (1984).................................................................................................................. 25

*Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak,*
  567 U.S. 209 (2012) .................................................................................................................. 14

iv

*McMahon v. United States*,
   342 U.S. 25 (1951)................................................................................................ 25

*Metropolitan Edison Co. v. People Against Nuclear Energy*,
   460 U.S. 766 (1983)............................................................................................... 8

*Michigan v. U.S. Army Corps of Eng'nrs*,
   667 F.3d 768 (7th Cir. 2011) ............................................................................. 28

*Milwaukee v. Illinois & Michigan*,
   451 U.S. 304 (1981)............................................................................................. 27

*Moss v. U.S. Secret Serv.*,
   572 F.3d 962 (9th Cir. 2009) ............................................................................... 6

*Nev. Land Action Ass'n v. U.S. Forest Serv.*,
   8 F.3d 713 (9th Cir. 1993) ................................................................................... 9

*Nevada v. United States*,
   463 U.S. 110 (1983)...................................................................................... 19, 20

*Nuclear Info. & Res. Serv. v. Nuclear Regul. Comm'n*,
   457 F.3d 941 (9th Cir. 2006) ......................................................................... 8, 10

*Oscar v. Univ. Students Co-op. Ass'n.*,
   965 F.2d 783 (9th Cir. 1992) ............................................................................... 6

*Poulos v. Caesars World, Inc.*,
   379 F.3d 654 (9th Cir. 2004) ............................................................................. 21

*Pub. Affs. Assocs. v. Rickover*,
   369 U.S. 111 (1962)............................................................................................. 17

*Pub. Serv. Comm'n of Utah v. Wycoff Co.*,
   344 U.S. 237 (1952)............................................................................................. 17

*Pyramid Lake Paiute Tribe of Indians v. Morton*,
   354 F. Supp. 252 (D.D.C. 1973) .................................................................. 22, 29

*Ranchers Cattlemen Action Legal Fund United Stockgrowers of Am. v. U.S. Dep't of Agric.*,
   415 F.3d 1078 (9th Cir. 2005) .......................................................................... 8, 9

*Regatta Bay Ltd. v. United States*,
   No. 2:07-CV-01619-PMP-PAL, 2009 WL 10709921 (D. Nev. May 27, 2009) .................... 22

*Reno Smelting, Milling & Reduction Works v. Stevenson*,
   21 P. 317 (Nev. 1889)......................................................................................... 18

*Safeway Portland Emps.' Fed. Credit Union v. FDIC*,
   506 F.2d 1213 (9th Cir. 1974) ........................................................................... 25

*Settles v. U.S. Parole Comm'n*,
   429 F.3d 1098 (D.C. Cir. 2005) ........................................................................... 5

v

*Shiny Rock Mining Corp. v. United States*,
   906 F.2d 1362 (9th Cir. 1990) ............................................ 21

*Skelly Oil Co. v. Phillips Petroleum Co.*,
   339 U.S. 667 (1950)............................................................ 14

*Sowers v. Forest Hills Subdivision*,
   294 P.3d  (Nev. 2013)........................................................ 26

*Spirit Lake v. North Dakota*,
   262 F.3d 732 (8th Cir. 2001) ............................................. 12

*State of California By & Through Dep't of Water Res. v. Oroville-Wyandotte Irrigation Dist.*,
   409 F.2d 532 (9th Cir. 1969) ............................................. 16

*Stock W., Inc. v. Confederated Tribes of the Colville*,
   *Rsrv.*, 873 F.2d 1221 (9th Cir. 1989) ................................... 5

*Syntek Semiconductor Co. v. Microchip Tech., Inc.*,
   307 F.3d 775 (9th Cir. 2002) ............................................. 21

*Tunac v. United States*,
   897 F.3d 1197 (9th Cir. 2018) ........................................... 27

*United Mine Workers of Am. v. Gibbs*,
   383 U.S. 715 (1966)........................................................... 15

*United States v. Alpine & Land & Reservoir Co.*,
   983 F.2d 1487 (9th Cir. 1983) ........................................... 20

*United States v. Alpine Land & Reservoir Co.*,
   341 F.3d 1172 (9th Cir. 2003) ........................................... 15

*United States v. Alpine Land & Reservoir Co.*,
   503 F. Supp. 877 (D. Nev. 1980) ...................................... 20

*United States v. Alpine Land & Reservoir Co.*,
   878 F.2d 1217 (9th Cir. 1989) ........................................... 19

*United States v. Alpine Land & Reservoir Co.*,
   Nos. 3:73-CV-00183-LDG, 3:73-CV-00211-LDG, 2015 WL 1186727 (D. Nev. Mar. 13, 2015)
   ......................................................................... 19, 23

*United States v. Braren*,
   338 F.3d 971 (9th Cir. 2003) ............................................. 16

*United States v. Mitchell*,
   463 U.S. 206 (1983)............................................................. 5

*United States v. Orr Water Ditch Co.*,
   914 F.2d 1302 (9th Cir. 1990) ............................... 6, 18, 19

vi

*United States v. Ritchie,*
    342 F.3d 903 (9th Cir. 2003) .................................................................. 22

*United States v. Smith,*
    499 U.S. 160 (1991) .............................................................................. 25

*United States v. State Water Res. Control Bd.,*
    418 F. Supp. 3d 496 (E.D. Cal. 2019) .................................................. 17

*United States v. W. Pac. R. Co.,*
    352 U.S. 59 (1956) .......................................................................... 19, 20

*W. Radio Servs. Co. v. Espy,*
    79 F.3d 896 (9th Cir. 1996) ..................................................................... 9

*Wild Fish Conservancy v. Jewell,*
    730 F.3d 791 (9th Cir. 2013) ................................................................... 6

*Wild Fish Conservancy v. Salazar,*
    688 F. Supp. 2d 1225 (E.D. Wash. 2010) ........................................ 6, 21

*Wilton v. Seven Falls Co.,*
    515 U.S. 277 (1995) .............................................................................. 17

*Young v. United States,*
    769 F.3d 1047 (9th Cir. 2014) .............................................................. 25

**Statutes**

5 U.S.C. § 702 ............................................................................................ 12

5 U.S.C. § 702(2) ................................................................................ 12, 27

28 U.S.C. § 1331 ........................................................................................ 14

28 U.S.C. § 1346(b)(1) ........................................................................ 25, 26

28 U.S.C. § 1367 ........................................................................................ 14

28 U.S.C. § 1367(a) .................................................................................... 15

28 U.S.C. § 1367(c) .................................................................................... 15

28 U.S.C. § 2401(a) .............................................................................. 21, 27

28 U.S.C. § 2401(b) .................................................................................... 27

28 U.S.C. § 2409a ...................................................................................... 12

28 U.S.C. § 2409a(a) .......................................................................... 12, 13

28 U.S.C. §2409a(n) ................................................................................... 13

42 U.S.C. § 4321 .......................................................................................... 8

43 U.S.C. § 666 .......................................................................................... 12

Nev. Rev. Stat. § 533.025 ................................................................................................. 29

Nev. Rev. Stat. § 533.325 ................................................................................................. 19

Nev. Rev. Stat. § 534.020 ....................................................................................... 18, 19, 29

Nev. Rev. Stat. § 534.020(1) .............................................................................................. 15

Nev. Rev. Stat. §§ 533.325–533.350 .................................................................................. 18

Pub. L. No. 101-618, 104 Stat. 3289 (1990) ...................................................................... 20

**Regulations**

40 C.F.R. § 1508.1 .............................................................................................................. 9

43 C.F.R. § 418.1 .............................................................................................................. 29

43 C.F.R. § 418.17 ......................................................................................................... 3, 22

43 C.F.R. § 418.20 .............................................................................................................. 4

43 C.F.R. Part 418 ............................................................................................................ 22

43 C.F.R. Part 418 (2019) ................................................................................................... 3

**Other Authorities**

Final Decree, *United States v. Orr Water Ditch Co.*, Equity No. A-3 (D. Nev. 1944)  3, 13, 19, 29

*Natural*, *Merriam-Webster.com*, https://www.merriam-webster.com/dictionary/natural (last visited May 27, 2021) ........................................................................................................ 9

Nev. State Eng'r Ruling No. 6047 at 12 (June 25, 2010) and 6048 at 6 (July 13, 2010) ............ 24

Restatement (Second) Torts § 821B (1979); Dan B. Dobbs, *The Law of Torts* § 467, at 1334 (2000) ............................................................................................................................ 28

## I.  INTRODUCTION

Reclamation has authorized the Truckee-Carson Irrigation District ("TCID") to conduct extraordinary maintenance on the Truckee Canal ("Canal") to reduce the long-term risk of another breach of the Canal.  The improvements to the Canal will result in an incidental reduction in artificial groundwater recharge that seeps from the Canal ("seepage") into the local aquifer as TCID delivers Truckee River water to the Newlands Reclamation Project ("Project").  Fernley objects to lining the Canal, claiming it will "cut[] off the historical recharge that the Canal has provided to the Fernley groundwater aquifer."  Compl. ¶ 3, ECF No. 1.

