PAUL G. TAGGART, ESQ.
Nevada State Bar No. 6136
DAVID H. RIGDON, ESQ.
Nevada State Bar No. 13567
TAGGART & TAGGART, LTD.
108 North Minnesota Street
Carson City, Nevada 89703
(775)882-9900 – Telephone
Paul@legaltnt.com
David@legaltnt.com
Attorneys for City of Fernley

Taggart & Taggart, Ltd.
108 North Minnesota Street
Carson City, Nevada 89703
(775)882-9900 – Telephone
(775)883-9900 – Facsimile

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

CITY OF FERNLEY, a political subdivision of
the State of Nevada,

        Plaintiff,

vs.

ERNEST A. CONANT, Regional Director,
UNITED STATES BUREAU OF
RECLAMATION; UNITED STATES
BUREAU OF RECLAMATION,

        Defendants.

Case Number: CV-00119

## CITY OF FERNLEY'S OPPOSITION TO DEFENDANT'S AND DEFENDANT INTERVENOR'S MOTION TO DISMISS

Plaintiff, City of Fernley ("Fernley"), by and through its counsel of record, Paul G. Taggart, Esq. and David H. Rigdon, Esq., of the law firm Taggart & Taggart, Ltd., hereby file this Opposition to Defendant's Motion to Dismiss in which proposed Defendant Intervenor, Pyramid Pake Paiute Tribe ("Tribe"), has requested to join.[1]  This Opposition is based on the following Memorandum of Points and Authorities, all pleadings and papers on file in this matter, and any oral argument the Court may, in its discretion, elect to entertain.

---

[1] The Tribe's Joinder was filed when its Motion to Intervene was granted on June 25, 2021.  To the extent the Tribe raises any unique issues in the joinder that require a response, Fernley will respond in a separate opposition filed within the prescribed time period.

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ............................................................................................ ii

TABLE OF AUTHORITIES ......................................................................................iv

MEMORANDUM OF POINTS AND AUTHORITIES ............................................1

INTRODUCTION AND BACKGROUND ...............................................................1

STANDARD OF REVIEW .......................................................................................3

I.      FRCP 12(b)(1) – Jurisdiction............................................................................3

II.     FRCP 12(b)(6) – Failure to State a Claim. ......................................................4

SUMMARY OF ARGUMENT. ................................................................................4

ARGUMENT ............................................................................................................6

I.      Fernley's NEPA and APA claims are properly justiciable,
        and pled, in this case. ......................................................................................6

        A.      Fernley has prudential standing to bring its NEPA
                and APA claims. ..................................................................................6

        B.      Fernley properly raised its NEPA claim under the
                APA and NEPA provides the statutory basis for the
                violations of the APA alleged by Fernley...........................................10

II.     Fernley's Declaratory Relief Claim Is Not Barred By
        Sovereign Immunity, This Court Has Jurisdiction Over
        That Claim, And That Claim Was Properly Pled. ...........................................12

        A.      The United States waived sovereign immunity to
                Fernley's declaratory relief claim.....................................................13

        B.      Fernley's declaratory relief claim is not a claim for
                quiet title. ..........................................................................................14

        C.      The Court should exercise discretion to hear the
                declaratory judgment claim, and the Court has
                supplemental jurisdiction over that claim...........................................17

                1.      Discretion to hear declaratory relief claim ..............................17

                2.      Supplemental jurisdiction over the
                        declaratory relief claim ............................................................18

        D.      The Nevada State Engineer already determined the
                issue of Fernley's right to dedicated recharge when
                he issued Fernley's groundwater permits in reliance
                on that recharge..................................................................................21

        E.      Fernley's claim for declaratory relief is timely. ...............................22

Taggart & Taggart, Ltd.
108 North Minnesota Street
Carson City, Nevada 89703
(775)882-9900 – Telephone
(775)883-9900 – Facsimile

III.    Fernley's Nuisance Claim Is Not Barred By Sovereign Immunity, And That Claim Was Properly Pled...................................24

    A.    The APA includes a waiver of the United States' sovereign immunity for nuisance claims. ...........................25

    B.    Fernley's nuisance claim is not barred by any statute of limitations. ...........................................26

    C.    Fernley's nuisance claim was properly pled.......................27

REQUEST FOR EVIDENTIARY HEARING ................................30

CONCLUSION.....................................................................30

Taggart & Taggart, Ltd.
108 North Minnesota Street
Carson City, Nevada 89703
(775)882-9900 – Telephone
(775)883-9900 – Facsimile

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*American Elec. Power Co., Inc. v. Connecticut,*
  564 U.S. 410, 131 S.Ct. 2527 (2011) ......................................................................28

*Aminoli U.S.A. v. California State Water Resources Control Bd.,*
  674 F.2d 1227 (9th Cir. 1982) ..................................................................................18

*Application of Filippini,*
  66 Nev. 17, 202 P.2d 535 (1949). ......................................................................8, 27

*Ashcroft v. Iqbal,*
  556 U.S. 662, 129 S.Ct. 1937 (2009) ........................................................................3

*Atl. Coast Pipeline, LLC v. Nelson Co. Bd. of Supervisors,*
  443 F. Supp. 3d 670 (W.D. Va. 2020) .......................................................................7

*Balistreri v. Pacifica Police Dept.,*
  901 F.2d 696 (9th Cir. 1988) ....................................................................................4

*Bell Atlantic Corp. v. Twombly,*
  550 U.S. 544, 127 S.Ct. 1955 (2007) ........................................................................4

*Bennet v Spear,*
  520 U.S. 154, 117 S.Ct. 1154 (1997) ......................................................................23

*Bergman v. Kearney,*
  241 F. 884 (D. Nev. 1917) ......................................................................................22

*Blagojevich v. Gates,*
  519 F.3d 370(7th Cir. 2008)......................................................................................25

*Block v. North Dakota,*
  461 U.S. 273 (1983) ................................................................................................13

*California v. U.S.,*
  438 U.S. 645 (1978) ................................................................................................19

*California v. U.S.,*
  438 U.S. 645, 98 S.Ct. 2985 (1978) ........................................................................24

*Center for Biological Diversity v. United States Bureau of Land Management,*
  2017 WL 26667700 (D. Nev. 2017) ..........................................................................9

*Chowchilla Farms, Inc. v. Martin,*
  25 P.2d 435 (Cal. 1933) ..........................................................................................10

*Churchill County v. Babbitt,*
  150 F.3d 1072 (9th Cir. 1998)....................................................................................7

*Churchill County v. Babbitt,*
  158 F.3d 491 (9th Cir. 1998)......................................................................................7

*Churchill County v. Norton,*
  276 F.3d 1060 (9th Cir. 2001)...............................................................................7, 8

Taggart & Taggart, Ltd.
108 North Minnesota Street
Carson City, Nevada 89703
(775)882-9900 – Telephone
(775)883-9900 – Facsimile

iv

*Churchill County v. Norton*,
    282 F.3d 1055 (9th Cir. 2002) ............................................................................7, 8

*City of Sausalito v. O'Neill*,
    386 F.3d 1186 (9th Cir. 2004) ...........................................................................3, 8

*Clark v. Library of Congress*,
    750 F.2d 89 (D.C. Cir. 1984) ...............................................................................13

*Cntr. for Biological Diversity v. U.S. Dep't of Interior*,
    623 F.3d 633 (9th Cir. 2010) ..................................................................................9

*Coal. For ICANN Transparency, Inc. v. VeriSign, Inc.*,
    611 F.3d 495 (9th Cir. 2010) ..................................................................................4

*Czerkies v. U.S. Dep't of Labor*,
    73 F.3d 1435 (7th Cir.1996) ..................................................................................25

*Daniels-Hall v. National Educ. Ass'n.*,
    629 F.3d 992 (9th Cir. 2010) ..................................................................................4

*Dep't of Transp. v. Pub. Citizen*,
    541 U.S. 752, 124 S. Ct. 2204, 159 L. Ed. 2d 60 (2004) ........................................9

*Environmental Defense Fund, Inc. v. Costle*,
    439 F.Supp 980 (E.D.N.Y 1977) ............................................................................7

*Federal Nat. Mortg. Ass'n v. LeCrone*,
    868 F.2d 190 (6th Cir. 1989) ................................................................................18

*Government Employees Ins. Co. v. Dizol*,
    133 F.3d 1220 (9th Cir. 1998) ........................................................................17, 18

*Great Basin Resource Watch v. Bureau of Land Management*,
    844 F.3d 1095 (9th Cir. 2016) ................................................................................9

*Gros Ventre Tribe v. United States*,
    344 F.Supp.2d 1221 (D. Mont. 2004) ..............................................................25, 27

*Gros Ventre Tribe v. United States,* 4
    69 F.3d 801 (9th Cir. 2006) ............................................................................25, 27

*Gunpowder Riverkeeper v. F.E.R.C.*,
    807 F.3d 267 (D.C. Cir. 2015) ...............................................................................3

*Hollett v. Davis*,
    54 Wash. 326, 103 P. 423 (1909) .........................................................................10

*Jaffee v. United States*,
    592 F.2d 712 (3d Cir.1979) ..................................................................................25

*Jicarillla Apache Tribe v. U.S.*,
    657 F.2d 1126 (10th Cir. 1981) ............................................................................19

*Lee v. City of Los Angeles*,
    250 F.3d 668 (9th Cir. 2001) ..................................................................................4

Taggart & Taggart, Ltd.
108 North Minnesota Street
Carson City, Nevada 89703
(775) 882-9900 – Telephone
(775) 883-9900 – Facsimile

v

*Louisiana v. Biden,*
    2:21-CV-00778, 2021 WL 2446010 (W.D. La. June 15, 2021) ............................................3, 6

*Lujan v. National Wildlife Fed'n.,*
    497 U.S. 871, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990) ........................................................10

*Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak,*
    567 U.S. 209 (2012) ..............................................................................................................14

*Michigan v. U.S. Army Corps of Engineers,*
    667 F.3d 765 (7th Cir. 2011)..............................................................................25, 26, 27, 28

*Mineral County v. Lyon County,*
    136 Nev.Adv.Op. 58, 473 P.3d 418 (2020) ..........................................................................20

*Monsanto Co. v. Geertson Seed Farms,* 5
    61 U.S. 139, 130 S.Ct. 2743, 177 L.Ed.2d 461 (2010) ..........................................................8

*National Mining Association v. Zinke,*
    877 F.3d 845 (9th Cir. 2017).................................................................................................7

*Navajo Nation v. U.S. Forest Serv.,*
    479 F.3d 1024 (9th Cir. 2007).............................................................................................7

*Nevada v. U.S.,*
    463 U.S. 110, 103 S.Ct. 2906, (1983) .................................................................................2

*North Dakota v. Minnesota,*
    263 U.S. 365, 44 S.Ct. 138, 68 L.Ed. 342 (1923) ..............................................................28

*Oregon Natural Desert Ass'n v. U.S. Forest Service,*
    465 F.3d 977 (9th Circuit, 2006)........................................................................................23

*Ormsby County. v. Kearney,*
    37 Nev. 314, 142 P. 803 (1914) ..........................................................................18, 21, 22

*Pac. Coast Fed'n of Fishermen's Associations v. U.S. Dept. of the Interior,*
    929 F. Supp. 2d 1039 (E.D. Cal. 2013)................................................................................9

*Paige v. Rocky Ford Canal & Irrigation Co.,*
    84 Cal. 84, 21 P. 1102 (1889). ..........................................................................................10

*Pistor v. Garcia,*
    791 F.3d 1104 (9th Cir. 2015)..........................................................................................3, 4

Presidio Golf Club. v. National Park Service,
    155 F.3d 1153 (9th Cir.1998).............................................................................................3

*Robinson v. United States,*
    586 F.3d 683 (9th Cir. 2009)..............................................................................................4

