**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

MAR 17 2023

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| CITY OF FERNLEY, <br><br> Plaintiff-Appellant, <br><br> and <br><br> DAVID F. STIX, Jr.; DEENA E. EDMONSTON, <br><br> Intervenor-Plaintiffs, <br><br> v. <br><br> ERNEST A. CONANT, Regional Director of the U.S. Bureau of Reclamation; et al., <br><br> Defendants-Appellees, <br><br> and <br><br> PYRAMID LAKE PAIUTE TRIBE, <br><br> Intervenor-Defendant-Appellee. | No.  22-15400 <br><br> D.C. No. 3:21-cv-00119-MMD-CLB <br><br> MEMORANDUM[*] |
| CITY OF FERNLEY, <br><br> Plaintiff, | No.  22-15603 <br><br> D.C. No. 3:21-cv-00119-MMD-CLB |

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

and

DAVID F. STIX, Jr.; DEENA E. EDMONSTON,

    Intervenor-Plaintiffs-Appellants,

  v.

ERNEST A. CONANT, Regional Director of the U.S. Bureau of Reclamation; et al.,

    Defendants-Appellees,

PYRAMID LAKE PAIUTE TRIBE,

    Intervenor-Defendant-Appellee.

Appeal from the United States District Court
for the District of Nevada
Miranda M. Du, Chief District Judge, Presiding

Argued and Submitted March 8, 2023
Las Vegas, Nevada

Before: GRABER, BENNETT, and DESAI, Circuit Judges.

The Truckee Canal runs for thirty-one miles through western Nevada, from the Derby Diversion Dam on the Truckee River to the Lahontan Reservoir. Nearly twenty-seven miles of the Canal are unlined, allowing water to seep through the Canal and recharge the underlying aquifer. After the Canal breached in 2008, the Bureau of Reclamation ("Reclamation") conducted studies to identify repairs that

2

would ensure the long-term structural safety of the Canal. Reclamation selected an alternative that involves adding an impermeable lining to more than twelve miles of the Canal. The City of Fernley alleges that it will be harmed by the chosen alternative because the lining will reduce recharge of the aquifer, on which the City relies for its municipal water. Intervenors David Stix and Deena Edmonston, who own private wells and a permitted groundwater right of use, raise similar allegations. The district court dismissed all claims on jurisdictional grounds. The City of Fernley and Intervenors (collectively, "Plaintiffs") timely appeal.

We review de novo a district court's dismissal of a complaint. Whitewater Draw Nat. Res. Conservation Dist. v. Mayorkas, 5 F.4th 997, 1007 (9th Cir. 2021), cert. denied, 142 S. Ct. 713 (2021). We review for abuse of a discretion the denial of leave to amend, Smith v. Pac. Props & Dev. Corp., 358 F.3d 1097, 1100 (9th Cir. 2004), and the decision not to exercise supplemental jurisdiction, Bryant v. Adventist Health Sys./W., 289 F.3d 1162, 1165 (9th Cir. 2002). We affirm in part and reverse and remand in part.

1. The district court correctly dismissed Plaintiffs' claims for violation of the National Environmental Policy Act ("NEPA"). Because NEPA does not include a private right of action, the Administrative Procedure Act ("APA") provides Plaintiffs' cause of action. Ashley Creek Phosphate Co. v. Norton, 420 F.3d 934, 939 (9th Cir. 2005). "[A] statutory cause of action extends only to

plaintiffs whose interests fall within the zone of interests protected by the law invoked." Lexmark Int'l, Inc. v. Static Control Components, Inc., 572 U.S. 118, 129 (2014) (citation and internal quotation marks omitted). Thus, Plaintiffs must show that their interests are "'arguably within the zone of interests to be protected or regulated by the statute' that . . . was violated," which in this case is NEPA. Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak, 567 U.S. 209, 224 (2012) (quoting Ass'n of Data Processing Serv. Orgs., Inc. v. Camp, 397 U.S. 150, 153 (1970)).