Fernley filed this lawsuit challenging Reclamation's decision authorizing TCID to partially line the Canal.[1]  Fernley alleges violations of the National Environmental Policy Act ("NEPA") and the Administrative Procedure Act ("APA").  Specifically, Fernley claims that Reclamation violated NEPA by failing to consider other alternatives to lining segments of the Canal with an impermeable geomembrane and concrete lining.  *Id.* ¶¶ 99–101.  Fernley also claims that Reclamation violated the APA, alleging that the decision to line the Canal was arbitrary, capricious, an abuse of discretion, and not in accordance with law because there were other alternatives available that would have continued to allow seepage into Fernley's groundwater aquifer.  *Id.* ¶ 111.  In addition to its NEPA and APA claims, Fernley asks the Court to declare that it has acquired a right to demand continued seepage.  And finally, Fernley filed a nuisance claim against Reclamation, arguing that lining the Canal will constitute a public nuisance.  All of Fernley's claims should be dismissed.

First, Fernley's NEPA claim must be dismissed because Fernley lacks prudential standing as it has not alleged a harm to the physical environment, but instead has only alleged economic harm to the City and its residents.  Second, Fernley has pled stand-alone NEPA and APA claims, but the claims cannot stand alone, because NEPA does not create a private right of action and the

---

[1] Two individual groundwater users, Stix and Edmonston, jointly intervened in this case as Plaintiffs with NEPA, APA, and Declaratory Judgment claims that are virtually the same as Fernley's.  Their complaint in intervention is the subject of a separate motion to dismiss filed on this date.

APA only provides the procedural mechanism for challenging the Government's failure to comply with other statutes.  Third, Fernley's Declaratory Judgment Act claim ("DJA claim") must be dismissed because (1) the United States has not waived its sovereign immunity or otherwise consented to be sued to determine whether Fernley has a right to demand continued seepage; (2) Fernley has not established an independent basis upon which the Court can exercise federal jurisdiction over its DJA claim; (3) Fernley cannot seek a judicial declaration that it owns the right to seepage without exhausting its administrative remedies with the Nevada State Engineer, or alternatively, the Court should abstain from hearing Fernley's claims because the State Engineer has primary jurisdiction to appropriate or adjust water rights; (4) Fernley's DJA claim is time-barred because the United States asserted its adverse interest in the seepage more than six years ago, and (5) Fernley has not stated a claim for a right to demand continued seepage.  And finally, Fernley's nuisance claim must be dismissed because (1) to the extent Fernley claims a tort has been committed by the United States, the Federal Tort Claims Act is the City's exclusive remedy and the sole basis for the United States' waiver of sovereign immunity; (2) Fernley's nuisance claim is time-barred because it learned about the alleged nuisance more than six years ago; and (3) regardless of whether the Court can exercise jurisdiction over the City's nuisance claim, Plaintiff has not alleged the elements of a nuisance claim.

For these reasons, which are discussed more fully below, the Court should dismiss Fernley's Complaint in its entirety.[2]

---

[2] Fernley's Complaint is unclear as to whether the City is bringing claims on behalf of itself or also on behalf of its citizens.  Municipalities' "power is derivative and not sovereign," and therefore they "cannot sue as *parens patriae*."  *City of Sausalito v. O'Neill*, 386 F.3d 1186, 1197 (9th Cir. 2004) (quoting *Colo. River Indian Tribes v. Town of Parker*, 776 F.2d 846, 848 (9th Cir. 1985)).  To the extent Fernley is raising claims on behalf of its citizens, those claims must be dismissed for lack of standing.  *Id.*

## II. BACKGROUND

**A.    The Truckee Canal**

Reclamation constructed the Truckee Canal between 1903 and 1905 as part of the Newlands Project, one of the first irrigation projects authorized under the Reclamation Act of 1902.  It began as an earthen canal and, while portions have been lined, the majority of the Canal is still earthen today.  It is roughly thirty-one miles long, and typically greater than twenty feet wide.  It carries water to the Truckee Division of the Newlands Project, and further east into the Carson River basin as a supplemental supply for the Carson Division of the Project.  Under the *Orr Ditch* decree, the Pyramid Lake Paiute Tribe owns Claims 1 and 2 – the two most senior water rights on the Truckee River – and under Claim 3 the United States has a water right to divert up to 1500 cubic feet per second of water into the Canal for Project purposes at Derby Diversion Dam, which is on the Truckee River just upstream of Pyramid Lake.  *See* Final Decree, *United States v. Orr Water Ditch Co.*, Equity No. A-3 (D. Nev. 1944) ("*Orr Ditch* Decree").  Diversions into the Truckee Canal have been heavily litigated and are the subject of a federal regulation called the Operating Criteria and Procedures ("OCAP").  43 C.F.R. Part 418 (2019).  Truckee River water is a supplemental supply for the Carson division of the Newlands Project, to be diverted to Lahontan Reservoir when the Carson River is not expected to provide enough water for Project demand in a water year.  *See, e.g.*, 43 C.F.R. § 418.17 ("Project water must be managed to make maximum use of Carson River water and to minimize diversions of Truckee River water through the Truckee Canal").  TCID operates the Project, including making diversions into the Truckee Canal, under a transfer of operation and maintenance contract with Reclamation pursuant to federal Reclamation law.

**B.    2008 Flood and the Aftermath**

On January 5, 2008, after a large storm, the Truckee Canal's north embankment breached at a point approximately twelve miles downstream of Derby Dam, within the City of Fernley. This was the tenth time the Canal had breached.  An uncontrolled water release flooded approximately 590 properties in Fernley.  TCID repaired the breach in February 2008, and the Canal reopened in March 2008.  However, until long-term repairs are made, TCID is required to

3

1   comply with short-term risk reduction measures designed by Reclamation.  These include a

2   lowered maximum allowed diversion rate and stage restrictions (i.e., limits on the height of

3   water) in vulnerable places in the Canal through the Fernley reach (collectively, "safety

4   restrictions").  Under TCID's Operation and Maintenance Contract with Reclamation, TCID is

5   responsible for maintaining the Canal in good and efficient condition at no expense to the United

6   States.  However, certain substantial repairs require Reclamation approval.  The TCID Board of

7   Directors requested support from Reclamation on how to improve the structural integrity of the

8   Canal, and formally entered into a pre-construction repayment contract (Contract No. 14-WC-

9   20-4597) with Reclamation for the purposes of up-front funding from Reclamation (which TCID

10   must ultimately repay) and completing the planning, engineering, and feasibility studies to

11   improve the structural integrity of the Canal for the long term.

12   **C.**      **The FEIS and ROD on Truckee Canal Extraordinary Maintenance**

13          After preliminary studies and public scoping, Reclamation began a NEPA review in

14   2015.  The project purpose is "to enable the TCID to complete necessary repairs to restore safe,

15   long-term operation of the Canal, so Newlands Project water rights can be served under the

16   existing Newlands Project OCAP (43 C.F.R. § 418.20) and in compliance with decrees,

17   contracts, and other applicable laws, as funding becomes available."  Final Environmental

18   Impact Statement ("FEIS" or "Final EIS") § 1.2.

19          Reclamation published a Draft EIS in April, 2020.  Shortly thereafter, Fernley filed a

20   Petition for Writ of Mandamus asking this Court to extend the public comment period due to

21   COVID-19.  Emergency Pet. for Writ of Mandamus, *City of Fernley v. U.S. Bureau of

22   Reclamation*, No. 3:20-cv-00221-MMD (D. Nev. Apr. 9, 2020), ECF No. 1.  This Court held that

23   it lacked jurisdiction to issue such an order because Reclamation's decision on the comment

24   period was within Reclamation's discretion.  April 17, 2020 Order at 4-5, *City of Fernley*, ECF

25   No. 13 (No. 3:20-cv-0221-MMD).

26          Reclamation issued the Final EIS on Truckee Canal Extraordinary Maintenance ("XM")

27   in September 2020, naming Alternative 5 as the preferred alternative, and issued a Record of

28

4

Decision ("ROD") in December 2020, selecting Alternative 5.[3]  Alternative 5 includes lining the full prism of segments of the Canal for a total of 12.7 miles with a geomembrane and concrete liner, as well as several other structural and hydrologic fixes that are not relevant to the Complaint.  The ROD explained that Reclamation chose Alternative 5 because it meets the purpose and need while providing the highest risk reduction of all the alternatives.  ROD at 2; FEIS § 2.5.  It also "reduces risk without introducing new risks" and has among the lowest maintenance costs.  *Id.* § ES.7.  When funding is available, TCID will make the actual repairs to the Canal as part of its responsibilities in operating and maintaining the Canal.

### III.  LEGAL STANDARDS

#### A.      12(b)(1) – Motion to Dismiss for Lack of Jurisdiction

The Court must dismiss claims under Fed. R. Civ. P. 12(b)(1) if the complaint fails to establish federal subject matter jurisdiction over those claims.  *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 546 F.3d 981, 984–85 (9th Cir. 2008).  Federal courts are "presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears." *Stock W., Inc. v. Confederated Tribes of the Colville Rsrv.*, 873 F.2d 1221, 1225 (9th Cir. 1989). Because Fernley asserted federal jurisdiction in this case, it is the City's burden to prove jurisdiction exists over its claims.  *See id.*

"It is axiomatic that the United States may not be sued without its consent."  *United States v. Mitchell*, 463 U.S. 206, 212 (1983).  If the United States does not waive its sovereign immunity for a particular claim, then courts lack subject matter jurisdiction to adjudicate those claims.  *See Dep't of Treasury-IRS v. Fed. Lab. Rels. Auth.*, 521 F.3d 1148, 1152–53 (9th Cir. 2008); *Settles v. U.S. Parole Comm'n*, 429 F.3d 1098, 1105 (D.C. Cir. 2005).  Therefore, without a valid waiver of sovereign immunity, a plaintiff's claims against the United States must be dismissed.  *Id.*

---

[3]  Both the FEIS and the ROD are available on Reclamation's website at: https://www.usbr.gov/mp/nepa/nepa_project_details.php?Project_ID=25717.