*Ryan v. Gallio,*
    52 Nev. 330, 286 P. 963 (1930) .....................................................................................10, 20

*San Carlos Apache Tribe v. United States,*
    272 F.Supp.2d 860 (D. Ariz. 2003)..............................................................................25, 27

Taggart & Taggart, Ltd.
108 North Minnesota Street
Carson City, Nevada 89703
(775) 882-9900 – Telephone
(775) 883-9900 – Facsimile

vi

*San Carlos Apache Tribe v. United States,*
 417 F.3d 1091 (9th Cir. 2005)................................................................25, 27

*Trudeau v. Federal Trade Com'n.,*
 456 F.3d 178 (2006) ...........................................................................13, 25

*U.S. v. Alpine Land and Reservoir Co.,*
 889 F.2d 207 (9th Cir. 1989) .....................................................................19

*United States v. Alpine Land & Reservoir Co.,*
 697 F.2d 851 (9th Cir. 1983)......................................................................19

*United States v. City of Detroit,*
 329 F.3d 515 (6th Cir.2003)........................................................................25

*Westlands Water Dist. v. U.S. Dep't of Interior, Bureau of Reclamation,*
 850 F. Supp. 1388 (E.D. Cal. 1994)..............................................................7

*Wilderness Soc. v. U.S. Forest Serv.,*
 630 F.3d 1173 (9th Cir. 2011)......................................................................7

## Statutes

1915 Statutes of Nevada 253, § 4 ......................................................................22
28 U.S.C. § 2401(a) ........................................................................................26
28 U.S.C. § 2401(b) ........................................................................................26
28 U.S.C. §1367(a) .........................................................................................19
28 U.S.C. 1367(c)............................................................................................19
42 U.S.C. § 4321.........................................................................................5, 7
5 U.S.C. § 701 ...............................................................................................10
5 U.S.C. § 702.......................................................................................6, 11, 13
5 U.S.C. § 706 .................................................................................................6
FRCP 8(a)(2) ...................................................................................................4
NRAP 5..........................................................................................................20
NRS 533.025............................................................................................28, 29
NRS 533.450...................................................................................................21

## Other Authorities

A.S. VAN DENBURGH & FREDDY E. ARTEGA, REVISED WATER
BUDGET FOR THE FERNLEY AREA, WEST-CENTRAL NEVADA, 1979
(U.S.G.S. Open File Report 84-712) ...............................................................21
A.S. VAN DENBURGH, ET AL., WATER RESOURCES –
RECONNAISSANCE SERIES REPORT 57 (U.S.G.S. 1973) ......................................21
Alonzo, *Fernley Fears Future Water Shortage as $148M Plans to
Line Truckee Canal Move Forward*, Reno Gazette-Journal (March
9, 2021) ...........................................................................................................1
J. POMEROY, A TREATISE ON EQUITY JURISPRUDENCE
AND EQUITABLE REMEDIES, § 1937 (§ 523) (2d ed.1919) ................................26
Wiel, Water Rights in the Western States § 60 (3d ed. 1911) .....................................10

Taggart & Taggart, Ltd.
108 North Minnesota Street
Carson City, Nevada 89703
(775)882-9900 – Telephone
(775)883-9900 – Facsimile

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Taggart & Taggart, Ltd.
108 North Minnesota Street
Carson City, Nevada 89703
(775)882-9900 – Telephone
(775)883-9900 – Facsimile

## MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION AND BACKGROUND

The Bureau's proposed project to line the Truckee Canal will have devastating environmental consequences.  The project will immediately transform a groundwater aquifer with stable water levels, into one that is in constant crisis.  Implementation of the project will cause groundwater levels to drop precipitously.  Those declining water levels will, in turn, cause destructive land subsidence, the elimination of phreatophyte plants and shrubs, and numerous well failures.  The Fernley groundwater aquifer is currently the primary source of domestic water for over 20,000 people.  Lining the Canal will put the long-term viability of this vital water resource at risk.   In short, allowing the Bureau's project to be implemented will produce both an environmental and public health crisis.  As the Bureau's own Area Manager publicly acknowledged, this project is "going to hurt people."[2]

However, that is not the story told in either the Bureau's Environmental Impact Statement ("EIS") or its Record of Decision ("ROD").  Neither of those documents provide any indication that the project is "going to hurt people" or that the groundwater level declines will result in land subsidence or the elimination of phreatophyte plants and shrubs.  That is because the Bureau made a purposeful decision to not quantify the impacts of declining groundwater levels or identify measures the Bureau could implement to reduce or eliminate those impacts.  Instead, the Bureau exceeded its lawful authority by administratively deciding an issue of state water law (whether Fernley has any legal or equitable right to continued recharge from the Canal) and then, based on that determination, claimed to be absolved from any responsibility to quantify or address the impacts the project will have on the aquifer.

Fernley has valid groundwater rights that were issued by the State Engineer under state law.  Those rights were granted in reliance on Canal recharge.  Under the implied dedication doctrine, that recharge is considered natural, not artificial.  These facts, as pled, must be presumed true when deciding the Bureau's Motion.  Water rights in Nevada are regarded and protected as real property.  Fernley owns over 8,900 afa of municipal groundwater rights that are used to serve the public and are necessary for

---

[2] Amy Alonzo, *Fernley Fears Future Water Shortage as $148M Plans to Line Truckee Canal Move Forward*, Reno Gazette-Journal (March 9, 2021) (quoting Terry Edwards, Lahontan Basin Area Manager).

1

Taggart & Taggart, Ltd.
108 North Minnesota Street
Carson City, Nevada 89703
(775) 882-9900 – Telephone
(775) 883-9900 – Facsimile

1    the health and safety of its citizens.  The water associated with these rights provides reliable and clean

2    drinking water, water for fire suppression, water for schools, parks, and hospitals, etc.

3         The Bureau's action would remove nearly all the water which is used to maintain the health of

4    the groundwater aquifer.  Such an action is unreasonable because it will cause a precipitous decline in

5    aquifer water levels, imperil the City's municipal water supply, and cause the failure of over 71 percent

6    of all domestic wells in the area.  Undertaking this action will dry up the water supply to the citizens of

7    Fernley.  Accordingly, the Bureau's proposed project will clearly create an unreasonable interference

8    with Fernley's real property rights and thereby deleteriously impact the health and safety of the public.

9         Throughout the EIS process, several non-lining alternatives were proposed by the cooperating

10   agencies including Fernley.  These alternatives would meet the stated goal of the project – flood

11   protection.  Nevertheless, the EIS myopically analyzes only variations of the Bureau's preferred Canal

12   lining alternative.  The reason for this is simple, instead of finding the best and most environmentally

13   friendly way to fix the flooding problem, the Bureau wants to use this project to effectuate a reallocation

14   of water to Pyramid Lake.

15        The Bureau tried to reallocate the water once before but was rebuffed by the Supreme Court.  In

16   *Nevada v U.S.* the Court unequivocally told the Bureau it does not hold anything more than nominal title

17   to the Claim 3 waters and thus cannot treat such water as "so many bushels of wheat, to be bartered,

18   sold, or shifted about as the Government might see fit."[3]  Instead, the water is owned whoever actually

19   diverted and placed it to beneficial use.  The Bureau's unlawful and extra-jurisdictional attempt to

20   determine for itself who does or does not have a right to the recharge is an attempt to reverse this decision.

21        Several facts are indisputable.  The Canal has been in existence for more than 115 years.  The

22   Bureau constructed the canal intending it to be a permanent feature of the landscape and for the purpose

23   of enticing settlers to build towns and cities within the Newlands Project.  Fernley was one of these

24   towns.  Fernley grew and developed in reliance on the Canal water.  The Bureau never raised any

25   objection to Fernley's lawful appropriation and use of the dedicated recharge water.  In fact, the Bureau's

27   [3] *Nevada v. U.S.*, 463 U.S. 110, 126, 103 S.Ct. 2906, 2916 (1983).

Taggart & Taggart, Ltd.
108 North Minnesota Street
Carson City, Nevada 89703
(775) 882-9900 – Telephone
(775) 883-9900 – Facsimile

1   sister agency, the United States Geological Survey, actively assisted the Nevada State Engineer in

2   developing the groundwater budget for Fernley.  That budget identifies Canal recharge as a major source

3   of available groundwater and was used by the State Engineer when approving Fernley's groundwater

4   permits.  Now, after decades of reasonable reliance on the recharge water, and hundreds of millions of

5   dollars of investment, the Bureau wants to yank the rug and leave Fernley and its citizens high and dry.

6       The Bureau's Motion to Dismiss now seeks to close the courthouse doors and deny Fernley any

7   ability to seek redress.  While it is understandable that the Bureau does not want anyone, least of all an

8   independent judge, looking too closely at what it is doing, the National Environmental Policy Act

9   ("NEPA") together with the Administrative Procedures Act ("APA") clearly afford Fernley a right to

10  judicial review.  This review includes the right to ask the Court to uphold and affirm both Supreme Court

11  precedent and the Nevada State Engineer's prior administrative actions which clearly established

12  Fernley's right to the recharge water.

13                                    **STANDARD OF REVIEW**

14  **I.      FRCP 12(b)(1) – Jurisdiction**

15      Prudential standing to bring a claim under the APA and NEPA is limited to persons whose

16  injuries are "arguably" within the "zone of interests" to protected by the relevant statute.[4]  The test is not

17  "especially demanding" and should be construed generously in the Plaintiff's favor.[5]

18       "Subject-matter jurisdiction cannot be forfeited or waived and should be considered when fairly

19  in doubt."[6]  However, a claim of sovereign immunity is only quasi-jurisdictional in nature.[7]  As such,

20  while the defense of sovereign immunity may be asserted at any time, a defendant may be found to have

21

22  [4] *Gunpowder Riverkeeper v. F.E.R.C.*, 807 F.3d 267, 276 (D.C. Cir. 2015) ("any petitioner who 'arguably' asserts an environmental interest, read 'very broadly,' satisfies the test.")

23  [5] *City of Sausalito v. O'Neill*, 386 F.3d 1186, 1200 (9th Cir. 2004) (the "zone of interests" test is to be construed generously, is not meant to be especially demanding, and standing should only be denied if the plaintiffs interest are so far removed from the subject matter of the statute that it cannot reasonably be assumed that Congress intended to permit the suit); *Gunpowder Riverkeeper v. F.E.R.C.,* 807 F.3d 267, 276 (D.C. Cir. 2015) ("any petitioner who 'arguably' asserts an environmental interest, read 'very broadly,' satisfies the test."); *Presidio Golf Club. v. National Park Service,* 155 F.3d 1153, 1158 (9th Cir.1998) ("Because the zone of interests test is 'not a demanding one,' and the asserted interest need only be 'arguably within the zone of interests to be protected or regulated by the statute,' a rough correspondence of interests is sufficient." (citations omitted; emphasis in original)); *Louisiana v. Biden*, 2:21-CV-00778, 2021 WL 2446010, at *11 (W.D. La. June 15, 2021) (and even if some doubt exists, it should be resolved in favor of the plaintiff).

24

25

26

27  [6] *Ashcroft v. Iqbal*, 556 U.S. 662, 671, 129 S.Ct. 1937, 1945 (2009).
    [7] *Pistor v. Garcia*, 791 F.3d 1104, 1111 (9th Cir. 2015).