NEPA protects environmental interests. Nuclear Info. & Res. Serv. v. Nuclear Regul. Comm'n, 457 F.3d 941, 950 (9th Cir. 2006). "The universe of interests procedurally protected by NEPA is broad," Navajo Nation v. Dep't of the Interior, 876 F.3d 1144, 1160–61 (9th Cir. 2017), but not unlimited. We have "consistently held that purely economic interests do not fall within NEPA's zone of interests." Ashley Creek, 420 F.3d at 940. "[T]o assert a claim under NEPA, a plaintiff must allege injury to the environment; economic injury will not suffice." Ranchers Cattlemen Action Legal Fund United Stockgrowers of Am. v. USDA, 415 F.3d 1078, 1103 (9th Cir. 2005).

Here, Plaintiffs allege only interests in the use of the aquifer as a water source. We have previously held that a statutory claim under NEPA existed where municipalities alleged environmental harms, including harm to water quality. See

4

City of Davis v. Coleman, 521 F.2d 661, 671 (9th Cir. 1975) (relying on the plaintiff's allegations that development facilitated by a new freeway interchange "may adversely affect the quality and quantity of the city water supply because of increased use and the danger of contamination by industrial wastes" (emphasis added)); Churchill County v. Babbitt, 150 F.3d 1072, 1076, 1079 (9th Cir.) amended and superseded on denial of reh'g, 158 F.3d 491 (1998) (referencing the plaintiff's allegations of "fire hazards, airborne particles, erosion, unknown changes to the underground water supply system, and reduced quality of local drinking water," and adverse effects on "groundwater levels and quality" (emphasis added)).  But Plaintiffs' complaints allege only diminution of the water supply, that is, quantity alone.  The loss of the ability to consume natural resources is an economic injury, not an environmental injury.

    2.  But the district court abused its discretion by denying Plaintiffs leave to amend their NEPA claims on the ground of futility.  Plaintiffs asked to amend their complaint if the district court ruled that they did not allege a sufficient environmental injury under NEPA.  We have held that the policy of freely granting leave to amend should "be applied with extreme liberality." Eminence Cap., LLC v. Aspeon, Inc., 316 F.3d 1048, 1051 (9th Cir. 2003) (per curiam) (citation and internal quotation marks omitted).  A court may deny leave to amend on the ground of futility only if it cannot "conceive of facts that would render

5

the . . . claim viable." United States v. Corinthian Colls., 655 F.3d 984, 995 (9th Cir. 2011) (citation and internal quotation marks omitted).  Plaintiffs are groundwater users with economic interests at stake, but their proposed amendment could add allegations of environmental harms that may fall within NEPA's zone of interests.

The district court applied an incorrect legal standard when it concluded that Plaintiffs' amended allegations could not fall within NEPA's zone of interests because "their interests are fundamentally economic, not environmental."  A plaintiff may bring a NEPA claim "even if his or her interest is primarily economic, as long as he or she also alleges an environmental interest or economic injuries that are 'causally related to an act within NEPA's embrace.'"  Ranchers Cattlemen, 415 F.3d at 1103 (quoting Port of Astoria v. Hodel, 595 F.2d 467, 476 (9th Cir. 1979)).  The relevant question is not why a plaintiff chooses to sue, but whether the plaintiff alleges injury to an environmental interest.  WildEarth Guardians v. Provencio, 923 F.3d 655, 668 (9th Cir. 2019).  Standing alone, an economic interest cannot bring a plaintiff within NEPA's zone of interests, but an economic interest does not destroy a statutory cause of action that would otherwise exist.  Monsanto Co. v. Geertson Seed Farms, 561 U.S. 139, 155–56 (2010).

3. Federal question jurisdiction does not exist over Plaintiffs' declaratory judgment claims.  The APA allows parties that are "adversely affected or

aggrieved by agency action within the meaning of a relevant statute" to sue. 5 U.S.C. § 702. Because Plaintiffs rely on the APA's general review provision, they may challenge only a final agency action that (1) "mark[s] the 'consummation' of the agency's decisionmaking process" and (2) determines rights or obligations, or will lead to legal consequences. Bennett v. Spear, 520 U.S. 154, 177–78 (1997) (citations omitted).