1    Additionally, federal courts will not exercise their jurisdiction if a state administrative

2    agency has primary jurisdiction or if the plaintiff was required to exhaust administrative

3    remedies and failed to do so. *See Wild Fish Conservancy v. Salazar*, 688 F. Supp. 2d 1225, 1238

4    (E.D. Wash. 2010) (finding that "abstention under primary jurisdiction is especially well-suited

5    to the present situation with respect to plaintiffs' water rights claims"), *appeal dismissed sub*

6    *nom. Wild Fish Conservancy v. Jewell*, 730 F.3d 791, 798 (9th Cir. 2013); *United States v. Orr*

7    *Water Ditch Co.*, 914 F.2d 1302, 1309–10 (9th Cir. 1990) ("The State Engineer plays a major

8    role in Nevada's statutory water scheme. He determines every matter relating to water rights,

9    either by request or on his own initiative. . . . Under Nevada law, a party must exhaust these

10   administrative procedures before seeking judicial relief.").

11   **B.      12(b)(6) – Motion to Dismiss for Failure to State a Claim**

12   Dismissal under Federal Rule of Civil Procedure 12(b)(6) is appropriate when, as a

13   matter of law, the plaintiff's allegations fail to establish a cause of action. *Oscar v. Univ.*

14   *Students Co-op. Ass'n.*, 965 F.2d 783, 785 (9th Cir. 1992). On a motion to dismiss under Rule

15   12(b)(6), all material facts are accepted as true and are construed in the light most favorable to

16   the plaintiff. *Coal. for ICANN Transparency, Inc. v. VeriSign, Inc.*, 611 F.3d 495, 501 (9th Cir.

17   2010). A complaint need not state detailed factual allegations, but must contain sufficient factual

18   matter to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678

19   (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Ninth Circuit has

20   summarized the governing standard as follows: "[F]or a complaint to survive a motion to

21   dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must

22   be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572

23   F.3d 962, 969 (9th Cir. 2009) (internal citation omitted).

24                                    **IV. ARGUMENT**

25   **A.      FERNLEY'S NEPA CLAIM FAILS.**

26   Fernley claims Reclamation violated NEPA by failing to fully consider: (1) alternatives

27   that would not cut off artificial recharge to the Fernley aquifer, (2) the impacts of the proposed

28   partial lining on groundwater levels, and (3) potential mitigation measures that could offset or

lessen the effects on groundwater levels.  Compl. ¶ 4.  Despite framing the claim in terms of environmental harm, the only environmental impact that Fernley alleges is that the Canal lining will reduce the seepage that artificially recharges the local aquifer and raises the ground water table well above its naturally occurring level.[4]  *Id.* ¶¶ 32, 71, 102–04.  Beyond restoring the recharge of the aquifer to its naturally occurring levels, Fernley alleges no other environmental impacts.  Instead, Fernley's Complaint focuses on the economic impact that lining the Canal will have on the City and its residents, including requiring the City to update its municipal water system and potentially diminishing the monetary value of residential and commercial properties that were built outside the boundaries of the municipal water system.[5]

If Fernley's argument is dissected, the City is actually making an argument that supports harm to the environment.  It is asserting that Reclamation should be forced to continue an inefficient method of delivery of Project water to Project water users so that the people of Fernley have access to free water through seepage, disregarding that diversions from the Truckee River must be minimized to protect endangered species.[6]  In other words, Fernley elevates real

---

[4] Compl. ¶ 29 ("The [] estimated [] natural recharge in the Fernley basin [is] at 600 acre-feet per year, but [] an additional 18,000 acre-feet per year of water seeps into the aquifer from the unlined Truckee Canal.").

[5] Compl. ¶ 30 (alleging that "In reliance on the USGS water budgets and the seepage from the Truckee Canal, the Nevada State Engineer has issued more than 11,500 acre-feet per year of ground water permits in the Fernley basin including approximately 8,900 acre-feet per year of permits for municipal water."); *id.* ¶ 31 (alleging that "In addition to the ground water permits issued by the Nevada State Engineer, several hundred domestic wells have been drilled to supply water to homes within the Fernley area that do not have access to the Fernley municipal water system or any reliable alternative source of water."); *id.* ¶ 32 (alleging that "Because the natural perennial yield of the basin is estimated to be just 600 acre-feet per year, the users of ground water within Fernley, including the Fernley municipal water system, are utterly reliant on seepage from the canal to keep the aquifer recharged and in a healthy condition.").

[6] By diverting additional water for the Newlands Project to account for the seepage from the Canal, downstream water users like the Pyramid Lake Paiute Tribe receive less water.  This creates potential risk of actual environmental harm to the fish in Pyramid Lake, including the endangered cui-ui and the threatened Lahontan cutthroat trout.

estate development and urbanization (*i.e.*, "man's activity") over "preservation and enhancement of the environment."  42 U.S.C. § 4331(c).

1.      __Fernley lacks prudential standing to bring a NEPA claim because it has not alleged any harm to the physical environment.__

NEPA was enacted in 1970 to "promote efforts which will prevent or eliminate damage to the environment and biosphere."[7] 42 U.S.C. § 4321.  NEPA itself creates no private right of action; therefore, a plaintiff "challenging an agency action based on NEPA must do so under the [APA]."  *Nuclear Info. & Res. Serv. v. Nuclear Regul. Comm'n*, 457 F.3d 941, 950 (9th Cir. 2006).  To have "statutory" or "prudential" standing under the APA a plaintiff "must establish (1) that there has been a final agency action adversely affecting [it], and (2) that, as a result, it suffers legal wrong or that its injury falls within the 'zone of interests' of the statutory provision the plaintiff claims was violated.'"  *Id.* (citation omitted).  The "zone of interests" protected by NEPA is environmental.

The Supreme Court has instructed not to give "environmental" its "broadest possible definition" because "the words 'adverse environmental effects' might embrace virtually any consequence of a governmental action that some one thought 'adverse.'"  *Metro. Edison Co.*, 460 U.S. at 772.  Rather than embracing a broad and unwieldy definition of "adverse environmental effects" the Supreme Court concluded that NEPA is limited to preventing or mitigating harms to the physical environment.  *Id.*; *see also Ranchers Cattlemen Action Legal Fund United*

---

[7] In *Metropolitan Edison Co. v. People Against Nuclear Energy*, the Supreme Court further defined NEPA's purpose:

> NEPA is a declaration that we do not intend as a government or as a people to initiate actions which endanger the continued existence or the health of mankind: That we will not intentionally initiate actions which do irreparable damage to the air, land and water which support life on earth. We can now move forward to preserve and enhance our air, aquatic, and terrestrial environments . . . to carry out the policies and goals set forth in the bill to provide each citizen of this great country a healthful environment.

460 U.S. 766, 773 (1983) (citations and emphases omitted).

*Stockgrowers of Am. v. U.S. Dep't of Agric.*, 415 F.3d 1078, 1103 (9th Cir. 2005).  Without injury to the physical environment, psychological or economic injuries and pure harm to human health are insufficient to bring a plaintiff's claim within NEPA's orbit.  *See Metro. Edison Co.*, 460 U.S. at 778-79 (noting that alleged psychological harm to residents of a town when a nearby nuclear facility reopened was not enough to establish statutory standing under NEPA); *Nev. Land Action Ass'n v. U.S. Forest Serv.*, 8 F.3d 713, 716 (9th Cir. 1993) ("[A] plaintiff who asserts purely economic injuries does not have standing to challenge an agency action under NEPA." (citations omitted)); *W. Radio Servs. Co. v. Espy*, 79 F.3d 896, 902–03 (9th Cir. 1996) ("NEPA's purpose is 'to protect the environment, not the economic interests of those adversely affected by agency decisions . . . .'" (citation omitted)); *Ranchers Cattlemen Action Legal Fund United Stockgrowers of Am.*, 415 F.3d at 1103 (holding that allegations of harm to human health are not protected by NEPA unless there is a connection between that harm and physical harm to the environment).

The primary mechanism through which government officials comply with NEPA is by preparing "an [Environmental Impact Statement] for any major Federal action significantly affecting the quality of the human environment."  *Heartwood, Inc. v. Agpaoa*, 628 F.3d 261, 264 (6th Cir. 2010) (citing *Burkholder v. Peters*, 58 F. App'x 94, 96 (6th Cir.2003) (quoting 42 U.S.C. § 4332(2)(C)).  NEPA's implementing regulations define "human environment" as the "*natural* and physical environment and the relationship of present and future generations of Americans with that environment."  40 C.F.R. § 1508.1 (emphasis added).  Merriam-Webster defines "natural" as: "being in accordance with or determined by nature"; "occurring in conformity with the ordinary course of nature"; "growing without human care"; "existing in or produced by nature : not artificial."  *See Natural*, *Merriam-Webster.com*, https://www.merriam-webster.com/dictionary/natural (last visited May 27, 2021).  As Fernley admits in Paragraph 29 of its Complaint, the artificial recharge of the local aquifer is not natural, it is the consequence of human intervention.  When and if TCID lines segments of the Canal with the impermeable geomembrane and concrete lining approved in the FEIS and ROD, the amount of artificial

recharge will be reduced, so the recharge of the aquifer will return to its natural or pre-Canal state.