28

waived the defense if it is not invoked in a timely fashion.[8]  FRCP 12(b)(1) is a proper vehicle for raising a defense of sovereign immunity.[9]  The party asserting subject matter jurisdiction has the burden of proving that immunity does not bar the action.[10]

## II.    FRCP 12(b)(6) – Failure to State a Claim

FRCP 8(a)(2) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief" within a complaint."[11]  However, a complaint's factual allegations must be detailed and clear enough to raise the plaintiff's claim for relief "above the speculative level."[12]  Generally, the scope of review for a 12(b)(6) motion is limited to the complaint itself[13] and all factual allegation raised are taken as true[14] and construed in the light most favorable to the plaintiff.[15]  "A complaint should not be dismissed under Rule 12(b)(6) unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."[16]

## SUMMARY OF ARGUMENT

The Bureau's Motion to Dismiss lacks merit and should be denied.  Fernley's Complaint raises four distinct but wholly integrated claims: (1) that the Bureau violated NEPA, (2) that the Bureau violated the APA, (3) a request for declaratory relief related to the Bureau's unlawful and extra-jurisdictional determination of an issue of State water law, and (4) that the Bureau's proposed project will create a public nuisance.

With respect to Fernley's first two claims (violations of NEPA and APA), the Bureau contends that: (1) Fernley lacks prudential standing to raise these claims, and (2) the claims are improperly stated as two separate stand-alone claims instead of a single claim.  However, it is indisputable that Fernley's claimed injuries (harm to the groundwater aquifer and the water rights that rely on it) fall within the "zone of interests" protected by NEPA.  The NEPA statute expresses its purpose as follows:

Taggart & Taggart, Ltd.
108 North Minnesota Street
Carson City, Nevada 89703
(775) 882-9900 – Telephone
(775) 883-9900 – Facsimile

---

[8] *Id*. .

[9] *Id*. .

[10] *Robinson v. United States*, 586 F.3d 683, 685 (9th Cir. 2009).

[11] FRCP 8(a)(2).

[12] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1965 (2007).

[13] *Daniels-Hall v. National Educ. Ass'n.*, 629 F.3d 992, 998 (9th Cir. 2010).

[14] *Lee v. City of Los Angeles*, 250 F.3d 668, 677 (9th Cir. 2001).

[15] *Coal. For ICANN Transparency, Inc. v. VeriSign, Inc.*, 611 F.3d 495, 501 (9th Cir. 2010).

[16] *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988) (internal quotations and citations omitted).

> To declare a national policy which will encourage productive and enjoyable harmony *between man and his environment*; to promote efforts which will prevent or eliminate damage to the environment and biosphere and *stimulate the health and welfare of man*; [and] to enrich the understanding of the ecological systems and natural resources important to the Nation."[17]

Certainly, a groundwater aquifer that is relied upon for a public drinking water supply fits within this purpose.  Also, Fernley's APA and NEPA claims, while distinct, are not stand-alone claims but have been fully integrated with one another by the plain language of the Complaint.

With respect to Fernley's declarative relief claim, the Bureau first misconstrues the claim as an action to quiet title and then alleges that the United States never waived its sovereign immunity for quiet title actions involving water rights.  But Fernley's claim is not a quiet title action.  Rather, it is an attempt to undo an unlawful and extra-jurisdiction determination made by the Bureau with respect to the application of Nevada water law.  As a federal agency, the Bureau simply does not possess any authority to make final determinations about, or administratively adjudicate, state water law claims.

The Bureau also asks this Court to decline to exercise supplemental jurisdiction over Fernley's declaratory relief claim despite the fact that this claim is inextricably intertwined, and integrated with, Fernley's APA and NEPA claims, and all of the 28 U.S.C. 1367(c) factors support supplemental jurisdiction.  Next, the Bureau claims that Fernley's declaratory relief action is time-barred by the statute of limitations.  This claim ignores the fact that the Bureau's unlawful determination that Fernley has no right to Canal recharge did not become final until the EIS and ROD were issued.  Because that did not occur until December 2020, Fernley Complaint is timely.

Finally, the Bureau seeks to have Fernley's nuisance claim dismissed for failure to comply with the Federal Tort Claims Act ("FTCA") and the statute of limitations.  But the FTCA does not apply to a suit seeking only non-monetary relief brought under the APA.  And like the declaratory relief claim, the nuisance claim's statute of limitations did not begin to run until the agency action became final.

---

[17] 42 U.S.C. § 4321 (emphasis added).

Taggart & Taggart, Ltd.
108 North Minnesota Street
Carson City, Nevada 89703
(775) 882-9900 – Telephone
(775) 883-9900 – Facsimile

Accordingly, Fernley respectfully requests the Court deny the Bureau's Motion in its entirety. However, in the event the Court determines that any portion of Fernley's Complaint is unartfully pled, or otherwise deficient in form or substance, Fernley respectfully requests, in lieu of dismissal, that the Court grant it leave to amend the Complaint to correct any alleged deficiency.

## ARGUMENT

## I.    Fernley's NEPA and APA claims are properly justiciable, and pled, in this case.

The Bureau alleges that Fernley lacks prudential standing to bring its NEPA and APA claims, and that Fernley has improperly pled those claims on a separate stand-alone basis rather than a single integrated claim.  These allegations lack merit.  First, Fernley has prudential standing to bring its claims because the harm alleged falls squarely within the zone of interests established by NEPA.  Second, Fernley's Complaint is fully integrated by its own plain language.  Accordingly, the Bureau's Motion should be denied.

### A.    Fernley has prudential standing to bring its NEPA and APA claims.

The APA provides a cause of action for persons seeking redress against a federal agency that fails to comply with other statutes.[18]  Standing to bring an APA cause of action is limited to persons whose injuries are "arguably" within the "zone of interests" protected by the relevant statute.[19]  This test is not "especially demanding"[20] and even if some doubt exists, it should be resolved in favor of the plaintiff.[21]  As the Ninth Circuit has noted:

> The Supreme Court has instructed that the 'zone of interests' test is to be *construed generously*, stating that the 'test is not meant to be especially demanding,' and that a court should deny standing under the 'zone of interest' test only 'if the plaintiff's interests are so marginally related to or inconsistent with the purposes implicit in the statute that it cannot reasonably be assumed that Congress intended to permit the suit.[22]

---

[18] 5 U.S.C. § 702 & § 706

[19] *Gunpowder Riverkeeper v. F.E.R.C.*, 807 F.3d 267, 276 (D.C. Cir. 2015) ("any petitioner who 'arguably' asserts an environmental interest, read 'very broadly,' satisfies the test.")

[20] *City of Sausalito v. O'Neill*, 386 F.3d 1186, 1200 (9th Cir. 2004) (internal cites omitted). *See also Presidio Golf Club. v. National Park Service*, 155 F.3d 1153, 1158 (9th Cir.1998) ("Because the zone of interests test is 'not a demanding one,' and the asserted interest need only be *'arguably* within the zone of interests to be protected or regulated by the statute,' a rough correspondence of interests is sufficient." (citations omitted; emphasis in original)).

[21] *Louisiana v. Biden*, 2:21-CV-00778, 2021 WL 2446010, at *11 (W.D. La. June 15, 2021).

[22] *City of Sausalito v. O'Neill*, 386 F.3d 1186, 1200 (9th Cir. 2004) (internal citations omitted) (emphasis added).

Taggart & Taggart, Ltd.
108 North Minnesota Street
Carson City, Nevada 89703
(775)882-9900 – Telephone
(775)883-9900 – Facsimile

Taggart & Taggart, Ltd.
108 North Minnesota Street
Carson City, Nevada 89703
(775)882-9900 – Telephone
(775)883-9900 – Facsimile

Here, the National Environmental Policy Act ("NEPA") was enacted "to promote efforts which will prevent or eliminate damage to the environment and biosphere and stimulate the health and welfare of man."[23]  Fernley's claimed interests clearly fall within the general policy" of this statute.

Inarguably, "maintaining a supply of clean water and protecting the groundwater quality" are within NEPA's zone of interest.[24]  As are impacts a project will have the groundwater aquifer.[25]  In fact, in other NEPA related disputes within Nevada, the courts have determined that protecting "the environmental health of [municipal] lands and water supply" falls squarely within NEPA's zone of interest.[26]  For example, in *Churchill County v. Norton*, the City of Fallon and Churchill County filed a complaint against the Secretary of Interior and others, alleging that defendants violated NEPA by implementing the Truckee-Carson-Pyramid Lake Water Rights Settlement Act. Fallon's particular concern related to the "effects that reallocation of water rights under the Settlement Act will have on the city's water supply."[27]  The Ninth Circuit upheld the city's standing to assert their claim, stating that:

> Appellants assert that the environmental health of their lands and water supply is threatened by Defendants' action. Their threatened interest falls within NEPA's interest in preventing harm to the environment.[28]

In other words, alleged harm to a municipal water supply categorically falls within NEPA's stated purpose of preventing harm to the environment.

---

[23] 42 U.S.C. § 4321.

[24] *Westlands Water Dist. v. U.S. Dep't of Interior, Bureau of Reclamation*, 850 F. Supp. 1388, 1414 (E.D. Cal. 1994)

[25] *See e.g. National Mining Association v. Zinke*, 877 F.3d 845 (9th Cir. 2017) ("The USGS Report, final EIS, and ROD all acknowledged substantial uncertainty regarding water quality and quantity in the area, *the possible impact of additional mining on perched and deep aquifers (including the R-aquifer)*, and the effect of radionuclide exposure on plants, animals, and humans.") (emphasis added); *Environmental Defense Fund, Inc. v. Costle*, 439 F.Supp 980, 992 (E.D.N.Y 1977) ("The EIS asserts that polluted fresh water input resulting from *pollution of the aquifers* by individual waste disposal systems has a negative impact upon the estuarine ecosystem as would the alternative discussed of discharging treated effluent into the bays of Long Island.") (emphasis added); *Navajo Nation v. U.S. Forest Serv.*, 479 F.3d 1024, 1058 (9th Cir. 2007) ("Nevertheless, the FEIS contains some analysis of the *environmental impact of the diversion on the regional aquifer*.") (emphasis added); *Atl. Coast Pipeline, LLC v. Nelson Co. Bd. of Supervisors,* 443 F. Supp. 3d 670, 680 (W.D. Va. 2020) ("FERC in both its EIS and CPCN analyzed the pipeline's potential impacts on surface waters and fisheries, wetlands, heavy rainfall, *aquifers,* watersheds, sensitive waters and any other water bodies.") (Internal quotations omitted) (emphasis added).

[26] *See Churchill County v. Norton*, 276 F.3d 1060, 1065 (9th Cir. 2001), *opinion amended on denial of reh'g*, 282 F.3d 1055 (9th Cir. 2002) and *Churchill County v. Babbitt*, 150 F.3d 1072, 1081 (9th Cir. 1998), *opinion amended and superseded on denial of reh'g,* 158 F.3d 491 (9th Cir. 1998), *abrogated on other grounds by Wilderness Soc. v. U.S. Forest Serv.,* 630 F.3d 1173 (9th Cir. 2011).

[27] *Churchill County. v. Norton*, 276 F.3d 1060, 1073 (9th Cir. 2001), *opinion amended on denial of reh'g*, 282 F.3d 1055 (9th Cir. 2002).

[28] *Churchill County v. Babbitt*, 150 F.3d 1072, 1081 (9th Cir. 1998, *opinion amended and superseded on denial of reh'g,* 158 F.3d 491 (9th Cir. 1998), *and abrogated on other grounds by Wilderness Soc. v. U.S. Forest Serv.,* 630 F.3d 1173 (9th Cir. 2011).

Here, Fernley's Complaint also alleges a direct harm to its municipal water supply.[29]  Fernley also alleges harm to the local groundwater aquifer itself.[30]  Just as with the interest asserted by City of Fallon in *Churchill County*, these interests are more than adequate to meet the APA's standing requirement, particularly given the generous standard under which prudential standing is reviewed.[31]

Water rights in Nevada are regarded and protected as real property.[32]  Fernley holds valid water rights issued by the Nevada State Engineer to pump groundwater.  Those rights were issued in reliance on the dedicated recharge from the Canal and are a valid and legal appropriation of that recharge water.  The Bureau does not dispute that lining the canal will eliminate that recharge and reallocate that water to the Pyramid Lake Paiute Tribe ("PLPT").  Accordingly, the proposed action will clearly cause a physical impact to real property owned by Fernley.