Plaintiffs take the position that, in the Environmental Impact Statement ("EIS"), Reclamation improperly adjudicated their claims of legal entitlements to water under Nevada law. The EIS includes the following statement:

> [T]he City of Fernley has no legal entitlement to the continued existence of seepage water from the Truckee Canal. The City's claim of right to seepage water is not valid under Nevada law, and the City's use of Canal seepage is not a valid Project water delivery.

But, under Nevada law, Reclamation has no authority to determine what water rights Plaintiffs may or may not have. The cited statement in the EIS is merely descriptive: at that time, neither the State Engineer nor Nevada courts had granted the City the right to continued recharge of the aquifer. Reclamation's views on the City's water rights did not alter the agency's obligations under NEPA and thus did not affect the sufficiency of the EIS. Reclamation's statement also has no legal effect on Plaintiffs' ability to pursue their water rights claims through the mechanisms provided by Nevada law. Plaintiffs' request for recognition of a "right to recharge" is a question of state law only. See United States v. Orr Water

7

Ditch Co., 914 F.2d 1302, 1307 (9th Cir. 1990).  The APA does not give us jurisdiction to reach the merits of Plaintiffs' declaratory judgment claims.

4.  The district court had the authority to decline to exercise supplemental jurisdiction over Plaintiffs' declaratory judgment claims and dismiss them without prejudice.  The court had already "dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c)(3).  The court was also within its discretion to conclude that Plaintiffs' claims raise "a novel or complex issue of State law," id. § 1367(c)(1), and that this case presents an "exceptional circumstance[]" in which there are "other compelling reasons for declining jurisdiction," id. § 1367(c)(4).

The scope of Plaintiffs' water rights is, as noted above, a question of state law.  Plaintiffs cite no precedent under Nevada law holding that a groundwater right extends to a right to continued seepage.  Additionally, Plaintiffs' request for a declaratory judgment of their water rights in this forum is inconsistent with Nevada's system of water rights adjudication.  Nevada law requires comprehensive adjudication of water rights involving all users.  Nev. Rev. Stat. § 533.240(1).  Although we lack jurisdiction over Plaintiffs' declaratory judgment claims, our holding does not prevent them from asserting their water rights claims in other proceedings, consistent with state law.

5.  The district court correctly dismissed the City's federal common-law nuisance claim.  Federal common law addresses "subjects within national

legislative power where Congress has so directed or where the basic scheme of the Constitution so demands," including environmental protection. Am. Elec. Power Co. v. Connecticut (AEP), 564 U.S. 410, 421 (2011) (citation and internal quotation marks omitted). Yet even if federal common law could apply to the City's claim, Congressional action has displaced any role for federal common law in this instance.

The contours of federal common law are subject to Congressional intervention. See New Jersey v. New York, 283 U.S. 336, 348 (1931). "[W]hen federal statutes directly answer the federal question, federal common law does not provide a remedy because legislative action has displaced the common law." Native Vill. of Kivalina v. ExxonMobil Corp., 696 F.3d 849, 856 (9th Cir. 2012). "The test for whether congressional legislation excludes the declaration of federal common law is simply whether the statute speaks directly to the question at issue." AEP, 564 U.S. at 424 (brackets omitted) (citations and internal quotation marks omitted). Relevant to this case, Congress authorized Reclamation to "carry out . . . any extraordinary operation and maintenance work on a project facility that the [agency] determines to be reasonably required to preserve the structural safety of the project facility." 43 U.S.C. § 510b(a).

Section 510(b) displaces any application of federal common law because the statute grants the agency the authority to conduct extraordinary maintenance in a

9

specific set of circumstances. And it delegates to Reclamation the decision whether and how to conduct extraordinary maintenance. See AEP, 564 U.S. at 426 ("The critical point is that Congress delegated to EPA the decision whether and how to regulate carbon-dioxide emissions from powerplants; the delegation is what displaces federal common law."). If Reclamation had decided against lining the canal, "the federal courts would have no warrant to employ the federal common law of nuisance to upset the Agency's expert determination." Id.

**AFFIRMED IN PART; REVERSED AND REMANDED IN PART. Each party shall bear its own costs on appeal.**