Fernley does not allege that reducing artificial recharge harms the natural and physical environment.  The only harm Fernley identifies is that it and its citizens rely on the artificial recharge for their groundwater wells.  And we know from Fernley's Complaint that the City and its citizens use the artificial recharge to support commercial and residential development rather than to sustain or improve the physical environment.  Compl. ¶ 57.  Importantly, the aquifer's current levels would not be reduced at all except that Fernley and its citizens pump more groundwater from the aquifer than nature provides.  Fernley's reliance on more groundwater than nature provides is not a NEPA problem, it's a water rights problem.  And Fernley's problem can be fixed by modernizing its water delivery system to deliver Project water directly to its citizens rather than relying on free groundwater from Canal seepage.

Simply put, Fernley's Complaint does not allege that a single plant or non-human animal species has come to rely upon the artificial recharge to support its habitat or environment and would be harmed by the partial reduction in artificial recharge from lining segments of the Canal. Fernley's Complaint makes it perfectly clear that this case has nothing to do with the natural environment; instead, it has everything to do with access to groundwater for domestic, municipal, and industrial purposes, and with not having to modify the City's groundwater-reliant system.  But the fact that the City will have to spend money to more efficiently provide water to its citizens falls outside the scope of NEPA's purpose and protections.

**2.      Fernley cannot bring a stand-alone NEPA claim.**

As noted above, NEPA does not provide a private right of action and a NEPA claim can only be brought by utilizing the APA.  *See Nuclear Info. & Res. Serv.*, 457 F.3d at 950.  Despite the law's clear instruction that NEPA can only be raised by bringing an APA challenge, Fernley raises two independent NEPA and APA claims.  In fact, Fernley's NEPA claim – which is set forth between paragraphs 94 and 108 of its Complaint – never mentions the APA.  For this fallacy alone Fernley's NEPA claim must be dismissed as currently pled.

1

2

**B.    FERNLEY'S APA CLAIM FAILS BECAUSE FERNLEY CANNOT BRING A STAND-ALONE APA CLAIM.**

3

4

5

6

7

8

9

10

As just stated, Fernley attempts to bring a stand-alone NEPA claim and a stand-alone APA claim.  But like NEPA, the APA cannot survive on its own.  It requires a statutory partner. *El Rescate Legal Servs., Inc. v. Exec. Off. of Immigr. Rev.*, 959 F.2d 742, 753 (9th Cir. 1991) ("There is no right to sue for a violation of the APA in the absence of a 'relevant statute' whose violation 'forms the legal basis for [the] complaint'" (citation omitted)).  Fernley's APA claim, which is set forth between paragraphs 109 and 112 of its Complaint, does not mention the statutory basis for bringing the APA claim.  Because Fernley cannot plead a stand-alone APA claim as it attempts to do, its APA claim must be dismissed as currently pled.[8]

11

**C.    FERNLEY'S DECLARATORY JUDGMENT CLAIM FAILS.**

12

13

14

15

16

17

18

19

20

21

22

23

In addition to arguing that Reclamation violated NEPA and the APA when evaluating how best to repair the Canal for long-term risk reduction, Fernley also asks for "a declaratory judgment recognizing and affirming Fernley's right to continued recharge from the Truckee Canal."  Compl. at 17 (Prayer for Relief ¶ 4).  The City lists a variety of arguments, including that it owns a portion of water under Claim 3 of the *Orr Ditch* Decree (*id.* ¶ 117) and that it has appropriated a right to continued seepage under state water law by putting the water to beneficial use (*id.* ¶ 119).  Fernley also raises arguments based on an "implied dedication doctrine" (*id.* ¶ 116); on the "public use doctrine" (*id.* ¶ 118); on "commingled . . . waters" (*id.* ¶ 119); on a theory that the water was "abandoned by BOR" (*id.* ¶ 120); on "equitable estoppel" (*id.* ¶ 121); and on "detrimental reliance" (*id.* ¶ 122).  Regardless of how many different ways Fernley characterizes its DJA claim, the essence of the claim is that Fernley wants this Court to say that it is entitled to Canal seepage.

24

25

26

27

28

---

[8] Admittedly, if Fernley were to combine Claims One and Two, then it would eliminate the technical problem of having two stand-alone claims that cannot live by themselves.  But even if Fernley were granted leave to amend to fix this technical problem, Fernley's APA/NEPA claims would still fail for lack of prudential standing.

11

For the reasons that follow, Fernley's attempt to use the DJA as a vehicle for obtaining a water right or expanding its water rights should be rejected.

1.      **Fernley cannot bring its DJA claim because the United States has not waived its sovereign immunity.**

The United States and its agencies may not be sued unless Congress has waived sovereign immunity from suit. *FDIC v. Meyer*, 510 U.S. 471, 475 (1994).  While the Complaint is silent on the topic of immunity from suit, Fernley presumably is relying on the APA's waiver of immunity for all four of its claims. *Duval Ranching Co. v. Glickman*, 965 F. Supp. 1427, 1444 (D. Nev. 1997).

The APA waives immunity from claims against the United States seeking "relief other than money damages." *See* 5 U.S.C. § 702.  However, by its terms, the APA's waiver of sovereign immunity expressly does not apply when "***any other statute*** that grants consent to suit ***expressly or impliedly forbids*** the relief which is sought." 5 U.S.C. § 702(2) (emphasis added). Here, Plaintiff's DJA claim – which is an attempt to quiet title to the seepage – is forbidden by the Quiet Title Act, 28 U.S.C. § 2409a.

The Quiet Title Act ("QTA") authorizes suit against the United States to "adjudicate a disputed title to real property in which the United States claims an interest."  28 U.S.C. § 2409a(a).  Congress intended the Quiet Title Act "to provide the *exclusive* means by which adverse claimants could challenge the United States' title to real property." *Gardner v. Stager*, 103 F.3d 886, 888 (9th Cir. 1996); *Spirit Lake v. North Dakota*, 262 F.3d 732, 737 (8th Cir. 2001).  If a plaintiff files suit seeking ownership of a property interest that is also claimed by the United States, the United States only waives its sovereign immunity if the plaintiff's claim fits under the QTA's waiver of sovereign immunity or some other statutory waiver of sovereign immunity, such as the McCarran Amendment, 43 U.S.C. § 666.  *Gardner*, 103 F.3d at 888.

Fernley's DJA claim asks the Court to declare that Fernley owns a right to continued seepage from the Canal, knowing that the United States claims an interest in the seepage.  *See*, *e.g.*, App'x F to FEIS at 7 (Letter from Reclamation to Fernley dated Dec. 7, 2012, at 3) ("The United States has not abandoned and does not intend to abandon Project water that seeps from

12

1  the Canal").  Within its DJA claim, Fernley asserts seven theories[9] of ownership of the seepage,

2  listed above, including that the United States has *abandoned* its right to Canal seepage.  All of

3  the theories are in direct conflict with the United States' and TCID's right to use this water for

4  Project purposes.  *See Orr Ditch* Decree at 10-11; *see also* FEIS App. F at 7 (Dec. 12, 2012

5  Letter from Reclamation to Mayor of Fernley, Dec. 7, 2012, at 3).  Because the decreed

6  diversion right belongs to the United States for the Newlands Project, Fernley's DJA claim to

7  seepage is directly adverse to the United States' property interest, and would have to be brought

8  under the QTA.

9        However, the QTA expressly precludes plaintiffs from suing the United States to quiet

10  title to water rights.  28 U.S.C. § 2409a(a) ("The United States may be named as a party

11  defendant in a civil action under this section to adjudicate a disputed title to real property in

12  which the United States claims an interest, *other than* a security interest or *water rights*,"

13  (emphasis added)).  Therefore, Fernley cannot rely on the QTA's waiver of sovereign immunity.

14  Moreover, Fernley cannot rely on the McCarran Amendment's waiver of sovereign immunity

15  because it does not waive the United States' sovereign immunity to determine individualized

16  water rights.  Rather, the McCarran Amendment only waives sovereign immunity to adjudicate

17  comprehensive, system-wide water rights cases.  *Gardner*, 103 F.3d at 888.   Regardless,

18  Plaintiff did not identify any waiver of sovereign immunity, whether it be the QTA, the

19  McCarran Amendment or otherwise.

20        As noted, even if Fernley had brought a QTA or McCarran Amendment claim, its

21  allegations would fall outside the scope of either of those statutory waivers of sovereign

22  immunity.  Therefore, Fernley's DJA claim cannot be brought under the APA's waiver of

23  immunity because the QTA expressly disallows plaintiffs from suing the United States over

24  ownership of water rights and no other statute grants plaintiffs right to sue the United States to

25  quiet title to water. *See*, *e.g.*, *Duval Ranching*, 965 F. Supp. at 1444 (holding claims to water

26

27  _____

28  [9]  Notably, five of those theories are based on equitable doctrines related to adverse possession,
    Compl. ¶¶ 116, 118, 120-122, which the QTA also expressly forbids.  *See* 28 U.S.C. §2409a(n).