Also, the harm claimed by Fernley is not purely economic, as the Bureau argues.  The Bureau concedes that Fernley's interest "has everything to do with access to groundwater for domestic, municipal, and industrial purposes."[33]  However, the Bureau is incorrect in asserting that this interest is only economic and has nothing to do with the environment.  While there may be costs involved to repair the damage to the City's wells, this is a secondary effect which springs from the irreparable harm that the human and physical environment will suffer.  And the mere presence of economic injury, if the plaintiff also asserts environmental concerns, does not preclude standing.[34]  Because Fernley's interest falls within NEPA's goal of preventing harm to the environment, as well as advancing human health and welfare, Fernley has prudential standing to bring this action under the APA and NEPA.

The Bureau also alleges that Fernley's claims fall short because the canal is man-made, and thus is not a "natural" environmental resource.  However, the purpose of an EIS is to evaluate changes to the

---

[29] Complaint at ¶30, ¶32, ¶71, & ¶126.  These interests clearly also meet the Article III standing requirements. *City of Sausalito v. O'Neill*, 386 F.3d 1186, 1198 (9th Cir. 2004) (a municipality has an interest in protecting its natural resources from harm.)
[30] Complaint at ¶29, ¶30, ¶31, ¶32, & ¶96.
[31] *Churchill County v. Norton*, 276 F.3d 1060, 1065 (9th Cir. 2001), *opinion amended on denial of reh'g*, 282 F.3d 1055 (9th Cir. 2002)
[32] *Application of Filippini*, 66 Nev. 17, 21–22, 202 P.2d 535, 537 (1949).
[33] Motion at 10:17-18.
[34] *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 155-56, 130 S.Ct. 2743, 177 L.Ed.2d 461 (2010) (explaining that, where respondents showed injury with both environmental and economic components, mere fact that respondents sought to avoid certain economic harms did not strip them of prudential standing).

Taggart & Taggart, Ltd.
108 North Minnesota Street
Carson City, Nevada 89703
(775) 882-9900 ~ Telephone
(775) 883-9900 ~ Facsimile

Taggart & Taggart, Ltd.
108 North Minnesota Street
Carson City, Nevada 89703
(775) 882-9900 – Telephone
(775) 883-9900 – Facsimile

1  status quo, not changes to some hypothetical "natural" environment that may have existed in the distant

2  past.  Fernley can find no caselaw to support the Bureau's contention that impacts to the environment

3  are narrowly defined and include only impacts to the environment in its "natural" state.[35]  Instead, a

4  NEPA process must analyze *all* the impacts that will result from implementation of the preferred

5  alternative.[36]  This is why the proposed change (the "action alternative") is evaluated against a "no-action

6  alternative" which is the existing status quo baseline.[37]

7         Here, the "no action" alternative (the status quo baseline) is that the "Canal would continue to be

8  operated under *current conditions*, contracts, and laws."[38]  Accordingly, the baseline is a Canal that is

9  not lined and continues to recharge the aquifer.  The preferred alternative changes this status quo and

10  conflicts with Fernley's water rights and water supply.  This also has secondary impacts related to land

11  use planning, community development, the health and safety of citizens, etc.  Accordingly, the Bureau's

12  argument that Fernley lacks standing because is only alleges changes to an "artificial" feature of the

13  environment is meritless.

14         Finally, even if the Bureau is correct, and any alleged impact must be measured against

15  environmental resources in their "natural" state, the Canal is legally considered a natural waterway.

16             There is…an established principle that by lapse of time an artificial

17             watercourse may come to be regarded as equivalent to a natural

18             one…Where the creator of the artificial condition intended it to be

19             *permanent*, and a community of landowners or water users has been

20             allowed to adjust itself to the presence and existence of the artificial

           watercourse or other artificial condition, acting upon the supposition of its

           continuance, and this has proceeded for a long time beyond the

---

[35] *See generally Great Basin Resource Watch v. Bureau of Land Management*, 844 F.3d 1095, 1111 (9th Cir. 2016) ("Establishing appropriate baseline decisions conditions is critical to any NEPA analysis.") , *Center for Biological Diversity v. United States Bureau of Land Management*, 2017 WL 26667700 (D. Nev. 2017) (EIS evaluated proposed mitigation that used baseline data for water resources to establish "early warning thresholds to mitigate project impacts."  The 9th Circuit held that the discussion of these mitigation measures was reasonable under NEPA.).

[36] *Dep't of Transp. v. Pub. Citizen*, 541 U.S. 752, 767, 124 S. Ct. 2204, 2215, 159 L. Ed. 2d 60 (2004).

[37] There is no "no canal alternative" as the baseline, or no action alternative, because the canal exists.  *Pac. Coast Fed'n of Fishermen's Associations v. U.S. Dept. of the Interior*, 929 F. Supp. 2d 1039, 1053 (E.D. Cal. 2013) (the "no action alternative" reflects historic use, and not a condition that existed prior to human management).  *See also Cntr. for Biological Diversity v. U.S. Dep't of Interior*, 623 F.3d 633, 642 (9th Cir. 2010) ("A no action alternative in an EIS allows policymakers and the public to compare the environmental consequences of the status quo to the consequences of the proposed action. The no action alternative is meant to "provide a baseline against which the action alternative[ ]"—in this case, the land exchange—is evaluated. *Id.* A no action alternative must be considered in every EIS.")

[38] Record of Decision at 2 (emphasis added).

9

prescriptive period, *the new condition will be regarded as though it were a natural one, its artificial origin being the disregarded by the law as it has been by the community.* The creator of the artificial watercourse will be held to have dedicated it to the use of the community that has by long time become adjusted to it…This rule rests upon a quasi dedication of the artificial condition to the public, and *the essence of it is the growth of a community dependent upon the artificial condition.*[39]

Several states have recognized this doctrine including California,[40] Washington (which frames it as a form of estoppel),[41] and, most importantly, Nevada.[42]

Here, there is no reasonable dispute that: (1) the Bureau constructed the Canal more than 115 years ago intending it to be a permanent facility, (2) the Canal was constructed for the express purpose of creating communities like Fernley and enticing settlers to live in those communities, (3) Fernley legally appropriated the recharge provided by the Canal with the Bureau's full knowledge and acquiescence, and (4) the State Engineer relied on the permanent nature of the dedicated recharge when issuing Fernley' groundwater rights.  Therefore, the Canal, and the dedicated recharge water, is legally considered a natural feature of the environment.  Therefore, even if the Court accepts the Bureau's novel and radical interpretation that an EIS is only required to consider impacts to "natural" not "artificial" environmental resources, the Canal, and its recharge, is legally considered a natural resource and Fernley has prudential standing to bring this action.

**B.** **Fernley properly raised its NEPA claim under the APA and NEPA provides the statutory basis for the violations of the APA alleged by Fernley.**

The Bureau alleges that Fernley is bringing a "stand alone" NEPA claim.[43]  This is a hyper technical argument of form over substance and is meritless.  The APA authorizes judicial review where the claim for relief identifies a particular agency action, and that action is deemed final.[44]  The APA also

---

[39] *See* 1 Wiel, Water Rights in the Western States § 60, at 59–60 (3d ed. 1911).
[40] *See Chowchilla Farms, Inc. v. Martin*, 25 P.2d 435 (Cal. 1933) (saying "we feel warranted in holding that a water course, although originally constructed artificially, may from the circumstances under which it originated and by long-continued use and acquiescence by persons interested therein become and be held to be a natural water course"); *See also Paige v. Rocky Ford Canal & Irrigation Co.*, 84 Cal. 84, 93, 21 P. 1102, 1104 (1889).
[41] *Hollett v. Davis*, 54 Wash. 326, 332-3, 103 P. 423, 426 (1909).
[42] *Ryan v. Gallio*, 52 Nev. 330, 286 P. 963, 968 (1930) ("it is an established principle that, by lapse of time, an artificial water course may come to be regarded as equivalent to a natural one . . . ").
[43] Motion at 10.
[44] *See* 5 U.S.C. § 701 and *Lujan v. National Wildlife Fed'n.*, 497 U.S. 871, 882, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990).

Taggart & Taggart, Ltd.
108 North Minnesota Street
Carson City, Nevada 89703
(775)882-9900 ~ Telephone
(775)883-9900 ~ Facsimile

allows judicial review when an agency violates other federal statutes.[45]  Fernley recognizes that a NEPA

violation can only be reviewed under the APA.  That is why Fernley's Complaint incorporates its NEPA

challenge under the APA.[46]

The Bureau claims that "between paragraphs 94 and 108 of its Compliant [Fernley] never

mentions the APA."  However, Paragraph 94 clearly states that "Plaintiff incorporates by reference each

and every allegation set forth in the preceding paragraphs."  And the same language is used in Paragraph

109.  The language of paragraphs 94 and 109 is a commonly used form of pleading that serves to unite

all allegations and claims contained within the Complaint into a single, integrated whole.  No claim

stands alone.  Instead, each paragraph or claim is just one piece of the integrated whole.

In its Complaint, Fernley clearly states it is bringing this action under the APA[47] and that the

decision being challenged is a final administrative action.[48]  Fernley properly identifies each NEPA

provision or regulation that it alleges the Bureau has violated[49] and incorporates those allegations directly

into its APA claim.[50]  Accordingly, Fernley's NEPA claim is properly pled under the APA.

The Bureau also alleges that Fernley raised an APA claim without a "statutory partner."[51]  But,

as noted above, Fernley's Complaint is an integrated whole wherein all preceding paragraphs are

incorporated into each and every claim.[52]  In the preceding paragraphs to Fernley's APA claim, it cites

the specific NEPA provisions and regulations that the Bureau violated.  Accordingly, Fernley has

properly identified a statutory partner for its APA claim.

The Bureau's Motion notes that it would not object to Fernley's NEPA and APA claims if they

were merged into a single claim rather than stated as two claims.[53]  This ignores the effect of the

incorporation clauses mentioned above, which do in fact integrate the claims.   However, if the Court

Taggart & Taggart, Ltd.
108 North Minnesota Street
Carson City, Nevada 89701
(775) 882-9900 – Telephone
(775) 883-9900 – Facsimile

---

[45] 5 U.S.C. § 702 ("A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof.")
[46] Complaint at ¶5, ¶7, ¶110, ¶111, & ¶112.
[47] Complaint at ¶5, ¶7, ¶110, ¶111, & ¶112.
[48] Complaint at ¶93.
[49] Complaint at ¶¶95-108.
[50] Complaint at ¶109.
[51] Motion at 11:2-7.
[52] Complaint at ¶94, ¶109, ¶113, & ¶123.
[53] Motion at 11, n.8.

determines that Fernley's Complaint does contain a technical formatting deficiency, Fernley requests an opportunity to amend the Complaint in lieu of dismissal.

## II. Fernley's Declaratory Relief Claim Is Not Barred By Sovereign Immunity, This Court Has Jurisdiction Over That Claim, And That Claim Was Properly Pled.