13

1   rights and water sources, which "[p]laintiffs are aware . . . [are] disputed by the United States,"

2   were barred by the QTA, APA, and McCarren Amendment); *Match-E-Be-Nash-She-Wish Band*

3   *of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 217-24 (2012) (denying an APA claim due to

4   a similar express prohibition in the QTA).

5       For these reasons, the Court must dismiss Fernley's DJA claim because the United States

6   has not waived its immunity from suit.

7   **2.      Fernley has not established a basis for federal jurisdiction over its DJA claim.**

8       In addition to the fact that the United States has not consented to be sued, Fernley has

9   failed to identify a basis for this Court to exercise subject matter jurisdiction over its DJA claim.

10      Neither the DJA nor the APA constitute an independent grant of federal subject matter

11  jurisdiction.  *See Califano v. Sanders*, 430 U.S. 99, 105 (1977) (APA); *Skelly Oil Co. v. Phillips*

12  *Petroleum Co.*, 339 U.S. 667, 671–72 (1950) (DJA).  Because the DJA and the APA do not

13  confer jurisdiction, Fernley is presumably relying upon its NEPA claim (which it believes

14  establishes federal question jurisdiction pursuant to 28 U.S.C. § 1331) to further establish the

15  Court's supplemental jurisdiction (pursuant to 28 U.S.C. § 1367) over the City's equitable claims

16  to quiet title to the seepage.  As noted above, though, this Court does not have jurisdiction over

17  Fernley's NEPA claim because Fernley lacks prudential standing to pursue relief under NEPA.

18  Therefore, the City has *no* basis for establishing federal question jurisdiction and, as a result,

19  cannot establish supplemental jurisdiction.

20      Nevertheless, even if the Court finds that it may exercise federal question jurisdiction

21  over Fernley's NEPA claim, the Court should utilize its discretion to decline supplemental

22  jurisdiction and/or to decline its jurisdiction under the DJA.

23      **a.      If it finds it has federal question jurisdiction over the City's NEPA claim, the**
24      **Court should still decline to exercise supplemental jurisdiction over the**
        **City's third claim**.

25      Federal courts have the discretion to exercise supplemental jurisdiction over all claims

26  that are "so related to claims in the action within such original jurisdiction that they form part of

27  the same case or controversy under Article III of the United States Constitution." 28 U.S.C. §

28

14

1367(a).  However, supplemental jurisdiction "is a doctrine of discretion, not of plaintiff's right." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966).  District courts may decline supplemental jurisdiction if:

> (1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c).  In addition to these four factors, "[t]he Supreme Court has identified additional factors that district courts should consider when deciding whether to exercise supplemental jurisdiction, 'including the circumstances of the particular case, the nature of the state law claims, the character of the governing state law, and the relationship between the state and federal claims.'" *Dalfio v. P.I.D. Univ., Inc.*, No. 21CV911-CAB-JLB, 2021 WL 1923280, at *1 (S.D. Cal. May 13, 2021) (quoting *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997)).

Here, all four § 1367(c) factors for declining supplemental jurisdiction are present.  First, Fernley's DJA claim is a masked attempt to acquire a water right (or add a new "stick" to the "bundle of sticks" in its groundwater rights – i.e., the right to demand artificial recharge).  Its attempt is clearly governed by Nevada law.  *See* Nev. Rev. Stat. § 534.020(1) (2020) (requiring administration of groundwater "only under the laws of this State relating to the appropriation and use of water *and not otherwise*" (emphasis added)); *United States v. Alpine Land & Reservoir Co.*, 341 F.3d 1172, 1180 (9th Cir. 2003) ("[T]he administration of water rights generally follows Nevada state law." (citations omitted)).  Because this District Court need not wade into Nevada's complex statutory and regulatory system for apportioning water rights, it should decline to exercise its supplemental jurisdiction based on factor one alone.[10]  Section 1367(c)'s

---

[10] It is especially appropriate to defer to the state process in the water rights context.  *See, e.g.*, *United States v. Braren*, 338 F.3d 971, 975-76 (9th Cir. 2003) (vacating the district court's declaratory judgment about the appropriate measure of a tribal water right – a declaratory judgment which the United States had requested – and requiring the district court to stay all

second factor also counsels that the Court decline to exercise its supplemental jurisdiction.  In this case, the City's desire to obtain a legal right to the seepage predominates over any concern it may have for the environment.  This is clear from the City's Complaint, which focuses exclusively on the economic harms Fernley and its citizens will suffer if they are deprived of historically available, but artificial and foreign, seepage.  Because Fernley's only alleged basis for original federal jurisdiction is NEPA and its Complaint identifies no environmental harm, it is clear that its attempt to obtain ownership over the seepage (to remedy its feared economic harms) predominates over its NEPA claim.  As to 1367(c)'s third factor, the Court should dismiss Fernley's NEPA claim for lack of prudential standing for the reasons set forth above.  Absent Fernley's NEPA claim, the Court will have no other basis for exercising original federal jurisdiction.  And finally, with regard to 1367(c)'s fourth factor, there are compelling reasons to decline supplemental jurisdiction over this case, including that (i) Nevada has a comprehensive system for apportioning and adjudicating water rights, and (ii) Nevada law does not recognize a right to demand artificial recharge from a surface right owned by someone else (see Part C(5) *infra*).

Because all of § 1367(c)'s factors weigh against exercising supplemental jurisdiction, the Court should decline to exercise its § 1367 jurisdiction over Fernley's DJA claim – which is a bald attempt to circumvent Nevada water law.

**b.**   **Even if it chooses to exercise supplemental jurisdiction over Fernley's claim to continued artificial recharge, the Court should still decline to issue a declaratory judgment.**

Even if the Court believes it should exercise its supplemental jurisdiction over the state law issues raised by Fernley's DJA claim, it should decline to issue a declaratory judgment.

---

federal proceedings pending completion of the state court water rights adjudication); *State of California By & Through Dep't of Water Res. v. Oroville-Wyandotte Irrigation Dist.*, 409 F.2d 532, 535 (9th Cir. 1969) (declining to issue a declaratory judgment over a water law matter in a dispute involving the effect of a dam on an irrigation canal, in deference to state administrative body, even though questions of federal law were involved).

16

The DJA is "deliberately cast in terms of permissive, rather than mandatory, authority." *Gov't Emps. Ins. Co. v. Dizol*, 133 F.3d 1220, 1223 (9th Cir. 1998) (quoting *Pub. Serv. Comm'n of Utah v. Wycoff Co.*, 344 U.S. 237, 250 (1952) (J. Reed, concurring)); *see also Pub. Affs. Assocs. v. Rickover*, 369 U.S. 111, 112 (1962) ("[The DJA] gave the federal courts competence to make a declaration of rights; it did not impose a duty to do so." (citations omitted)).  Because courts have "unique and substantial discretion" to decide whether to issue a declaratory judgment, *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995), the Ninth Circuit has adopted three factors to help courts consider the propriety of entertaining a declaratory judgment action. *United States v. State Water Res. Control Bd.*, 418 F. Supp. 3d 496, 505 (E.D. Cal. 2019) (citing *Dizol*, 133 F.3d at 1225), *rev'd & remanded*,  988 F.3d 1194 (9th Cir. 1998).  Those factors are: "(1) avoiding needless determination of state law issues; (2) discouraging litigants from filing declaratory actions as a means of forum shopping; and (3) avoiding duplicative litigation." *Id.* As discussed *supra* in Section III(C)(2)(a), the first two factors are present here.  Nevada law clearly governs the appropriation and adjudication of state water rights, and this Court should avoid needlessly wading into complex matters of state law.  Moreover, as discussed more fully below, the Nevada State Engineer has already ruled that there is no legal right to demand artificial recharge.  See Part III(C)(5) *infra*.  Knowing this, Fernley disguises its true claim to adjudicate a water right or expand its water rights as a DJA claim in an attempt to obtain a different forum from the State Engineer.  The Court should discourage this type of forum shopping.

Thus, even if the Court determines it has a basis for exercising federal jurisdiction over Fernley's DJA claim, the Court should decline to issue a judicial declaration that Fernley has a right to demand artificial recharge (seepage) from the Canal.

**3.**     **Fernley cannot bring its DJA claim because the Nevada State Engineer has primary jurisdiction to determine whether Fernley has a right to continued artificial recharge.**

The Court should also dismiss (or decline to hear) Fernley's DJA claim because either it should have exhausted its administrative remedies before the State Engineer before filing suit, or the State Engineer has primary jurisdiction to resolve this claim in the first instance.

17

Water rights in Nevada are subject to the state law doctrine of prior appropriation. *Jones v. Adams*, 6 P. 442, 447 (Nev. 1885); *Reno Smelting, Milling & Reduction Works v. Stevenson*, 21 P. 317, 321 (Nev. 1889); *App. of Fillipini*, 202 P.2d 535, 538 (Nev. 1949). Nevada has established a comprehensive scheme of administrative and judicial review for the adjudication of water rights. The State Engineer is the central figure in Nevada's statutory water scheme. *See Orr Water Ditch Co.*, 914 F.2d at 1309–10. Under that scheme, anyone wishing to appropriate water must apply with the State Engineer for a permit. *See* Nev. Rev. Stat. §§ 533.325–533.350. If unappropriated water is available, the State Engineer may issue a permit to appropriate. *Id.* Nevada's administrative scheme encompasses both surface and groundwater water rights.[11] If Fernley is alleging an injury to its municipal groundwater permits, then it should raise that with the State Engineer's Office, which issued those permits and also administers them. *See generally* Nev. Rev. Stat. § 534.020. Given the tremendous responsibility vested in the State Engineer by Nevada law, a party must exhaust all of the statutorily-defined administrative procedures before seeking judicial relief.[12] *Orr Water Ditch Co.*, 914 F.2d at 1309–10 (citing *First Am. Title Co. v. State*, 543 P.2d 1344, 1345 (Nev. 1975)).