Fernley's Complaint requests a declaratory order from the Court stating that Fernley has a right to the dedicated recharge from the Canal.[54] Fernley's legal right to that recharge water is central to this action. In the EIS, the Bureau made a final administrative determination that Fernley does not have a right to the dedicated recharge and, because of that, did not analyze the effects of the project on Fernley's groundwater rights. If Fernley prevails on its NEPA and APA claims, the Court may vacate the ROD and direct the Bureau to conduct a proper analysis of the effects the proposed project will have on the aquifer's water supply. But that remedy would be partial, not complete. A declaratory judgment stating that the recharge was impliedly dedicated to Fernley when its groundwater rights were issued is required. Without such a declaration there will be nothing to force the Bureau to take Fernley's concerns about the groundwater aquifer seriously. Fernley's declaratory relief claim also seeks a reversal of the Bureau's erroneous and unlawful interpretation of the relevant law.[55]

The Bureau's arguments regarding this claim are without merit. First, because Fernley's declaratory relief claim is integrated into its APA claim, the APA's waiver of sovereign immunity applies. Second, Fernley's declaratory relief claim is not a quiet title action. Fernley already acquired title to the dedicated recharge when the State Engineer issued Fernley's groundwater permits in reliance on the continued existence of that water source, and the Bureau has no colorable claim to that water. Third, this Court should exercise its discretion to hear the declaratory judgment claim, and the Court has supplemental jurisdiction over Fernley's declaratory relief claim under 28 U.S.C. § 1367 because the determination of that claim is required for the Court to properly evaluate Fernley's APA and NEPA claims. Fourth, the Bureau misunderstands the role of the State Engineer in Nevada. From the earliest days of Nevada's statutory water law, the Nevada Supreme Court has held that separation of power

Taggart & Taggart, Ltd.
108 North Minnesota Street
Carson City, Nevada 89703
(775) 882-9900 – Telephone
(775) 883-9900 – Facsimile

---

[54] Complaint at 17 (Prayer for Relief No. 4).
[55] Complaint at ¶115.

principles preclude the State Engineer from adjudicating water claims – that can only be done by the judiciary.  Once the State Engineer issued Fernley's groundwater permits in reliance on the recharge water, his role in this matter was complete.  Fifth, Fernley's declaratory relief claim is not time-barred because the Bureau's unlawful determination of its rights to the recharge water did not become final until the EIS and ROD were issued.  Sixth, Fernley's complaint clearly and specifically states a proper claim that adequately informs the Bureau of the legal and factual basis for its claims.

### A.   The United States waived sovereign immunity to Fernley's declaratory relief claim.

The waiver of sovereign immunity in the APA authorizes Fernley to seek declaratory relief against the United States.[56]  The APA waives sovereign immunity related to any suit "seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or *under color of legal authority*."[57]  Courts have consistently held that this waiver is broad in scope and applies to any action against an agency or officer or employee of the agency seeking non-monetary relief.[58]  "[T]he 1976 amendments to §702 of the Administrative Procedure Act, eliminated the sovereign immunity defense in *virtually all actions* for non-monetary relief against a U.S agency or officer acting in an official capacity."[59]

As noted above, Fernley is suing the Bureau for violating the requirements of NEPA and the APA.  The defense raised in the EIS for why the Bureau failed to properly follow NEPA was the erroneous legal determination that Fernley has no right to the dedicated recharge.  The Bureau asserts the unilateral right to cut off Fernley's municipal water supply without following NEPA's requirements to analyze the impacts of that decision or investigate methods to mitigate those impacts.

The Bureau's finding that Fernley has no right to dedicated recharge from the Canal was a final determination by an administrative agency that is contrary to law, outside of the agency's jurisdiction, and interferes with Fernley's valid and legally appropriated water rights.   This is exactly the type of action contemplated under the APA's waiver of sovereign immunity.  The Bureau, not Fernley, made

---

[56] *Block v. North Dakota*, 461 U.S. 273, 280 (1983).
[57] 5 U.S.C. § 702 (emphasis added).
[58] *Trudeau v. Federal Trade Com'n*., 456 F.3d 178, 186-87 (2006) ("In sum, we hold that APA §702's waiver of Sovereign immunity permits not only Trudeau's APA cause of action, but his nonstatutory and First Amendment actions as well.").
[59] *Clark v. Library of Congress*, 750 F.2d 89, 102 (D.C. Cir. 1984) (emphasis added).

Taggart & Taggart, Ltd.
108 North Minnesota Street
Carson City, Nevada 89703
(775) 882-9900 – Telephone
(775) 883-9900 – Facsimile

Fernley's right to dedicated recharge an issue in this case when it exceeded its jurisdiction by declaring that Fernley has no right to that water. The Bureau simply has no authority under either state or federal law to make determinations regarding who does or does not have a right to the waters of the State of Nevada. The fact that they did so in this case is a direct violation of the APA.

Fernley's Complaint seeks only non-monetary relief.[60] Accordingly, it falls under the APA's waiver of sovereign immunity. And contrary to the Bureau's clam that Fernley's complaint is silent with respect to sovereign immunity,[61] Fernley affirmatively cited to §702 of the APA as a basis for this Court's jurisdiction over the complaint.[62] Accordingly, the Bureau's Motion should be denied.

### B.   Fernley's declaratory relief claim is not a claim for quiet title.

Nothing in Fernley's Complaint, including its request for declaratory relief, can be construed as a quiet title action. Despite this, the Bureau argues that the APA's waiver of sovereign immunity does not apply to Fernley's declaratory judgment claim because in the Quiet Title Act ("QTA"), the government explicitly declined to waive its immunity in disputes concerning the title to water rights.[63]

In *Pottawatomi Indians v. Patchak,* the Supreme Court held that an action will be considered a "quiet title action" within the QTA only if the plaintiff (1) contests the title of property claimed by the United States and (2) the plaintiff claims a competing interest in the subject property.[64] In *Patchak* the plaintiff sued the Secretary of the Interior under the APA claiming that the Secretary did not have authority to acquire property for an Indian Tribe.[65] Just as here, the United States argued that the APA's immunity waiver did not apply to the plaintiff's suit because it was prohibited by the QTA.[66] The Court rejected this argument holding that the suit was not a quiet title action because while the United States did claim an interest in the subject property the plaintiff did not, and therefore no adversity existed regarding ownership.[67] The same is true here. The Bureau alleges that Fernley's claim to dedicated

---

[60] Complaint at 17 (Prayer for Relief).
[61] Motion at 12:6-8.
[62] Complaint at ¶5.
[63] Motion at 13:9-13.
[64] *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 216-17 (2012).
[65] *Id*. at 213.
[66] *Id*. at 215.
[67] *Id*. at 209, 219-20.

Taggart & Taggart, Ltd.
108 North Minnesota Street
Carson City, Nevada 89703
(775) 882-9900 – Telephone
(775) 883-9900 – Facsimile

recharge is directly adverse to the Bureau's diversion right under the *Orr Ditch* decree.[68] But *Nevada v. United States* finally and completely decided that the Bureau can make no colorable claim to that water in the Newlands project.[69]

The Bureau's argument hinges on an incorrect understanding of the rights in question and ignores *Nevada v. United States.* The Supreme Court has recognized that the nature of the United States' interest in *Orr Ditch* Claim 3 water rights is limited. The Court ruled the government *does not own* Claim 3 water rights, and has, *at best*, a nominal interest in those waters.[70] The Supreme Court also held that the water right ownership really resides with the "owners of the land within the project to which these water rights became appurtenant upon the application of Project water to the land"[71] Given this clear and binding precedent, the Bureau is clearly wrong when it asserts that any quiet title action is needed regarding Claim 3 of *Orr Ditch.* That was already conclusively decided.[72]

The Bureau's refusal to acknowledge what *Nevada v. United States* held is further evident in the underlying goal of the proposed action in the EIS. The Supreme Court could not have been clearer that the government does not own Newlands project water and cannot trade it around *like so many bushels of wheat.*[73] Yet that is exactly what the Bureau is doing here. In *Nevada v. United States,* the Bureau sought to reallocate Claim 3 water from the farmers in the Newlands project to the Pyramid Lake Paiute Tribe ("Tribe"). Here, through the EIS and the lining project, the Bureau is seeking to reallocate Fernley's dedicated recharge to the Tribe. The Bureau cannot hide behind an unfounded claim to waters it does not own to assert immunity so it can do what it could not accomplish in *Nevada v. United States.*

The irony of the Bureau's argument is that if its claim to own the recharge water was colorable, that claim would belong in the *Orr Ditch* court. But the *Orr Ditch* court is where the *Nevada v. United States* case originated, and where the United States' sovereign immunity is clearly waived because it

---

[68] Motion at 13:1-8.

[69] *Nevada v. U.S.*, 463 U.S. 110, 126, 103 S.Ct. 2906, 2916 (1983) (The government's ownership of the *Orr Ditch* Claim 3 water rights is "at most nominal").

[70] *Id*.

[71] *Id.*

[72] *Id.* at 143-144 (holding that the original *Orr Ditch* allocations of water are res judicata and the Bureau cannot reallocate Claim 3 water to the Tribe).

[73] *Id*. at 126.

Taggart & Taggart, Ltd.
108 North Minnesota Street
Carson City, Nevada 89703
(775)882-9900 – Telephone
(775)883-9900 – Facsimile

originally filed the *Orr Ditch* case to quiet title to Truckee River waters. If the Bureau's ownership claim were filed in Orr Ditch, it would be dismissed by not only res judicata, but also by law of case. Rather than waste the massive expense of serving notice of such a futile action on all the parties to *Orr Ditch*, this Court can simply rely on the *Nevada v. United States* holding to find that the Bureau is estopped under res judicata from claiming any ownership interest in the dedicated recharge.

No adversity exists between Fernley's lawful appropriation of the dedicated water and the Bureau's role in the Newlands project, as articulated by the Supreme Court. As stated in Fernley's Complaint, the Bureau's Claim 3 water right under *Orr Ditch* expressly authorized diversions to support the development of towns and cities within the Newlands Project (like Fernley).[74] That is why Fernley's groundwater permits were approved by the State Engineer without any protest from the Bureau. In other words, a finding by this Court that Fernley has a right to dedicated recharge will be fully consistent with purposes stated in the decree for the diversion of Claim 3 water.

Just as the Bureau's lack of ownership of the water is undisputable, so is the fact Fernley owns groundwater permits for the dedicated recharge. The real owners of water rights are those who appropriate and placed it to beneficial use – like Fernley. Fernley holds title to valid state-issued groundwater rights. No other party, including the Bureau, has claimed an adverse interest in those water rights. Fernley's declaratory relief claim merely asks this Court to uphold and protect those existing rights, not adjudicate them. Accordingly, no dispute exists over title to the dedicated recharge water because any potential dispute has already been settled by the United States Supreme Court. Water rights belong to the parties who legally appropriated it under state law. All Fernley is asking this Court to do is enforce that clear and binding precedent.

Accordingly, the Bureau cannot plausibly claim immunity for Fernley's declaratory relief claim. As with *Patchak*, the lack of adversity between each party's claimed right means the Fernley's declaratory relief claim is not the type of action barred by the QTA. Accordingly, the Bureau's Motion should be denied.

---

[74] Complaint at ¶21

Taggart & Taggart, Ltd.
108 North Minnesota Street
Carson City, Nevada 89703
(775) 882-9900 – Telephone
(775) 883-9900 – Facsimile

### C.   The Court should exercise discretion to hear the declaratory judgment claim, and the Court has supplemental jurisdiction over that claim.

#### 1.   Discretion to hear declaratory relief claim

While a Court has some discretion over whether to issue a declaratory judgment, "this discretion is not unfettered."[75]  Instead, "when other claims are joined with an action for declaratory relief . . . the district court should not, as a general rule, remand or decline to entertain the claim for declaratory relief."[76]  If a federal court is required to determine issues of state law because those issues are necessary to resolve associated federal claims, the claim for declaratory relief "should be retained to avoid piecemeal litigation."[77]

The Bureau argues that this Court should exercise its discretion to dismiss Fernley's declaratory relief claim based on the factors articulated in *Government Employees Insurance Co. v. Dizol*.[78]  However, those factors actually weigh against dismissal.  First, under *Dizol*, a district court should avoid *needlessly* determining issues of state law.[79]  But here, the Court's determination of Fernley's state law claims is a necessary prerequisite to the Court's determination of Fernley's federal APA and NEPA claims related to the sufficiency of the EIS.[80]  One of Fernley's primary federal claims is that the Bureau failed to properly consider and analyze the impact of the project on the groundwater aquifer and Fernley's groundwater rights.  In the EIS the Bureau defends against this charge by claiming that such analysis was not required because Fernley has no right to the recharge water.  Accordingly, this Court cannot properly rule on Fernley's APA and NEPA claims without first addressing whether Fernley does or does not have a right to the recharge under state law.