---

[11] Nev. Rev. Stat. § 534.020 vests the State Engineer with the power to allocate and administer ground water:

1. All underground waters within the boundaries of the State belong to the public, and, subject to all existing rights to the use thereof, are subject to appropriation for beneficial use only under the laws of this State relating to the appropriation and use of water *and not otherwise.*

2. It is the intention of the Legislature, by this chapter, to prevent the waste of underground waters and pollution and contamination thereof and *provide for the administration of the provisions thereof by the State Engineer*, who is hereby empowered to make such rules and regulations within the terms of this chapter as may be necessary for the proper execution of the provisions of this chapter.

(emphases added).

[12] "'Exhaustion' applies where a claim is cognizable in the first instance by an administrative agency alone; judicial interference is withheld until the administrative process has run its course." *United States v. W. Pac. R. Co.*, 352 U.S. 59, 63 (1956).

18

Of course, if Fernley is arguing that it is entitled to continued Canal seepage under the terms of the *Orr Ditch* decree (Compl. ¶ 117), its claim would belong in the *Orr Ditch* court.[13] *See, e.g.*, *United States v. Alpine Land & Reservoir Co.*, Nos. 3:73-CV-00183-LDG, 3:73-CV-00211-LDG, 2015 WL 1186727, at *1 (D. Nev. Mar. 13, 2015) (citing with approval the Engineer's ruling that "[e]ither the water at issue is primary water – in which case any right to its use is governed by the *Alpine* and the *Orr Ditch* Decrees – or it is drain water [in which case the matter goes to the State Engineer to determine whether there is drain water available for appropriation]").  But that too would lead Fernley directly to the Nevada State Engineer: under the decree, transfers of water rights (e.g., a transfer of an irrigation water right for use for artificial groundwater recharge) are governed by state law and decided by the State Engineer in accordance with Nev. Rev. Stat. § 533.325.  *Orr Ditch Co.*, 914 F.2d at 1309-10; see also *United States v. Alpine Land & Reservoir Co.*, 878 F.2d 1217, 1223 (9th Cir. 1989).  The *Orr Ditch* decree is final, and no party may attack or change its terms without reopening the decree and noticing all parties.  *See, e.g.*, *Nevada v. United States*, 463 U.S. 110, 132 (1983) (holding that *res judicata* precluded the United States from reopening the *Orr Ditch* decree to add claims for the tribal fishery).  Therefore, any new user of Project water must first acquire an existing water right from a beneficial owner of the Project water rights,[14] and then must file a change

---

[13]  If Fernley had a primary right under that decree that it believed was being injured, which it does not, its first remedy would be with the Federal Water Master who administers that decree. *See Orr Ditch* Decree at 88 ("[w]henever any person or party shall not be receiving the amount of water to which he is entitled under this Decree, the Water Master shall, upon request open, close, lock and regulate the necessary headgates, ditches and other works" as needed to enforce the decree).

[14]  As the Project developed, first the Reclamation Service and later TCID issued "water right contracts" to individual landowners. *United States v. Alpine Land & Reservoir Co.*, 503 F. Supp. 877, 879 (D. Nev. 1980).  Newlands Project water rights are appurtenant to the land irrigated under approved water rights applications and contracts, and are owned by the individual land owners in the Project.  Water rights in the Project are owned by the property owners who put the water to beneficial use under contracts with the United States for use of the water.  *See Nevada v. United States*, 463 U.S. at 126 n.9; *United States v. Alpine & Land & Reservoir Co.*, 983 F.2d

1 application with the Nevada State Engineer's Office and obtain its approval to transfer the water

2 right to the new use.  *Nevada v. United States*, 463 U.S. at 132.

3          Fernley has not asked the State Engineer for approval to change an existing Newlands

4 Project water right to use for artificial groundwater recharge.  Without such State Engineer

5 approval, Fernley cannot use a portion of the *Orr Ditch* decree's Project water right to artificially

6 recharge groundwater, under the terms of the decree.  This is also underscored by the Truckee-

7 Carson-Pyramid Lake Water Rights Settlement Act, where Congress specified that all new uses

8 of Project water - including municipal uses in Lyon County - must "have valid water rights."

9 Pub. L. No. 101-618, § 209(a), 104 Stat. 3289, 3317 (1990).

10          Moreover, even if Fernley's water claims were originally cognizable in this Court, the

11 Court should abstain under the primary jurisdiction doctrine and allow the State Engineer to

12 resolve Fernley's water dispute in the first instance.[15]  Primary jurisdiction "is a prudential

13 doctrine under which courts may, under appropriate circumstances, determine that the initial

14 decisionmaking responsibility should be performed by the relevant agency rather than the

15 courts."  *Syntek Semiconductor Co. v. Microchip Tech., Inc.*, 307 F.3d 775, 780 (9th Cir. 2002);

16 *see also Poulos v. Caesars World, Inc.*, 379 F.3d 654, 670 (9th Cir. 2004).  Here, given Nevada's

17 comprehensive administrative system for appropriating and adjudicating water rights, the Court

18 should defer to the State Engineer's expertise before weighing in on Fernley's claim to seepage.

19 *See*, *e.g.*, *Salazar*, 688 F. Supp. 2d at 1238 (finding that "abstention under primary jurisdiction is

20 especially well-suited to the present situation with respect to plaintiffs' water rights claims").  In

21 fact, the State Engineer has already weighed in on the issue presented by Fernley's DJA claim.

22 _____

23 1487, 1495-96 (9th Cir. 1983) (distinguishing between the amalgamation of rights obtained by
   the United States for the Newlands Project and the individual water rights delivered to
24 landowners under contracts).

25

26 [15] "'Primary jurisdiction,' . . . applies where a claim is originally cognizable in the courts, and
   comes into play whenever enforcement of the claim requires the resolution of issues which,
27 under a regulatory scheme, have been placed within the special competence of an administrative
   body; in such a case the judicial process is suspended pending referral of such issues to the
28 administrative body for its views."  *W. Pac. R. Co.*, 352 U.S. at 63-64 (citation omitted).

He has already found that although a water user may appropriate a right to use artificial recharge when it is available, that does not carry with it any right to demand continuance of the artificial recharge.  *See* Part C(5) *infra*.  Perhaps Fernley is seeking relief in this Court because it expects that its claim to demand Canal seepage will fail before the State Engineer.

In sum, regardless of the nature of the right Fernley is claiming – whether it be an appropriation of a water right, a right based on the equitable arguments Fernley raises, an injury to an existing water right, an expansion of an existing water right, or a request to transfer a water right under the *Orr Ditch* decree – this Court is not the appropriate forum to adjudicate the dispute.  Either Fernley failed to exhaust its administrative remedies before the State Engineer and its claim must be dismissed, or the Nevada State Engineer has primary jurisdiction and the Court should abstain to allow the State Engineer to utilize his expertise in resolving Fernley's water claim.

4.   **Fernley's claim seeking a judicial declaration that it has a right to seepage is time-barred and must be dismissed.**

Under 28 U.S.C. § 2401(a), all civil actions against the United States must be filed within six years after the right of action first accrues.  A cause of action accrues when a plaintiff knew or should have known of the wrong and was able to commence an action based upon that wrong. *Shiny Rock Mining Corp. v. United States*, 906 F.2d 1362, 1364 (9th Cir. 1990); *see also Salazar*, 688 F. Supp. 2d at 1237.  Fernley's DJA claim accrued when it first knew that the United States and TCID consider themselves under no obligation to artificially recharge the aquifer using seepage from the Canal.

Here, dismissal is appropriate under Rule 12(b)(6) because it is "apparent on the face of the complaint" that Fernley's DJA claim is barred by the applicable statute of limitations.  *See Huynh v. Chase Manhattan Bank*, 465 F.3d 992, 997 (9th Cir. 2006) (citation omitted).  It is apparent from the face of Fernley's Complaint that the statute of limitations has expired because Fernley incorporates by reference several documents showing that this action accrued more than six years ago.  *See United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) (a court may consider the pleadings, documents attached to the complaint, materials incorporated by

21

1   reference, and matters of judicial notice when considering a Rule 12(b)(6) motion); *Regatta Bay*

2   *Ltd. v. United States*, No. 2:07-CV-01619-PMP-PAL, 2009 WL 10709921, at *2 (D. Nev. May

3   27, 2009) (same).  For example, Fernley has known of the Secretary's attempts to limit

4   diversions into the Truckee Canal at least since the 1973 OCAP, which followed the *Tribe v.*

5   *Morton* decision ordering the Secretary of the Interior to fulfill its fiduciary duty to the Pyramid

6   Lake Paiute Tribe.  *Pyramid Lake Paiute Tribe of Indians v. Morton*, 354 F. Supp. 252, 256

7   (D.D.C. 1973).  The basic purpose of the OCAP is to limit the amount of water that can be

8   diverted into the Canal.  One obvious effect of the OCAP was to reduce Canal seepage.  The

9   OCAP has been a federal regulation since 1988.  *See* 43 C.F.R. Part 418.  The OCAP has never

10   authorized diverting water for the purpose of groundwater recharge.  *See, e.g.*, 43 C.F.R. §

11   418.17 ("Project water must be managed to make maximum use of Carson River water and to

12   minimize diversions of Truckee River water through the Truckee Canal.  This will make

13   available as much Truckee River water as possible for use in the lower Truckee River and

14   Pyramid Lake.").

15       Moreover, Fernley again received notice in 2008 when Reclamation closed the Canal for

16   public safety after the flood, and then reduced allowable diversions further below the OCAP

17   maximum diversion rate, to avoid another breach and flood.  By limiting diversions without

18   regard for any resulting reduction on Canal seepage, the Department of the Interior showed it is

19   under no obligation to deliver the seepage.