The second *Dizol* factor states that a district court "should discourage litigants from filing declaratory actions as a means of forum shopping."[81]  The Bureau alleges that Fernley engaging in forum shopping by attempting to adjudicate a water right before this Court instead of the State Engineer.[82]  But

---

[75] *Government Employees Ins. Co. v. Dizol*, 133 F.3d 1220, 1223 (9th Cir. 1998).
[76] *Id*. at 1224. )
[77] *Id*. at 1225-26. )
[78] Motion at 17:10-12.
[79] *Government Employees Ins. Co. v. Dizol*, 133 F.3d 1220, 1225 (9th Cir. 1998).
[80] Complaint at ¶115.
[81] *Government Employees Ins. Co. v. Dizol*, 133 F.3d at 1225..
[82] Motion at 17:13-20.

Taggart & Taggart, Ltd.
108 North Minnesota Street
Carson City, Nevada 89703
(775)882-9900 – Telephone
(775)883-9900 – Facsimile

the State Engineer is not authorized to adjudicate water rights in Nevada[83] and, even if he was, Fernley is not seeking a water rights adjudication.[84]   There is no evidence of forum shopping here.   Rather, Fernley brought its declaratory relief claim in this Court solely because it is inextricably intertwined with its federal APA and NEPA claims, and this Court is the proper venue to hear those claims.[85]   The State Engineer has already issued Fernley's groundwater rights in reliance on the dedicated Canal recharge.[86] That is the extent of his jurisdiction and there is nothing more for him to do.   As stated above, Fernley's declaratory relief claim is merely requesting this Court recognize and protect its State Engineer issued water rights to ensure that the Bureau properly considers the impacts that its proposed project will have on those rights.

The last *Dizol* factor states that a court should seek to avoid duplicative litigation.[87]   Here, the Courts exercise of its discretion to hear Fernley's declaratory relief claim carries no risk of duplicative litigation.   As previously noted, the APA's waiver of sovereign immunity makes this Court the only proper venue for Fernley's claims.[88]   Because Fernley's declaratory relief claim is inextricably intertwined with its federal APA and NEPA claims, there is no risk of duplicative litigation.

Because all the *Dizol* factors favor this Court entertaining Fernley's declaratory relief claim, the Bureau's Motion should be denied.

## 2.   Supplemental jurisdiction over the declaratory relief claim

Contrary to the Bureau's contention, this Court has supplemental jurisdiction over Fernley's declaratory relief claim pursuant to 28 U.S.C. §1367.   "In any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all the claims that

---

[83] *Ormsby County. v. Kearney*, 37 Nev. 314, 142 P. 803 (1914).
[84] *See* Section B(1)(b) *supra*.
[85] *See Federal Nat. Mortg. Ass'n v. LeCrone*, 868 F.2d 190, 193 (6th Cir. 1989) ("Although Congress did not explicitly grant federal courts exclusive jurisdiction to entertain APA suits, we believe Congress implicitly confined jurisdiction to the federal courts when it limited the waiver of sovereign immunity contained in section 702 of the Act to claims brought in a court of the United States.") (internal quotations omitted); *see also Aminoli U.S.A. v. California State Water Resources Control Bd.*, 674 F.2d 1227,1233 (9th Cir. 1982).
[86] Complaint at ¶30.
[87] *Government Employees Ins. Co. v. Dizol*, 133 F.3d 1220, 1225 (9th Cir. 1998).
[88] *See* fn. 85 *supra*.

Taggart & Taggart, Ltd.
108 North Minnesota Street
Carson City, Nevada 89703
(775) 882-9900 – Telephone
(775) 883-9900 – Facsimile

1   are so related to claims in the action within such original jurisdiction that they form part of the same case

2   or controversy under Article III of the United States Constitution."[89]

3   As has been previously noted, the basis for Fernley's declaratory relief claim is the Bureau's

4   erroneous and unlawful administrative determination that Fernley has no right to the Canal recharge.[90]

5   In other words, Fernley's declaratory relief claim is integral to its APA and NEPA claims and, thus, is

6   part of the same case or controversy.  Accordingly, this Court has indisputable supplemental jurisdiction

7   over Fernley's declaratory relief claim under 28 U.S.C. §1367.

8   Even so, a district court may discretionarily decline supplemental jurisdiction under certain

9   circumstances.  For example, supplemental jurisdiction may be declined where "(1) the claim raises a

10  novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims

11  over which the district court has original jurisdiction, (3) the district court has dismissed all claims over

12  which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons

13  for declining jurisdiction."[91]

14  Here, the only real question is whether Fernley's declaratory relief claim raises a novel or

15  complex issue of Nevada law that would be better handled in state court.  First, as noted above, because

16  this claim is inextricably intertwined with its NEPA and APA claim(s), and those claims cannot be

17  brought in state court, this is the only proper venue for this case.  This is one reason why federal courts

18  have regularly decided issues of state water law in litigation involving the federal government.[92]  Second,

19  if the Court is concerned with unilaterally deciding a novel or complex issue of state law, it can always

20  exercise its right to certify that particular question to the Nevada Supreme Court before issuing a final

21

22

23   [89] 28 U.S.C. §1367(a).

24   [90] Truckee Canal Extraordinary Maintenance Final EIS at 3-17 through 3-18.

     [91] 28 U.S.C. 1367(c).

25   [92] *See United States v. Alpine Land & Reservoir Co.*, 697 F.2d 851, 858 (9th Cir. 1983); *California v. U.S.*, 438 U.S. 645, 664

26   (1978) ("the [Reclamation] Act clearly provided that state water law would control in the appropriation and later distribution
     of the water."), *Jicarillla Apache Tribe v. U.S.*, 657 F.2d 1126, 1133 (10th Cir. 1981) ("[i]t generally can be said that state law
     governs the distribution of water from federal projects unless Congress expresses a different approach."), *U.S. v. Alpine Land
27   and Reservoir Co.*, 889 F.2d 207 (9th Cir. 1989) ("in the absence of congressional directives, DOI can regulate distribution,
     acquisition, and vested water rights if its regulations *are not inconsistent with state law*. (emphasis added)).

28

Taggart & Taggart, Ltd.
108 North Minnesota Street
Carson City, Nevada 89703
(775)882-9900 – Telephone
(775)883-9900 – Facsimile

determination on the merits in this case.[93]  This process has been used in the past in cases where the only proper venue for an action is federal court but the case necessarily implicates issues of state law.[94]

Furthermore, Fernley's APA and NEPA claims clearly predominate over its declaratory relief claim, not the other way around.  The sole purpose for the declaratory relief claim is so that the Court can fully and properly direct the Bureau to correct its EIS.  And Fernley's declaratory relief claim will necessarily impact the analysis of the sufficiency of the EIS.

Finally, the Bureau argues that the Court should decline to exercise supplemental jurisdiction because Nevada law has a comprehensive system for apportioning and adjudicating water rights.[95]  This argument fails.  The fact that Nevada law has a comprehensive system of apportioning and adjudicating water rights is irrelevant.  The State Engineer has already recognized Fernley's groundwater rights when he issued permits to appropriate groundwater based on the dedicated recharge from the Truckee Canal.[96]  Fernley is not trying to adjudicate new water rights but is merely requesting recognition and protection of already existing water rights.  Also, contrary to the Bureau's erroneous assertion that Nevada law does not recognize a right to continued recharge, the Nevada Supreme Court has previously recognized the implied dedication doctrine.[97]  That doctrine applies directly in Fernley's case and the State Engineer issued Fernley's groundwater rights in reliance on the dedicated recharge.

Because this Court has supplemental jurisdiction under 28 U.S.C. §1367, and because none of the factors in 28 U.S.C. 1367(c) weigh against exercising that jurisdiction, the Bureau's Motion should be denied.

Taggart & Taggart, Ltd.
108 North Minnesota Street
Carson City, Nevada 89703
(775)882-9900 – Telephone
(775)883-9900 – Facsimile

---

[93] *See* Nevada Rules of Appellate Procedure 5 ("The Supreme Court may answer questions of law certified to it by . . . a United States District Court . . . when requested by the certifying court, if there are involved in any proceeding before those courts questions of law of this state which may be determinative of the cause then pending in the certifying court and as to which it appears to the certifying court there is no controlling precedent in the decisions of the Supreme Court or Court of Appeals of this state.").

[94] *See e.g. Mineral County v. Lyon County*, 136 Nev.Adv.Op. 58, 473 P.3d 418 (2020) (answering a certified question from the Ninth Circuit Court of Appeals regarding the application of the Public Trust Doctrine to Nevada water law).

[95] Motion at 16:11-15.

[96] Fernley's Complaint for Declaratory and Injunctive Relief at 5:1-6.

[97] *Ryan v. Gallio*, 52 Nev. 330, 286 P. 963, 968 (1930) ("it is an established principle that, by lapse of time, an artificial water course may come to be regarded as equivalent to a natural one . . . ").  While the Nevada courts have never had the opportunity to decide a case based on the implied dedication doctrine, they have also never held that the doctrine is inapplicable within Nevada.

**D.   The Nevada State Engineer already determined the issue of Fernley's right to dedicated recharge when he issued Fernley's groundwater permits in reliance on that recharge.**

The Bureau claims the Nevada State Engineer has primary jurisdiction to resolve Fernley's claim to dedicated recharge, and Fernley failed to exhaust administrative remedies prior to filing this action.[98] This argument is without merit.  As clearly stated in the Complaint, Fernley already sought and received permits to appropriate the recharge water from the State Engineer.[99]  The issuance of those permits was a final administrative action under Nevada law.[100]  Neither the Bureau, nor any other party, challenged the State Engineer's issuance of Fernley's permits either administratively or judicially.  Accordingly, the State Engineer's approval of Fernley's appropriation of the dedicated recharge water was final when the permits were issued, and there is no additional state-based administrative process to exhaust.

In addition, the State Engineer's issuance of Fernley's permits in reliance on the recharge water was based on groundwater budgets developed by the Bureau's own sister agency – the United States Geological Survey.[101]  Those reports identified the recharge water as a component of the groundwater budget that was available for appropriation.  Accordingly, not only did the United States not protest Fernley's permits, it also actively assisted the State Engineer in developing the scientific basis that justified the issuance of those permits.

Also, the Bureau is simply wrong about Nevada water law.  The State Engineer has no authority to adjudicate water right claims in Nevada.  When Nevada was first creating its water law, early versions of the law provided the State Engineer with the power to adjudicate competing claims to the same source of water.  Water right owners challenged the original water law as an encroachment upon the jurisdiction of the courts under separation of powers principles.  In *Ormsby County. v. Kearney*,[102] the Nevada Supreme Court determined that the judiciary is the only branch of government authorized to adjudicate competing claims to property.  As Chief Justice Talbot noted, "the Legislature cannot invest the state

---

[98] Motion at 17:26-28.
[99] Complaint at ¶30.
[100] NRS 533.450.
[101] A.S. VAN DENBURGH, ET AL., WATER RESOURCES – RECONNAISSANCE SERIES REPORT 57 (U.S.G.S. 1973); A.S. VAN DENBURGH & FREDDY E. ARTEGA, REVISED WATER BUDGET FOR THE FERNLEY AREA, WEST-CENTRAL NEVADA, 1979 (U.S.G.S. Open File Report 84-712).
[102] *Ormsby County. v. Kearney*, 37 Nev. 314, 142 P. 803 (1914).