20       And if Fernley still did not have adequate notice of the United States' adverse claim to

21   Canal seepage by 1988 or 2008, then it certainly received notice via the letter Reclamation sent

22   to it in 2012.  *See* FEIS App. F at 7 (letter to Mayor of Fernley, at 3).  The 2012 letter states that

23   the United States has reserved the right to collect and use Project seepage water as against any

24   individual Project user, for use in support of authorized Project purposes, and that "[t]he United

25   States has not abandoned and does not intend to abandon Project water that seeps from the

26   Canal."  *Id.*  It further states that "[w]hile the Canal seepage has occurred in the past, the City

27   cannot force Canal seepage to continue," *id.* at 8, and that "[Reclamation] do[es] not agree that

28   [Pub. L. No. 101-618 (1990)] provides grounds for Reclamation to maintain seepage from the

22

1    Canal at historical levels to support the City's municipal use." *Id.*  Finally, the 2012 letter

2    expressly denies Fernley's request that Reclamation "not line the canal," and states that Fernley's

3    claim to continued Canal seepage is not valid under Nevada law or federal law.  *Id.*

4         Based on all of these actions by the United States, Fernley has had notice for well more

5    than six years that the United States does not recognize its alleged right to continued seepage or

6    any duty to keep the Canal unlined.  Accordingly, Fernley's DJA claim is barred by the six-year

7    statute of limitations.

8    **5.    Fernley has failed to state a claim for a right to recharge.**

9         Even assuming Fernley's DJA claim is timely, which it is not, or that this Court can

10   exercise jurisdiction, which it cannot, Fernley's claim to a right to artificial recharge fails as a

11   matter of law.  "A claimant to drain water 'acquires a temporary right only to whatever water

12   escapes from the works or lands of others, and which cannot find its way back to its source of

13   supply.'"  *Alpine*, 2015 WL 1186727, at *4 (quoting *Gallio v. Ryan*, 286 P. 963, 967 (Nev.

14   1930)).  The *Alpine* court was considering an appeal from two rulings of the Nevada State

15   Engineer, under its "exclusive jurisdiction to hear appeals of State Engineer rulings that may

16   affect water rights subject to the *Alpine* Decree."  *Id.* at *1.  The Engineer had granted an

17   application by Stillwater Farms to appropriate "mismatched water" or "drain water" it

18   intercepted within the Project works.  The Engineer granted the application, "but noted that

19   Stillwater acquired only a temporary, unenforceable right 'to whatever water escapes from the

20   works or lands of others, and which cannot find its way back to its source of supply.'"  *Id.*

21   Nevada law firmly rejects any appropriator's right to command continuation of artificial

22   recharge.

23        This rule of Nevada water law derives not only from *Gallio*, *supra*, but also from

24   *Cardelli v. Comstock Tunnel Co.*, 66 P. 950 (Nev. 1901) (denying application to appropriate

25   water in an artificial stream from a mine waste tunnel).  It has been restated in numerous rulings

26   of the State Engineer, including two that involved the City of Fernley's change applications for

27   its Newlands Project water rights diverted at Derby Dam.  First, when considering TCID's

28

challenge to Fernley's permanent transfer application for some of its permitted surface water

rights in the Newlands Project under the *Orr Ditch* decree, the State Engineer found that:

> When large quantities of surface water were brought in to irrigate
> land, an unnatural system of recharge to the groundwater aquifer
> was created and wetlands were created that did not naturally exist.
> The State Engineer concludes that he cannot compel the
> continuation of that situation and the removal of the unnatural
> recharge is not the type of injury to existing rights contemplated
> under the water law.

Nev. State Eng'r Ruling No. 6047 at 12 (June 25, 2010),

http://images.water.nv.gov/images/Rulings/6047r.pdf.  Next, when considering TCID's

challenges to Fernley's applications to temporarily change the place of use and manner of use of

other of its Newlands Project water rights, the State Engineer observed that "Groundwater users

may receive a benefit of secondary recharge from surface-water diversions and uses; however,

*they do not have a permitted claim to any secondary recharge that may occur*."  *See* Nev. State

Eng'r Ruling No. 6048 at 6 (July 13, 2010),

http://images.water.nv.gov/images/Rulings/6048r.pdf (emphasis added).

   Simply put, in Nevada and other prior appropriation states, an appropriator of an artificial

source has no right to the continued existence of that source.  Because of this rule, Fernley

cannot state a claim for a right to continued recharge.  All seven of Fernley's theories fail to

circumvent this rule.  State water law preempts and bars Fernley's equitable arguments (e.g.,

reliance and estoppel) (Compl. ¶¶ 116, 118, 121-22) because common law rights are

incompatible with the rule of prior appropriation.  *See, e.g.*, *Cal. Or. Power Co. v. Beaver

Portland Cement Co.*, 295 U.S. 142, 160 (1935) (holding that common law riparian rights may

not impede the successful operation of the state and local doctrine of prior appropriation);

*Countrywide Home Loans, Inc. v. Thitchener*, 124 Nev. 725, 730 (Nev. 2008) (noting that a

statutory scheme preempts conflicting common law).  There is simply no cause of action that

Fernley can raise to assert a right to continued seepage, and Fernley therefore has failed to state a

claim.

24

**D.      FERNLEY'S NUISANCE CLAIM FAILS.**

**1.      <u>The United States has not waived its sovereign immunity from the nuisance claim</u>.**

Similar to Fernley's DJA claim, the APA does not provide for a waiver of sovereign immunity with respect to Fernley's nuisance claim because another federal statute – here, the Federal Tort Claims Act ("FTCA") – ***impliedly forbids*** Fernley's nuisance claim.

The FTCA is the exclusive remedy for tort claims against the United States (and expressly requires that such claims be brought against the United States – not against federal agencies).  *Safeway Portland Emps.' Fed. Credit Union v. FDIC*, 506 F.2d 1213, 1215-16 (9th Cir. 1974); *Corey v. McNamara*, 409 F. Supp. 2d 1225, 1227 (D. Nev. 2006), *aff'd*, 265 F. App'x 555 (9th Cir. 2008).  The FTCA constitutes the sole waiver of sovereign immunity for common law torts, including nuisance.  *See United States v. Smith*, 499 U.S. 160, 163 (1991); *see generally Bartleson v. United States*, 96 F.3d 1270, 1274 (9th Cir. 1996).  In passing the FTCA, however, Congress did not waive the sovereign immunity of the United States for *all* tort claims. *Brandes v. United States*, 783 F.2d 895, 896 (9th Cir. 1986).  In addition to other restrictions, Congress placed two limitations on the FTCA's waiver of sovereign immunity which ***impliedly forbid*** Fernley's nuisance claim, and thus take the claim outside the scope of the APA's waiver of sovereign immunity.

First, the FTCA's waiver is limited to actions for money damages. 28 U.S.C. § 1346(b)(1); *Young v. United States*, 769 F.3d 1047, 1051 (9th Cir. 2014).  It therefore impliedly forbids tort actions against federal agencies seeking relief other than money damages.  *See Kosak v. United States*, 465 U.S. 848, 852 n.7 (1984).  Because waivers of sovereign immunity are to be narrowly construed in favor of the sovereign, *McMahon v. United States*, 342 U.S. 25, 27 (1951), the express statutory limitation on the APA's waiver of sovereign immunity must be given its full meaning,[16] and the Court should recognize that the FTCA impliedly forbids an action to

---

[16] *See, e.g.*, H.R. Rep. No. 94-1656 at 27-28 (1976) (letter from Antonin Scalia, Assistant Attorney General, Office of Legal Counsel, urging Congress to retain the phrase "expressly or impliedly forbids" in §702, and noting that because "existing statutes have been enacted against the backdrop of sovereign immunity, this will probably mean that in most if not all cases where

1   enjoin the United States based on an alleged tort.