Taggart & Taggart, Ltd.
108 North Minnesota Street
Carson City, Nevada 89703
(775)882-9900 – Telephone
(775)883-9900 – Facsimile

engineer, or any appointive or administrative officer, with the judicial power of finally adjudicating" claims to water.[103]  Similarly Justice McCarran stated that giving such power to the State Engineer would "take from the courts that which the organic law specified should be limited to the province of the courts—the right to determine matters involving the possession or the right of possession to property."[104]

Shortly after *Ormsby*, the Legislature amended the water law to clarify that the State Engineer had no final adjudicative authority in water rights cases.[105]  These amendments were likewise challenged and upheld in *Bergman v. Kearney*, where the court noted that "[a]t no stage does the [State Engineer] determination possess any of the characteristics of finality; it cannot be regarded as terminating between the parties' litigation on the merits of the case."[106]

The State Engineer already performed his administrative role when he issued Fernley's groundwater permits thereby giving Fernley a right to the dedicated Canal recharge.  No additional administrative process exists.  And, again, Fernley is not seeking to adjudicate a quiet title action in this case.  Rather, it is merely requesting the Court affirmatively recognize what the State Engineer has already done – authorize Fernley to appropriate and use the dedicated recharge as a source of supply for its municipal water system.

### E.  Fernley's claim for declaratory relief is timely.

The Bureau contends that Fernley's declaratory relief claim is time-barred by 28 U.S.C. § 2401(a)'s six-year statute of limitations.  First, the Bureau claims that because Fernley failed to object to prior actions to limit diversions from the Truckee River, it has waived its right to challenge the proposed project.  This claim is wholly without merit or evidence.  The Bureau's prior efforts to reduce diversions under either the Newlands Project Operating Criteria and Procedures ("OCAP") or the emergency flow restrictions after the 2008 flood did not significantly affect the amount of recharge from the Canal to the aquifer.  As long as the canal is wet, recharge occurs.  While there may be incremental increases or decreases to the quantity of recharge based on water levels in the Canal, they are relatively

---

[103] *Id*. (C.J. Talbot concurring). .
[104] *Id*. (J. McCarran concurring). .
[105] 1915 Statutes of Nevada 253, § 4.
[106] *Bergman v. Kearney*, 241 F. 884, 895–96 (D. Nev. 1917).

Taggart & Taggart, Ltd.
108 North Minnesota Street
Carson City, Nevada 89703
(775) 882-9900 – Telephone
(775) 883-9900 – Facsimile

modest and may not significantly affect the total amount of recharge that occurs. By contrast, lining the canal will cut off the recharge completely. In addition, when the Bureau took those actions it never did so under a claim that Fernley's groundwater rights are invalid or that Fernley has no right to continued recharge from the canal.

The Bureau next attempts to claim that the statute of limitation began to run on the declaratory relief claim after a 2012 letter from the Bureau to Fernley.[107] But that letter was not a final administrative determination and thus was not appealable under the APA. To obtain judicial review under the APA, a petitioner must be challenging a "final agency action."[108] The Supreme Court has stated that for an agency action to be considered final it must: (1) "mark the consummation of the agency's decision-making process," and (2) "be one by which rights or obligations have been determined, or from which legal consequences will flow."[109] Neither of those conditions were met when the Agency issued its 2012 and 2013 letters.

In determining whether an agency's action is final, a court must look to "the practical and legal effects of the agency action."[110] The letters in question were responses to letters sent from Fernley to the Bureau's Commissioner. In its letters, Fernley expressed its desire that any studies undertaken with respect to evaluating alternative Canal fixes should take into account the effect such actions will have on the local groundwater aquifer. Contrary to the Bureau's representations, its response letters were not final agency orders subject to judicial review. Rather they were preliminary responses to Fernley's concerns. In fact, the 2012 letter cited by the Bureau ends by stating that while the Bureau disagrees with Fernley's legal contentions it will "commit to considering the City's historical use of Canal seepage water in our Planning Study" and expresses an intent to "assist the City."[111] Far from being an expression of a final agency action that marks the consummation of a decision-making process, the letter indicates that the administrative process is just beginning and that Fernley's concerns will be addressed.

---

[107] There were actually two letters from the Bureau to Fernley, one dated December 7, 2012, and the other dated May 24, 2013. Both were responses to letters from Fernley to the Bureau's Commissioner, the first dated October 18, 2012, and the second dated April 1, 2013. All four letters were included in EIS Appendix F and are thus part of the record in this case.
[108] *Oregon Natural Desert Ass'n v. U.S. Forest Service*, 465 F.3d 977, 982 (9th Circuit, 2006).
[109] *Bennet v Spear*, 520 U.S. 154, 178, 117 S.Ct. 1154, 1168 (1997) (internal quotations and citations omitted).
[110] *Oregon Natural Desert Ass'n v. U.S. Forest Service*, 465 F.3d 977, 982 (9th Circuit, 2006).
[111] December 7, 2012 Letter to Leroy Goodman, Fernley Mayor at 4.

Taggart & Taggart, Ltd.
108 North Minnesota Street
Carson City, Nevada 89703
(775)882-9900 – Telephone
(775)883-9900 – Facsimile

Taggart & Taggart, Ltd.
108 North Minnesota Street
Carson City, Nevada 89703
(775) 882-9900 – Telephone
(775) 883-9900 – Facsimile

Likewise, the Bureau's second letter expresses only a refusal to negotiate with Fernley on the "premise that the City has a legal entitlement to the continued existence of Truckee Canal seepage water" but also states that "Reclamation remains available to discuss the City's water supply issues."[112]  Again, this is not an expression of a final agency action.  No administrative process has been consummated, nor does the letter purport to determine legal rights or obligations.  Nor could it, since the Bureau, as a federal agency, lacks any authority to make final determinations with regards to Nevada water law.[113]

Until the final EIS was published in September 2020, and the subsequent ROD implementing the EIS was issued in December 2020, the Bureau had not made any final decision affecting Fernley's groundwater rights.  And, unlike the 2012 and 2013 letters, the EIS and ROD did finally consummate the Bureau's administrative process in relation to the proposed Canal repairs.  Unfortunately, in addition to choosing a preferred alternative, the Bureau also chose to unlawfully exceed its authority by making a final determination that Fernley's claimed right to ongoing recharge "is not valid under Nevada law."[114] This unlawful and unauthorized final determination by the Bureau on a matter of state law is the decision that is at the heart of Fernley's declaratory relief claim.  Because that determination was not final until the Bureau issued the EIS and ROD, 28 U.S.C. § 2401(a)'s statute of limitations does not apply to bar Fernley's declaratory relief claim and the Bureau's Motion should be denied.

## III. Fernley's Nuisance Claim Is Not Barred By Sovereign Immunity, And That Claim Was Properly Pled.

In addition to its other claims, Fernley pled a claim of public nuisance because the Bureau's proposed project will create a public health and safety crisis by destroying Fernley's public water supply. The Bureau incorrectly argues this claim is barred by the FTCA, is untimely, and fails to state a claim for which relief is available.

---

[112] May 24, 2013 Letter to Paul Taggart, Esq. at 4.

[113] See California v. U.S., 438 U.S. 645, 654, 98 S.Ct. 2985, 2990 (1978) ("The history of the relationship between the Federal Government and the States in the reclamation of the arid lands of the Western States is both long and involved, but through it runs the consistent thread of purposeful and continued deference to state water law by Congress.").

[114] Truckee Canal Extraordinary Maintenance Final EIS at 3-17 through 3-18.

#### A. The APA includes a waiver of the United States' sovereign immunity for nuisance claims.

The Bureau is mistaken when is asserts that Fernley's nuisance claim is barred by the FTCA. Fernley did not raise the nuisance claim under the FTCA, nor is Fernley seeking monetary damages. Fernley's claims are properly brought under the APA,[115] which the courts have regularly found waives federal immunity for similar nuisance claims.[116]  Specifically, the waiver under the APA applies when a federal statute authorizes review of agency action, as well as in cases involving constitutional challenges and other claims arising under federal law, as is the case here.[117]  The same argument has been resoundingly rejected it other cases.[118]  As the Court in *San Carlos Apache Tribe* explained:

> Congress waived immunity for suits against the United States for money damages under the Tucker Act and the Federal Tort Claims Act (FTCA). Contract claims are brought under the Tucker Act. The FTCA is the exclusive remedy for torts committed by Government employees in the scope of their employment.  Defendants argue that the FTCA is the only avenue of relief available to the Plaintiffs and that Plaintiffs failed to give notice of their claim to the agency as required by the FTCA. Consequently, Plaintiffs may not proceed under the FTCA.  Defendants argument fails, however, *because Plaintiffs do not seek monetary damages*.
>
> Plaintiffs seeking non-monetary relief in the form of judicial review of an action by a federal agency may proceed under the Administrative Procedures Act (APA). In 1976, Congress amended the APA to specifically waive sovereign immunity in suits brought against the United States seeking relief "other than money damages."[119]

The Bureau claims that the FTCA impliedly forbids Fernley's nuisance claims, but this too is incorrect.  Like the claim in *Michigan*, the claim here is not cognizable under the FTCA, and thus "there

---

[115] Complaint at ¶5.

[116] *See San Carlos Apache Tribe v. United States*, 272 F. Supp. 2d 860, 882 (D. Ariz. 2003), *aff'd*, 417 F.3d 1091 (9th Cir. 2005); *Gros Ventre Tribe v. United States*, 344 F. Supp. 2d 1221 (D. Mont. 2004), aff'd. 469 F.3d 801 (9th Cir. 2006); *San Carlos Apache Tribe v. United States*, 272 F. Supp. 2d 860 (D. Ariz. 2003), *aff'd*, 417 F.3d 1091 (9th Cir. 2005); and *Michigan v. U.S. Army Corps of Engineers*, 667 F.3d 765 (7th Cir. 2011).

[117] *Michigan v. U.S. Army Corps of Engineers*, 667 F.3d 765, 775 (7th Cir. 2011) citing *Blagojevich v. Gates,* 519 F.3d 370, 372(7th Cir. 2008); *Czerkies v. U.S. Dep't of Labor*, 73 F.3d 1435, 1437–38 (7th Cir.1996) (*en banc*); *Trudeau v. Federal Trade Com'n*., 456 F.3d 178, 186-87 (2006) (2006); *United States v. City of Detroit*, 329 F.3d 515, 520–21 (6th Cir.2003) (*en banc* ); *Jaffee v. United States,* 592 F.2d 712, 718 (3d Cir.1979).

[118] *San Carlos Apache Tribe v. United States*, 272 F. Supp. 2d 860, 882 (D. Ariz. 2003), *aff'd*, 417 F.3d 1091 (9th Cir. 2005) (The APA also provides the frame work for review of Plaintiffs' nuisance claim)

[119] *San Carlos Apache Tribe v. United States*, 272 F. Supp. 2d 860, 882 (D. Ariz. 2003), *aff'd*, 417 F.3d 1091 (9th Cir. 2005) (internal cites omitted, emphasis added)

Taggart & Taggart, Ltd.
108 North Minnesota Street
Carson City, Nevada 89703
(775) 882-9900 – Telephone
(775) 883-9900 – Facsimile

1   is no reason to think that [the FTCA] implicitly forbids a particular type of relief outside its scope."[120]

2   Accordingly, the Bureau is not immune from Fernley's nuisance claim.

3       **B.**    **Fernley's nuisance claim is not barred by any statute of limitations.**

4      Alternatively, the Bureau argues that the nuisance claim is barred by the statute of limitations.[121]

5   The FTCA statute of limitations is two years.[122]  The general APA statute of limitation is six years.[123]

6   Because the FTCA does not apply to this nuisance claim the six-year statute applies.  Regardless, under

7   either statute, Fernley's claim is timely.  The nuisance claim arises from the ROD which was the final

8   agency decision to line the canal and destroy Fernley's public water supply.