2          Second, the FTCA forbids claims against the United States that are based solely on

3   federal common law, such as Fernley's public nuisance claim in this case.  The FTCA's waiver

4   of sovereign immunity is limited to "circumstances where the United States, if a private person,

5   would be liable to the claimant *in accordance with the law of the place* where the act or omission

6   occurred."  28 U.S.C. § 1346(b)(1) (emphasis added).  The "law of the place" has been

7   interpreted universally to mean that the FTCA's waiver is limited to tort claims recognized under

8   the law of the state where the act or omission occurred.  *See e.g.*, *Meyer*, 510 U.S. at 478 ("[W]e

9   have consistently held that § 1346(b)'s reference to the 'law of the place' means law of the State

10  — the source of substantive liability under the FTCA.");  *Doe v. United States*, 976 F.2d 1071,

11  1082-83 (7th Cir. 1992) (dismissing FTCA claim because Illinois no longer recognized the

12  underlying state tort of seduction).  Based on this limitation, the Supreme Court has expressly

13  held that the FTCA's waiver of sovereign immunity does not extend to claims based on federal

14  common law.  *See Meyer*, 510 U.S. at 478 (holding that where "federal law, not state law,

15  provides the source of liability," the United States "simply has not rendered itself liable").

16  Because the relief sought in this case appears to be based on federal common law, [17] it is

17  forbidden by the FTCA.  Thus, the APA's waiver of sovereign immunity cannot apply.  5 U.S.C.

18  § 702(2).

19

20  _____

21  statutory remedies already exist, these remedies will be exclusive").

22  [17]  If Fernley is instead attempting to raise a *state* law nuisance claim, that claim too is barred by
    federal sovereign immunity because it requests injunctive relief, so it is impliedly forbidden by

23  the FTCA.  Also, the Court should decline to exercise its supplemental jurisdiction over such a
    claim for the reasons given in Part C(2)(a).  For the reasons given in Part C(4), a state law

24  nuisance claim would also be barred by the statute of limitations.  Further, Fernley has failed to
    allege facts that could state a claim for nuisance under state law, where a nuisance is "[a]nything

25  which is injurious to health, or indecent and offensive to the senses, or an obstruction to the free

26  use of property[.]"  *See Sowers v. Forest Hills Subdivision*, 294 P.3d 472, 431 (Nev. 2013)
    (citation omitted).  Fernley has not alleged that lining the Canal is injurious to health or that it is

27  indecent or offensive; the construction will not occur on or obstruct any non-federal property;
    and, as discussed above, Fernley has no property right in Canal seepage.

28

26

1    Accordingly, Fernley's nuisance claim must be dismissed because the United States has

2    not consented to being sued to enjoin a tort.

3    **2.      Fernley's nuisance claim is barred by the statute of limitations.**

4    As stated in Section C(4), Fernley has known for well over six years that Reclamation

5    will not maintain historical artificial recharge and that Reclamation has interrupted use of the

6    Canal to protect public safety.  Therefore, Fernley's alleged nuisance claim, if any, would have

7    accrued well over six years ago just like its DJA claim.  The FTCA shortens 28 U.S.C. §

8    2401(a)'s six-year statute of limitations for general civil actions against the United States to two

9    years for tort claims against the United States. 28 U.S.C. § 2401(b); *Tunac v. United States*, 897

10   F.3d 1197, 1206 (9th Cir. 2018).   Regardless of whether the statute of limitations is six years or

11   two, Fernley has exceeded the statute of limitations for bringing the nuisance claim.

12   **3.      Fernley fails to state a claim for nuisance.**

13   Unlike state courts, the federal courts "are not general common-law courts and do not

14   possess a general power to develop and apply their own rules of decision." *Milwaukee v. Illinois*

15   *& Michigan*, 451 U.S. 304, 312 (1981) (*Milwaukee II*).  The U.S. Supreme Court declared in

16   *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938) that there is no federal common law.  While the

17   Supreme Court has more recently concluded that "[w]hen Congress has not spoken to a

18   particular issue, . . . and when there exists a 'significant conflict between some federal policy or

19   interest and the use of state law,' the Court has found it necessary, in a 'few and restricted'

20   instances, to develop federal common law," *Milwaukee II*, 451 U.S. at 313 (internal citations

21   omitted), no reason appears why Fernley's allegations give rise to such a case.

22   The United States Supreme Court has said it should only fashion federal common law

23   "where there is an overriding federal interest in the need for a uniform rule of decision or where

24   the controversy touches basic interests of federalism."  *Illinois v. City of Milwaukee, Wis.*, 92

25   U.S. 1385, 1393 n.6 (1972); *id.* (observing that "[c]ertainly these same demands for applying

26   federal law are present in the pollution of a body of water such as Lake Michigan, bounded, as it

27   is, by four States").  In the context of water, that Court does use federal common law to allocate

28   *interstate* waters under the doctrine equitable apportionment, and has used the federal common

law of public nuisance to address widespread water pollution. *Id.*  Under federal common law, a "public nuisance is defined as a substantial and unreasonable interference with a right common to the general public, usually affecting the public health, safety, peace, comfort, or convenience." *Michigan v. U.S. Army Corps of Eng'nrs*, 667 F.3d 768, 771 (7th Cir. 2011) (citing Restatement (Second) Torts § 821B (1979); Dan B. Dobbs, *The Law of Torts* § 467, at 1334 (2000)). Example cases involve physical interferences such as water pollution, air pollution, odors, or dangerous animals. *Id.* There do not appear to be any nuisance cases concerning the absence of water, the discontinuance of artificial recharge, or the lowering of the groundwater table.  Unlike with transboundary pollution, there is no need to develop federal common law to apportion or adjudicate intrastate water rights, especially when the state has developed a comprehensive system for addressing water rights.  *See California v. United States,* 438 U.S. 645, 675 (1978) ("The legislative history of the Reclamation Act of 1902 makes it abundantly clear that Congress intended to defer to the substance, as well as the form, of state water law").  Because state water law is the exclusive means of accomplishing intrastate allocation of water, it leaves no room for the alternative development of federal common law to determine a right to receive water.

Even assuming that a federal public nuisance claim is available to Fernley, Fernley has failed to allege facts supporting such claim, for at least two reasons: (1) it has not alleged an *unreasonabl*e *interference*, and (2) it has not alleged interference with a *public right.  See Michigan*, 667 F.3d at 771.  First, Reclamation's actions to protect public safety are reasonable *per se* because they are authorized by federal court decree and federal statute.  *See* Restatement (Second) of Torts § 821B cmt. f ("[C]onduct that is fully authorized by statute, ordinance or administrative regulation does not subject the actor to tort liability").  The *Orr Ditch* decree provides that the United States "is entitled and allowed to divert" 1500 cfs "under such *control*, disposal and regulation as [it] may make or desire," provided that it does not exceed the water duty for irrigated land.  *Orr Ditch* Decree at 10-11 (emphasis added). The term "control" in this context certainly encompasses the design of diversion and delivery structures such as the Canal. Reclamation law further provides that the Secretary "may carry out . . . any extraordinary operation and maintenance work on a project facility that the Secretary determines to be

1  reasonably required to preserve the structural safety of the project facility." 43 U.S. Code

2  § 510b(a).  Thus, Reclamation *has discretion* to design repairs of the Canal, and its decision to

3  approve repair of the Canal is not unreasonable under nuisance law.[18]

4        Second, Fernley has not alleged facts supporting interference with a "public right."

5  Fernley has cited no precedent for a public right to continued artificial recharge (or for a private

6  right either for that matter) without a water right.  Fernley alleges twice that Reclamation is

7  interfering with "use and enjoyment of property," Compl. ¶¶ 125, 126, but does not specify what

8  type of property.  While water rights are property rights, they are a unique type of usufructary

9  property right that is not compatible with nuisance concepts.  While all water belongs to the

10  public, *see* Nev. Rev. Stat. §§ 533.025 and 534.020, the right to use it does not.  Private water

11  rights were severed from the public land with the Desert Land Act of 1866, to be governed by

12  the states under the doctrine of prior appropriation.  *See Cal. Or. Power v. Beaver Portland*

13  *Cement Co.*, 295 U.S. 142, 154 (1935).  This means that land ownership does not automatically

14  carry with it a right to water.  Western water law has since evolved into a comprehensive

15  regulatory scheme that requires expertise and uniformity in administration.  *See, e.g., California*

16  *v. United States*, 438 U.S. 645, 668-69 (1978).  Creating a public nuisance claim under federal

17  common law for Fernley's grievance would interfere greatly with that comprehensive regulatory

18  scheme and would destroy its uniformity.

19        For these reasons, Fernley has failed to state a nuisance claim as a matter of law.

20  **V.     CONCLUSION**

21        For the reasons discussed above, Fernley's complaint must be dismissed.

22

23        Respectfully submitted this 28th day of May, 2021, by:

24                       CHRISTOPHER CHIOU

25                       Acting United States Attorney

26  _____

27  [18] Notably, by diverting water to provide seepage for Fernley or its residents, Reclamation would be *violating* federal law, including the OCAP and *Tribe v. Morton*, which mandate conserving

28  Project water, decreasing diversions from the Truckee River, and increasing Project efficiencies. 43 C.F.R. § 418.1; *Tribe v. Morton*, 354 F. Supp. at 255.

GREG ADDINGTON
Assistant United States Attorney

JEAN E. WILLIAMS
Acting Assistant Attorney General


EVE W. MCDONALD
JEFFERY S. THOMAS
Trial Attorneys
U.S. Department of Justice
Environment and Natural Resources Division

*Attorneys for Defendants*

30

1

**CERTIFICATE OF SERVICE**

2

       I hereby certify that on May 28, 2021, I electronically filed the foregoing with the Clerk of

3

the Court via the CM/ECF system, which will send notification to the attorneys of record in this

4

case.

5

6

_____

7

EVE W. MCDONALD

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

31