9       A nuisance claim only ripens once the nuisance is occurring or there is a "real and immediate"

10   threat of it occuring.[124]  Here, the nuisance claim became imminent only after issuance of the ROD in

11   December 2020.  During the development of the EIS, Fernley urged the Bureau to not include the lining

12   option in the EIS.  Before the final administrative determination (i.e. the ROD) was made, Fernley met

13   with Bureau and asked that it reconsider the Bureau's proposal to line the canal.  At that time, the claimed

14   nuisance was only a "mere possibility" and not ripe.[125]  Because the imminent threat of a nuisance did

15   not arise until December 2020, Fernley's claim is timely, and the Bureau's Motion should be denied.

16       Additionally, the nuisance claim arose from the final decision to line the canal not from current

17   operations of the canal, as the Bureau incorrectly alleges.  Current operations largely maintain the 115-

18   year-old status quo which constitutes an implied dedication of a natural waterway that was relied on for

19   a municipal water supply.  To the extent the dedicated recharge is impacted by alterations in current

20   Bureau operations, a separate nuisance claim may arise.  But the nuisance claim that was properly pled

21   here clearly arose from the final decision in the ROD to line the canal, and unreasonably injure or impair

22   Fernley's municipal water supply.

23

24   [120] *Michigan v. U.S. Army Corps of Engineers*, 667 F.3d 765, 776 (7th Cir. 2011).
     [121] Motion at 27:4-11.

25   [122] 28 U.S.C. § 2401(b).
     [123] 28 U.S.C. § 2401(a).

26   [124] *Michigan v. U.S. Army Corps of Engineers*, 667 F.3d 765, 781 (7th Cir. 2011).
     [125] 5 J. POMEROY, A TREATISE ON EQUITY JURISPRUDENCE AND EQUITABLE REMEDIES, § 1937 (§ 523), at

27   4398 (2d ed.1919) (noting that while "a mere possibility of a future nuisance will not support an injunction," relief will be
     warranted when "the risk of its happening is greater than a reasonable man would incur").

28

Taggart & Taggart, Ltd.
108 North Minnesota Street
Carson City, Nevada 89703
(775)882-9900 – Telephone
(775)883-9900 – Facsimile

**C.   Fernley's nuisance claim was properly pled.**

The Bureau correctly states that, as adjudicated in federal common law, a "public nuisance is defined as a substantial and unreasonable interference with a right common to the general public, usually affecting the public health, safety, peace, comfort, or convenience."[126]   However, contrary to its argument that such a claim is not justiciable, the Bureau goes on to cite several actions wherein federal courts actually adjudicated public nuisance claims.[127]   Federal courts regularly adjudicate nuisance claims against the federal government.[128]   Thus, the Bureau's claim that this court cannot adjudicate the common law issue of nuisance is without merit.

Additionally, the Bureau misconstrues Fernley's nuisance claim.  Fernley undisputedly has valid groundwater rights that were issued by the State Engineer under state law.  Those rights were granted in reliance on recharge from the canal.[129]   These facts, as pled, must be presumed true when deciding the Bureau's motion to dismiss.  As noted above, water rights in Nevada are regarded and protected as real property.[130]   The City of Fernley owns over 8,900 afa of municipal groundwater rights which are used to serve the public and are necessary for the health and safety of its citizens.  The water associated with these rights provides reliable and clean drinking water, water for fire suppression, water for schools, parks, and hospitals, etc.  Certainly, the destruction of this water supply constitutes a nuisance.

The Bureau is simply wrong when it argues that public nuisance claims are limited to only a few select types of claims.   Rather, "[p]ublic nuisance traditionally has been understood to cover a tremendous range of subjects"[131] and many of the examples are water dependent, such as changes in drainage systems.[132]   Courts have held that "public nuisance law, like common law generally, adapts to

---

[126] Motion at 25:1-3, citing *Michigan.*
[127] Motion at 28:5-7.
[128] *See e.g. San Carlos Apache Tribe v. United States*, 272 F. Supp. 2d 860, 882 (D. Ariz. 2003), *aff'd,* 417 F.3d 1091 (9th Cir. 2005); *Gros Ventre Tribe v. United States*, 344 F. Supp. 2d 1221 (D. Mont. 2004), aff'd, 469 F.3d 801 (9th Cir. 2006); *San Carlos Apache Tribe v. United States*, 272 F. Supp. 2d 860 (D. Ariz. 2003), *aff'd,* 417 F.3d 1091 (9th Cir. 2005); and *Michigan v. U.S. Army Corps of Engineers*, 667 F.3d 765 (7th Cir. 2011).
[129] See Complaint at ¶¶23-32.
[130] *Application of Filippini*, 66 Nev. 17, 21–22, 202 P.2d 535, 537 (1949).
[131] *Michigan v. U.S. Army Corps of Engineers*, 667 F.3d 765, 771 (7th Cir. 2011)
[132] *Id.*  ("For example, the Court has held that a change in one state's water-drainage system that causes flooding on another state's farms may create a public nuisance") (citing *North Dakota v. Minnesota,* 263 U.S. 365, 374, 44 S.Ct. 138, 68 L.Ed. 342 (1923))

Taggart & Taggart, Ltd.
108 North Minnesota Street
Carson City, Nevada 89703
(775) 882-9900 – Telephone
(775) 883-9900 – Facsimile

changing scientific and factual circumstances."[133]  The instant case deals with changes in the scientific and factual circumstances related to dedicated recharge from the Canal to the groundwater aquifer which is owned by the public,[134] and is used by Fernley under the authority of its State Engineer issued water rights.

Further, Fernley has adequately pled all the elements to sustain a public nuisance claim.  The Bureau's arguments to the contrary largely argue the facts of this dispute, which is not appropriate for a motion to dismiss.  The Bureau's claims are largely inaccurate and are based on an incorrect interpretation of state water law, and selective ignorance of the binding precedent for the Newlands project that was announced in *Nevada v. United States*.  Therefore, the Bureau's presentation of a competing, and incorrect factual concept should be rejected since this Court is considering a motion to dismiss, and the only question should be whether the facts, as pled by Fernley, are sufficient to state a claim of nuisance.

The elements of nuisance are: 1) a substantial or unreasonable interference, 2) of a right common to the general public, and 3) that affects public health, safety, peace, comfort, or convenience.[135]  First, Fernley properly pled that the action by the Bureau would remove nearly all the water which is used to maintain the health of the groundwater aquifer.[136]  Fernley pled in the Complaint that the lining of the canal is substantial and unreasonable because it will cause a precipitous decline in aquifer water levels, imperil the City's municipal water supply, and cause the failure of over 71 percent of all domestic wells in the area.[137]  Fernley pled in the Complaint that the harm from the Bureau's lining of the canal is substantial and unreasonable because lining will dry up the water supply to the citizens of Fernley.[138]  Accordingly, Fernley clearly and sufficiently pled that the Bureau's proposed project will create an

---

[133] *Michigan v. U.S. Army Corps of Engineers*, 667 F.3d 765, 771 (7th Cir. 2011) quoting *American Elec. Power Co., Inc. v. Connecticut*, 564 U.S. 410, 131 S.Ct. 2527 (2011).
[134] NRS 533.025 ("The water of all sources of water supply within the boundaries of the State whether above or beneath the surface of the ground, belongs to the public")
[135] *Michigan v. U.S. Army Corps of Engineers*, 667 F.3d 765, 771 (7th Cir. 2011)
[136] Complaint at ¶29-32
[137] Complaint at ¶71.
[138] Complaint at ¶126

Taggart & Taggart, Ltd.
108 North Minnesota Street
Carson City, Nevada 89703
(775) 882-9900 – Telephone
(775) 883-9900 – Facsimile

unreasonable interference with Fernley's real property rights, and thereby deleteriously impact the health and safety of the public.

Second, in Nevada, *all water* belongs to the public.[139]  This is particularly true for the water in Fernley's groundwater aquifer because those water rights were already appropriated by Fernley to provide municipal water service to the public.  Unquestionably, the public in Fernley is entitled to have its water supply protected.  In its Complaint, Fernley properly and sufficiently plead (1) that it's water rights will be impacted,[140] (2) the water associated with those rights is used for the benefit of the public,[141] and (3) the dedicated recharge is necessary to "keep the aquifer recharged and in a healthy condition."[142]  Fernley also pled that the Bureau's project will interfere with both its property rights and those of its citizens.[143]  Therefore, Fernley properly pled that the dedicated recharge is a right common to the general public.

Finally, Fernley properly pled that the Bureau's proposed project will create a health and safety crisis within Fernley.[144]  The decline of the groundwater aquifer as a result of the Bureau's proposal will deprive citizens of safe and clean drinking water.  The Bureau's EIS utterly fails to identify any alternative source of supply that could be used to make up for this loss, or where funding would come from to cover the costs of switching over to a new source of supply.  Also, the EIS lacks any evaluation of the other numerous health and safety problems that will arise from cutting off the City's water supply.

Because Fernley has adequately pled its nuisance claim, and because the Bureau is not immune from such claims, the Motion to Dismiss should be denied.

//

//

//

---

[139] NRS 533.025
[140] Complaint at ¶30.
[141] Complaint at ¶23, ¶30 & ¶31.
[142] Complaint at ¶32.
[143] Complaint at ¶125-126
[144] Complaint at ¶126.

Taggart & Taggart, Ltd.
108 North Minnesota Street
Carson City, Nevada 89703
(775) 882-9900 – Telephone
(775) 883-9900 – Facsimile

1

### REQUEST FOR EVIDENTIARY HEARING

2

In deciding whether sovereign immunity applies, a district court may hold a hearing to receive

3

evidence regarding jurisdiction and to resolve any factual disputes.[145]  Fernley respectfully requests the

4

Court schedule an evidentiary hearing on the Bureau's Motion to gather facts and consider arguments

5

related to the Bureau's claims of sovereign immunity.

6

### CONCLUSION

7

For the reasons stated above, Fernley respectfully requests the Court deny the Bureau's Motion

8

to Dismiss in its entirety.  However, in the event the Court determines that any portion of Fernley's

9

Complaint is unartfully pled or otherwise deficient in form or substance, Fernley respectfully requests,

10

in lieu of dismissal, that the Court grant it leave to amend the Complaint to correct the alleged deficiency.

11

Respectfully submitted this 1st day of July 2021 by:

12

TAGGART & TAGGART, LTD.

13

14

By: */s/ David H. Rigdon*
DAVID H. RIGDON, ESQ

15

Nevada State Bar No. 13567
PAUL G. TAGGART, ESQ.

16

Nevada State Bar No. 6136

17

*Attorneys for City of Fernley*

18

19

20

21

22

23

24

25

26

27

_____

[145] *Robinson v. United States*, 586 F.3d 683, 685 (9th Cir. 2009).

28

Taggart & Taggart, Ltd.
108 North Minnesota Street
Carson City, Nevada 89703
(775) 882-9900 – Telephone
(775) 883-9900 – Facsimile

**CERTIFICATE OF SERVICE**

Pursuant to NRCP 5(b), I hereby certify that I am an employee of TAGGART & TAGGART, LTD., and that on this day, I served, or caused to be served, a true and correct copy of the foregoing via the Court's electronic filing services, to the parties listed below.

Eve. W. McDonald
U.S. Department of Justice
Environmental & Natural Resources Division
Natural Resources Section
999 18th Street, South Terrace – Suite 370
Denver, CO  80202
*Attorney for Bureau of Reclamation*

Therese A. Ure Stix
Laura A. Schroeder
Caitlin R. Skulan
Schroeder Law Offices, P.C.
10615 Double R Blvd., Suite 100
Reno, NV 89521
*Attorneys for Stix*

Don Springmeyer
Christopher W. Mixson
Kemp Jones, LLP
3800 Howard Hughes Parkway #1700
Las Vegas, NV 89169
*Attorneys for Pyramid Lake Paiute Tribe*

DATED this 1st day of July 2021.

*/s/ Emily Woods*
Employee of TAGGART & TAGGART, LTD.

31